**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TUSHAWN CRAIG,<br>MARQUETTA STOKES,<br><br>        Plaintiffs,<br><br>        v.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH,<br>CITY OF RICHMOND, INDIANA,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:23-cv-01575-TWP-MJD

| | |
|---|---|
| CITY OF RICHMOND, INDIANA,<br><br>        Cross Claimant,<br><br>        v.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH,<br>MY-WAY TRADING, INC.,<br><br>        Cross Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| CORNERSTONE TRADING GROUP, LLC,<br><br>        Third Party Plaintiff,<br><br>        v.<br><br>CITY OF RICHMOND, INDIANA,<br><br>        Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ALLEN WELLMAN HARVEY KEYES
COOLEY, LLP,

        Interested Party.

<u>**ORDER ON PENDING MOTIONS**</u>

This matter is before the Court on Defendant City of Richmond, Indiana's (the "City") Motion to Decertify the Class (Filing No. 308), which is joined by Defendants Cornerstone Trading Group, LLC ("CTG"), Seth Smith ("Smith"), and My-Way Trading, Inc. ("My-Way Trading") (these three together, "My-Way") (Filing No. 311); and a combined Motion for Reconsideration of the Court's Summary Judgment Order or in the alternative, Motion to Certify the Order for Interlocutory Appeal (Filing No. 312). Plaintiffs Tushawn Craig ("Craig") and Marquetta Stokes ("Stokes") (together, "Plaintiffs") initiated this lawsuit on behalf of themselves and all others similarly situated against Defendants CTG, Smith, and the City (the former two together, "Cornerstone") alleging damages for the Defendants' failure to exercise reasonable care in their engagement in ultra-hazardous activities, which resulted in a catastrophic fire in Plaintiffs' neighborhood (Filing No. 1-2 at 23–30). Thereafter, CTG filed a Third-Party Complaint against the City, *id.* at 69, and the City filed Crossclaims against My-Way (Filing No. 18). The Court granted Plaintiffs' motion to certify the class on September 29, 2025 (Filing No. 287), and granted in part and denied in part the City's summary judgment motion on March 27, 2026 (Filing No. 304). The City and My-Way now seek decertification of the class and reconsideration of the Summary Judgment Order or in the alternative to certify the Summary Judgment Order for interlocutory appeal. For the reasons discussed below, these Motions are **denied**.

## I.    <u>BACKGROUND</u>

The following facts are not meant to be a complete recitation of all that has transpired in this case. Rather, the Court will recite only those facts relevant to the instant Motions.

### A.    <u>Factual Background</u>

In 2006, Smith, through his company My-Way Trading, began operating a plastics brokerage business at 308 NW F Street (the "308 Property") in Richmond, Indiana. In December

2006, My-Way Trading purchased the 308 Property (Filing No. 241 at 10). At that time, two neighboring parcels, 310 NW F Street (the "310 Property") and 358 NW F Street (the "358 Property") (together, the "310/358 Properties"), were owned and operated by Hoffco/Comet Industries, Inc., which ceased operating the 310/358 Properties in 2010. *Id.* In 2012, My-Way began expanding its activities onto the 310/358 Properties without owning or leasing the properties or otherwise obtaining written consent to do so. *Id.*

In May 2019, Doug Gardner ("Gardner"), the Deputy Chief of Fire Prevention for the City, inspected the 308 Property and the 310/358 Properties (Filing No. 251 at 8). Based on Gardner's inspection of the three properties, the City's Unsafe Building Commission ("Building Commission") issued preliminary orders to CTG and AFG Investment Fund[1]—the entities who then owned the properties—on July 24 and 25, 2019, to "[r]epair, [d]emolish, or [v]acate" the properties. *Id.* at 9.

The Building Commission held a hearing for the preliminary orders on September 24, 2019 (Filing No. 251-6 at 3 ¶8). It then issued orders finding the three properties "unsafe" and that the "cumulative effect of the code violations present" on the premises rendered "the premises unsafe, substandard, or a danger to the health and safety on the public as defined by I.C. § 36-7-94." *Id.* at 4–5 ¶¶17–18. The Building Commission affirmed the orders to repair or demolish and vacate the three properties. *Id.* at 5 ¶18.

My-Way filed an action in state court seeking *de novo* review of the Building Commission orders. The Wayne County Circuit Court affirmed the Building Commission orders finding that the evidence presented at the hearings "clearly established that the [three properties] are unsafe to

---

[1] AFG Investment Fund was the entity that owned the 310 and 358 Properties at the time the Building Commission orders were issued. Wayne County received the 310 and 358 Properties from AFG following a tax sale, and the City subsequently took title to the properties via a quitclaim deed in March 2021 (Filing No. 251-6).

people and property; constitute a fire hazard; are a hazard to public health; constitute a nuisance; and are dangerous to people or property because of violations of statute and City Ordinance concerning building condition and maintenance." *Id.* at 8 ¶35.

In 2018, the City applied for and received a brownfield community assessment grant from the U.S. Environmental Protection Agency ("EPA") in the amount of $300,000.00 for investigating brownfields, including the 310/358 Properties (Filing No. 241 at 10).[2] On October 27, 2020, City Attorney Andrew Sickmann ("Sickmann") sent a letter to My-Way demanding it vacate the 310/358 Properties (Filing No. 238-6 at 2–3 ¶9). On March 2, 2021, Wayne County acquired the 310/358 Properties by way of tax sale (Filing No. 251 at 10). Then, on March 22, 2021, Wayne County transferred ownership of the 310/358 Properties to the City. *Id.* On June 16, 2021, My-Way responded to Sickmann's letter stating that My-Way was still attempting to comply with the Building Commission orders (Filing No. 238-6 at 3).

On July 9, 2021, a City employee accompanied two inspectors to perform a site reconnaissance of the 310/358 Properties to determine, among other things, if there were Recognized Environmental Conditions that might qualify the City as an innocent landowner pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (Filing No. 251 at 11). However, the site reconnaissance was limited because access to the majority of the main site building was not possible due to the accumulation of plastic debris and storage. *Id.* Reconnaissance was also difficult because Smith kept the 310/358 Properties under lock and key, and five million pounds of materials remained in the buildings (Filing No. 238-1 at 678–685, pp. 669:8–676:20).

---

[2] A brownfield is an abandoned, idled, or underused industrial and commercial facility/site where expansion of redevelopment is complicated by real or perceived environmental contamination. EPA's Brownfields initiative helps communities mitigate potential health risks and restore the economic viability of such areas or properties. *See* https://cimc.epa.gov/ords/cimc/f?p=121:19::::0:P0_GRANT_ID:69604954 (last accessed June 10, 2026).

The City's Final Technical Report of the site was completed on December 29, 2022, and submitted to the EPA (Filing No. 251-10). The Final Technical Report found that Smith's company, My-Way Trading, had "created a hostile and potentially unsafe condition for site reconnaissance" and "the volume of plastics storage inside and outside of structures complicated reconnaissance conditions." *Id.* at 9.

On April 11, 2023, the industrial warehouse at the 358 Property—"containing large amounts of chipped, shredded, and recycled plastics"—caught fire (Filing No. 251 at 11). A four-alarm catastrophic fire alarm was issued, involving the burning of ordinary combustibles, petroleum products, energized electrical materials, and combustible metals (Filing No. 251-11 at 33, pp. 127:2–15), with the plastics waste and other refuse contributing to the fire. *Id.* at 42, pp. 165:14–21. While the cause of the fire may be disputed, Gardner determined the origin to be the exterior of the building at the 358 Property, which spread to the 310 Property and the 308 Property (Filing No. 251-5 at 6.) As a result of the fire, the Wayne County Emergency Management Agency issued an evacuation order of a half-mile radius from the origin of the fire—the 358 Property—resulting in the evacuation of up to 2,000 individuals (Filing No. 251-5 at 5, pp. 18:19–19:8, Filing No. 251-3 at 18). The evacuation order remained in place for five days, ultimately being lifted on April 16, 2023. *Id.* at 6, pp. 24:12–23. The smoke from the fire caused air quality concerns in the area and significant disruption to the community. *Id.*

The debris from the fire contained asbestos, hydrogen cyanide, benzene, chlorine, and carbon monoxide in the evacuation zone (Filing No. 251-13). After people were allowed to return to their homes, they were directed to clean the interior of their homes, arrange for the EPA to clean the exterior of their properties as it may contain asbestos, and to not mow their lawns or let their pets roam freely in their yards until this was completed (Filing No. 251 at 13). Plaintiffs own and

reside in homes that were subject to evacuation as a result of the April 11, 2023 fire (Filing No. 72 at 4). Craig was injured when he fell off a ladder in late July 2023 while cleaning his home's gutters and power washing his white house because of the "dark color" of the homes in the area (Filing No. 251-15 at 26).

Plaintiffs' alleged damages include the following categories: (a) loss of use of land; (b) costs of housing during the fire; (c) lost wages; (d) medical costs for Craig only; (e) home repairs/cleaning; (f) groceries, meals, and other purchases required during the fire; (g) pet boarding; and (h) pain and suffering/emotional damages (Filing No. 238-10 at 124:23–125:5, 129:19–134:5) (Filing No. 238-11 at 36, 103, 121:6–130:14).

**B.    Procedural History**

On April 19, 2023, Craig sent a tort claim notice to the City (Filing No. 128-1 at 6). On April 20, 2023, the Plaintiffs filed their original Complaint against Cornerstone (Filing No. 1). Stokes also promptly sent a tort claim notice to the City (Filing No. 128-1 at 10). Plaintiffs filed an Amended Complaint adding claims against the City on July 17, 2023, and CTG filed a Third-Party Complaint against the City in state court (Filing No. 1-2 at 69). That action was removed to federal court on September 1, 2023 (Filing No. 1). The City filed a Crossclaim against My Way on October 10, 2023 (Filing No. 18). Plaintiffs' motion for leave to file a Second Amended Complaint (Filing No. 57), was granted on April 22, 2024 (Filing No. 70).

Plaintiffs filed the operative Second Amended Class Action Complaint the following day, April 23, 2024 (Filing No. 72). The Second Amended Class Action Complaint alleges that "Defendants' tortious conduct of failing to maintain the Industrial Facility and the hazardous contents therein set in motion a chain of events resulting in a widespread fire which released noxious fumes and hazardous materials including asbestos into the air and ground water of the

surrounding area." *Id.* at 3. On September 13, 2024, Plaintiffs filed a Motion to Certify Class (Filing No. 116), and the several Motions before the Court followed. Plaintiffs' Motion to Certify Class was granted on September 29, 2025 (Filing No. 287).

The Plaintiffs' Second Amended Class Action Complaint alleges the following Counts against CTG, Smith, and the City: Count I: Strict Liability (for Ultra-Hazardous Activities); Count II: Negligence; Count III: *Res Ipsa Loquitur*; Count IV: Private Nuisance; Count V: Trespass; Count VI: Battery; and Count VII: Punitive Damages (*see* Filing No. 72). The City moved for summary judgment on all Plaintiffs' claims against it (Filing No. 237); and Cornerstone moved for partial summary judgment, seeking judgment in its favor as to all claims asserted against Smith in his individual capacity (Filing No. 232).

On March 27, 2026, the Court ruled on the City's and Cornerstone's motions for summary judgment. The Court dismissed with prejudice Counts I, III, V, and VI against the City (Filing No. 304 at 60–61). In addition, the Court granted summary judgment in favor of the City for personal injury damages requiring expert testimony. However, the Court denied summary judgment for Count II: Negligence, and Count IV: Private Nuisance, against the City. *Id.* at 61. The Court found that those claims remained for settlement or trial. *Id.* In addition, all claims of the Plaintiffs' Second Amended Class Action Complaint against CTG and Smith remain. In the pending motions, the Defendants seek reconsideration of the Summary Judgment Order or alternatively, interlocutory appeal. Defendants also seek decertification of the class.

## II.    <u>LEGAL STANDARD</u>

### A.    <u>Motions to Reconsider</u>

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 526

(N.D. Ind. 2009). The motion is to be used "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). A motion to reconsider under Rule 54(b) may also be appropriate where there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* (citation omitted).

The purpose of a motion for reconsideration is to ask the Court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). The motion "will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted).

Furthermore,

> Motion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail. The Court is entitled to assume that, if [a party] had viable arguments to support its claim, it would have presented them. The Court will not conduct [a party's] research and build [the party's] analysis in order to find facts and law to support [the party's] own claims.

*Brownstone Publ'g, LLC v. AT&T, Inc.*, No. 07-cv-1630, 2009 U.S. Dist. LEXIS 25485, at *2 (S.D. Ind. Mar. 24, 2009). A motion to reconsider "is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Id.*

**B.    Motions to Decertify a Class**

Federal Rule of Civil Procedure 23(c)(1)(C) provides that orders determining whether to certify an action as a class action "may be altered or amended before final judgment." "[A] district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chi.*

8

*Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Under Rule 23(c)(1)(C), the Court retains authority to modify or vacate a class certification at any time prior to final judgment. "[T]he district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *All. to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

On one hand, "a favorable class determination by the court is not cast in stone. If the certification of the class is later deemed to be improvident, the court may decertify, subclassify, alter the certification, or permit intervention." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (citations omitted); *see also Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003) ("The court's initial certification of a class 'is inherently tentative.'" (citation modified)). "[W]hen a defendant moves to decertify a class, 'a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should [remain] certified, even if those considerations overlap the merits of the case.'" *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024) (alteration in original) (quoting *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010)).

On the other hand, courts are generally reluctant to reconsider and modify previous orders, even in the class certification context, in part because of the law-of-the-case doctrine and to avoid costly delays to the proceedings. *Outzen v. Kapsch Trafficcom USA, Inc.*, 20-cv-1286, 2022 WL 4259675, at *2 (S.D. Ind. Sept. 15, 2022) (citing 3 Newberg & Rubenstein on Class Actions § 7:35 (6th ed.)). "Rule 23(c)(1) . . . is not a Trojan Horse by which [a party] may endlessly reargue the

9

legal premises of their motion." *Gardner v. First Am. Title Ins. Co.*, 218 F.R.D. 216, 218 (D. Minn. 2003); *see also Jaynes v. United States*, 69 Fed. Cl. 450, 453 (2006). "[I]n the absence of materially changed or clarified circumstances, the Court cannot condone a series of rearguments on the class issues by either the proponent or the opponent of the class." *Barron v. Paycor, Inc.*, No. 20-cv-264, 2026 WL 431363, at *2 (S.D. Ill. Feb. 16, 2026) (cleaned up).

## III.    DISCUSSION

Before the Court are two Motions: a Motion for Reconsideration of the Summary Judgment Order or In the Alternative, a Motion to Certify the Order for Interlocutory Appeal; and a Motion to Decertify the Class; both filed by the City and joined by My-Way. The City argues in its decertification motion that the March 27, 2026 Summary Judgment Order (Filing No. 304), materially changed the class certification analysis, so the class should be decertified (Filing No. 309 at 14). The City also asks the Court to reconsider the Summary Judgment Order. The Court will address the Motion to Reconsider before turning to the Motion to Certify the Order for Interlocutory Appeal and the Motion to Decertify the Class.

### A.    Motion for Reconsideration

The City presents three arguments (which the Court will address in turn) why the Court should reconsider the Summary Judgment Order, in so far as it denied summary judgment for Count II: Negligence, and Count IV: Private Nuisance, against the City. The City argues that the Court (1) erroneously imposed a duty that Indiana law does not recognize, (2) erroneously imposed nuisance liability that Indiana law does not recognize, and (3) even if the Court were correct to impose such duty and liability, the City cannot be liable because it is immune under the Indiana Tort Claims Act.

1. **Count II: Negligence**

The City premises its Motion on the assertion that the Summary Judgment Order allowed the negligence claim to proceed "based on the City's mere ownership" of the 310/358 Properties (Filing No. 313 at 2, 6–7, 10). The City contends that the negligence claim turns on whether, under Indiana law, a municipality may be held to owe a duty based on ownership of property and knowledge of a hazardous condition, notwithstanding the absence of control over the premises or any qualifying relationship with the third party responsible for the alleged hazard. *Id.* at 6. The City argues that in cases involving real estate, the dispositive inquiry is control over the premises rather than mere ownership.

The City then contends that Indiana law does not impose a duty to control the conduct of third parties absent a qualifying relationship. *Id.* at 8. The City concludes that because of this, the factors announced in *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991) relied upon in the Summary Judgment Order, are inapplicable. The City argues that the Court's determination that the accumulation of plastic on the property via a trash recycling business was an activity on the land rather than a condition is incorrect. And regardless of whether the accumulation of plastics on the City's property is classified as an activity or condition, the harm arose from the conduct of a third party, My-Way, and thus, Indiana law does not impose a duty on the City.

In their response brief, the Plaintiffs point out that the City's Motion repeatedly characterizes the Summary Judgment Order as imposing liability based on "mere ownership" of property. The Plaintiffs contend that this characterization of the Summary Judgment Order is incorrect, and the Court instead applied Indiana law to the developed summary judgment record and found that Plaintiffs' negligence and nuisance claims could proceed because the City owned the 310/358 Properties, had actual knowledge of a long-standing fire hazard, knew that a fire could

result in neighborhood evacuation and property disruption, and failed to take effective action to abate that danger (Filing No. 315 at 6).

The Plaintiffs note that the Court rejected on summary judgment the very framing the City now repeats—that the City cannot be liable because it was not in possession or control of the 310/358 Properties and because My-Way retained physical control. The Plaintiffs contend that the City's Motion therefore does not identify any legal error in the Court's reasoning, but rather, substitutes the City's preferred factual characterization for the record the Court actually considered. *Id.* at 7–8.

In its reply brief, the City again asserts that it had no possession or control, so the Court should not have used the *Webb v. Jarvis* factors (Filing No. 317 at 5).

At the outset, the Court clarifies that the City's Motion is based on a misunderstanding of the Summary Judgment Order. To be clear, the Court did not hold that the law imposes a duty based on "mere ownership" of the 310/358 Properties. Indeed, the City made this exact same argument in its summary judgment briefing (Filing No. 241 at 25–27). The Court considered and rejected those arguments, instead finding that the designated evidence—the unsafe-building proceedings that addressed both the possibility of a fire event requiring a multi-agency response and possible evacuations, and an air plume study reflecting concerns for evacuation if a fire occurred—showed that the City had actual knowledge of both My-Way's failure to maintain the properties and the foreseeable possibility of ash, soot, and dislocation damages to nearby residents (Filing No. 304 at 16–17).

Moreover, the Court found many of the cases the City now cites to be inapplicable because the Plaintiffs were not invitees; at no point did any of the Plaintiffs step onto the 310/358 Properties. Accordingly, the Court found that premises liability principles—which impose a duty

to maintain property in a reasonably safe condition for business invitees, *see Podemski v. Praxair, Inc.*, 87 N.E.3d 540, 547 (Ind. Ct. App. 2017)—are not applicable to this case (Filing No. 304 at 14). The Court correctly analyzed whether the City owes a duty to Plaintiffs under the factors first enumerated in *Webb v. Jarvis*.

The City's Motion to Reconsider essentially attempts to relitigate issues already determined by the Court and substitute its version of the Court's ruling. The City contends that the Court accepted as undisputed that My-Way alone controlled the properties and held that Plaintiffs' claims could proceed solely because of mere ownership. As previously stated, this was not the Court's ruling. Instead, the Summary Judgment Order held that Plaintiffs had designated evidence sufficient to permit a jury to decide whether the City's own conduct as property owner, including actual knowledge of a foreseeable harm, contributed to the foreseeable harm caused by the fire.

On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. See *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). And where there is a material dispute of fact, as there is here, summary judgment is not appropriate. The City has provided no grounds on which the Court committed a manifest error of law, and a motion to reconsider is not an opportunity to simply relitigate matters previously before the Court. Accordingly, the Motion to Reconsider is **denied** as to Count II: Negligence of the Plaintiffs' Second Amended Class Action Complaint.

### 2. Count IV: Private Nuisance

The City contends that it cannot be held liable for nuisance because My-Way created the hazardous condition and physically occupied the property (Filing No. 313 at 11). The City asserts

13

that the Court recognized that a private nuisance arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property, but the Court erroneously concluded that the City's conduct could create a nuisance because it did not use its property. The City explains that even where a qualifying relationship exists, liability depends on whether the owner participated in or consented to the condition giving rise to the alleged nuisance which can be shown where a lease or agreement permits the use that necessarily results in a nuisance, or where the owner has actual knowledge of the condition and consents to its continuation. *Id.* at 13. The City asserts that Indiana law is well settled that where the alleged nuisance arises from the manner in which a third party uses property, the owner cannot be liable based on ownership alone.

In their response brief, Plaintiffs contend that the City once again substitutes its "no control" argument for the holding of the Court (Filing No. 315 at 11–12). The Plaintiffs assert that the fact that My-Way may have contributed to the issue does not eliminate the City's responsibility to abate a known fire hazard, nor does My-Way's involvement establish, as a matter of law, that the City lacked any legally meaningful control. *Id.* Plaintiffs point out that the Court did not create a broad rule that all municipal property ownership creates nuisance liability. Rather, the Court held only that, on this record, Plaintiffs designated enough evidence for a reasonable jury to decide whether the City's failure to remediate known hazardous conditions on its own property interfered with Plaintiffs' use and enjoyment of their homes. *Id.* at 13.

The City's reply brief reasserts its argument that it is not liable in nuisance because it did not use its property (Filing No. 317 at 6). The City also contends that its lack of relationship with My-Way compels reconsideration of Plaintiffs' nuisance claims. *Id.*

14

Here, as with the negligence claim, the City misunderstands the Court's nuisance determination. The Court did not create a broad rule that ownership alone can be the basis of nuisance liability. Rather, the Court found Plaintiffs' designated evidence showed that for over two years, the City owned the 310/358 Properties and allowed combustible materials in tremendous volume to remain without fire suppression and limited access to egress and fire lanes (Filing No. 304 at 26). The designated evidence also shows that the City knew of and was warned of the potential for a large-scale fire resulting in evacuation of the surrounding area. The Court determined that pursuant to this record, the issue of nuisance "is a question for the trier of fact because a reasonable jury could conclude that the City's failure to remedy a known fire hazard for more than two years resulting in a large-scale fire dislocating Plaintiffs from their homes could constitute a private nuisance." *Id.* at 26–27. The City has provided no grounds on which the Court committed a manifest error of law.

Moreover, the City is simply repeating arguments the Court already considered at summary judgment. The City argued in its summary judgment briefing that it did not engage in any activity beyond communicating with My-Way and thus could not be held liable for nuisance (Filing No. 241 at 31). As previously stated, reasserting the same arguments the Court rejected is not grounds for reconsideration. Accordingly, the Motion for Reconsider is **denied** as to Count IV: Private Nuisance, as well.

### 3.  Indiana Tort Claims Act ("ITCA")

The City asserts that the Court erred because it should have applied the immunities provided by the ITCA, codified at Ind. Code §§ 34-13-3-0.1–25 (Filing No. 313 at 15). Specifically, the City contends that the Court should have applied immunity under Section 34-13-3-3(a)(8) and (10). *Id.*

15

a. **Section 34-13-3-3(a)(8)**

Indiana Code § 34-13-3-3(a)(8) grants immunity from claims against a governmental entity for the adoption and enforcement of or failure to adopt or enforce any law, including rules and regulations. The City argues that the allegations against the City are based on a failure to enforce laws against My-Way, but the Court nonetheless found that this provision did not apply (Filing No. 313 at 15). The City contends that in doing so, the Court conflated a duty analysis for negligence with this specific ITCA immunity, which was an error, as the immunity analysis should be separate and distinct from that duty analysis. *Id.* (citing *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1065 (Ind. Ct. App. 1995)).

The City points to the Plaintiffs' Second Amended Class Action Complaint referencing the Defendants' disregard of Building Commission orders and failure to comply therewith. The City also points to the Plaintiffs' Statement of Claims asserting that the City failed to remediate fire hazards and unsafe conditions that were subject to orders to remediate.

The City then points to the Court's statements that "the City did not have exclusive control and management of the injuring instrumentality," "My-Way kept the 310/358 Properties under lock and key," and "the injuring instrumentality occurred due to My-Way's plastic business[,]" (Filing No. 304 at 25), arguing that the Court found the undisputed facts establish My-Way's control of the 310/358 Properties. The City contends that without control, the only avenue for the City to protect Plaintiffs from the harm of the fire or to abate the nuisance was to initiate another legal action to enforce the Building Commission orders.

The City then argues the Court's conclusion that the Building Commission orders were not orders "that fall within the scope of the City's purpose or operational power as a landowner," (Filing No. 304 at 37 (citing *Johnson v. Marion Cnty. Coroner's Off.*, 971 N.E.2d 151, 157–58 (Ind. Ct.

App. 2012) (internal quotation marks and citation omitted)), is incorrect because those orders fall precisely within the City's purpose and operational power. The City asserts that it was the City of Richmond Fire Department that inspected the 310/358 Properties and the City of Richmond's Building Commission that issued the orders pertaining to the 310/358 Properties (Filing No. 313 at 18).

The Plaintiffs respond that the City, just as it did in its summary judgment briefing, argues that Plaintiffs' claims are barred because they arise from the City's failure to enforce laws against My-Way. However, that is not the Plaintiffs' theory. Rather, Plaintiffs' theory is that the City owned the 310/358 Properties, knew they contained dangerous combustible materials, knew those conditions posed a serious fire and evacuation risk, and failed to take reasonable action as owner to abate or prevent the hazard from remaining on its land (Filing No. 315 at 14). The Plaintiffs then point out that the Court already rejected the City's attempt to transform that landowner-negligence theory into a regulatory-enforcement claim.

Plaintiffs assert that the existence of the Building Commission orders, fire-code violations, or other enforcement mechanisms does not mean the City's only relevant role was regulatory. Plaintiffs assert that a municipality that owns property does not become immune from ordinary tort duties simply because the dangerous condition on its property also violates laws or local orders. If that were the rule, governmental entities could avoid landowner liability whenever a known hazard also happens to be code violative. *Id.* at 14–15.

Plaintiffs also contend that the City's arguments prove too much. *Id*. at 15. Such position would mean that once a municipality identifies a dangerous condition through official proceedings, any later claim based on that same condition must be treated as a failure-to-enforce claim, even if the municipality owns the property and has authority to address the hazard as owner. That would

17

collapse the distinction between regulatory enforcement and proprietary responsibility. Plaintiff's argue that the Court properly refused to do so. *Id.* at 15. The Court agrees.

Once again, the City mistakenly asserts that the Court concluded that it is undisputed that the City lacked any control over the 310/358 Properties. The Court's statement that the City did not have *exclusive* control does not mean that the City had absolutely no ability to do anything beyond either enforcing the Building Commission orders or waiting until the inevitable fire caused a mass-scale evacuation. Indeed, the City takes the Court's statement out of context in another attempt to substitute the record for its argument.

The Court concluded that "Plaintiffs' invocation of *res ipsa loquitur* cannot succeed because the city did not have exclusive control and management of the injuring instrumentality." (Filing No. 304 at 25). However, the preceding language contained in the Summary Judgment Order explains that for *res ipsa* cases, a plaintiff must prove that the defendant had exclusive control of the injuring instrumentality and therefore only the defendant could be liable for the occurrence. *See id.* at 24–25. In other words, the Court could not (and did not) conclude that the City was the only entity with control over the 310/358 Properties. But stating that the City does not have exclusive control does not equate to saying it has no control. Such an assertion is an overextension of the Summary Judgment Order.

Moreover, the existence of the Building Commission orders does not cause Plaintiffs' landowner liability claims to transform into governmental regulatory claims. Indeed, the City reasserts the same arguments it made in its summary judgment briefing. The Court already rejected those arguments stating that "the mere fact that the Building Commission orders were issued against My-Way does not lead to the conclusion that Plaintiffs' claims concern the City's failure to

18

enforce the Building Commission orders." *Id.* at 37. Rather, the Building Commission orders simply establish the City's knowledge of the fire hazard and nuisance.

As stated in the Summary Judgment Order, the crux of Plaintiffs' Second Amended Class Action Complaint is that the City failed to use reasonable care and allowed a known fire hazard to persist on property it owned despite years of notice and opportunities to remedy the danger. The Plaintiffs' claims are not based on the Building Commission orders and any enforcement and failure thereof. Accordingly, because the Court has already addressed the City's arguments and the Court finds no manifest error of law, the Motion to Reconsider is **denied** as to this immunity provision of the ITCA.

### b.  Section 34-13-3-3(a)(10)

The City argues it is immune from liability under Indiana Code § 34-13-3-3(a)(10) because the fire and resulting damages were due to the action of My-Way. Indiana Code § 34-13-3-3(a)(10) provides immunity for the act or omission of anyone other than the governmental entity or the governmental entity's employee. The City argues that the Court's conclusion—that Plaintiffs' claims against the City are separate and distinct from the claims against My-Way—is erroneous (Filing No. 313 at 19). It was My-Way who exerted possession and control over the 310/358 Properties and accumulated combustible materials on the 310/358 Properties, and the City did not perform any act concerning the 310/358 Properties beyond reconnaissance. *Id.* at 20. The City contends that Plaintiffs' claims squarely address the actions of My-Way and the inactions by the City. Thus, the City is entitled to immunity because the fire and resulting damages were due to the act or omission of anyone other than the governmental entity or the governmental entity's employee—namely, My-Way. *Id.* at 21.

19

In their response brief, the Plaintiffs assert that their claims against the City are separate and distinct from their claims against My-Way (Filing No. 315 at 15). The Plaintiffs argue their claims against the City are premised upon the City owning the 310/358 Properties for more than two years before the fire and knowing that the 310/358 Properties posed a fire hazard, were a nuisance, and that a fire at the 310/358 Properties could result in multi-agency emergency response and possible evacuation. *Id.*

Plaintiffs also argue that the City's proposed interpretation of Section 34-13-3-3(a)(10) is far broader than the text permits, and were the Court to accept the City's interpretation, nearly every negligence case involving a governmental entity could involve some third-party conduct. Plaintiffs assert the City's interpretation is incorrect because a governmental defendant is not immune from its own negligence merely because another tortfeasor also contributed to the injury. *Id.* at 16. The Court agrees.

Here, not only is the City reciting the same arguments it did at summary judgment, but those arguments are also incorrect. The Plaintiffs' claims against the City are based on the City's own inaction—which the City accurately points out. But the alleged negligence and nuisance claims against the City are wholly independent of the negligence of My-Way. The City may argue to a jury that My-Way is the sole party responsible for the Plaintiffs injuries and that the City in no way contributed to or exacerbated the harms. However, that is a causation argument, not an immunity defense.

Disagreement with the Court is not grounds for reconsideration and even if it were, the Court committed no manifest error of law. Accordingly, the Motion to Reconsider is **denied** as to this immunity.

20

Having concluded that the Court made no manifest error of law, the Motion to Reconsider is **denied**.

**B.    Motion to Certify the Order for Interlocutory Appeal**

The City next asks the Court to certify the Summary Judgment Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (Filing No. 313 at 21). To certify an order for interlocutory appeal that is not otherwise appealable, the Court must make three findings: (1) that the "order involves a controlling question of law"; (2) "to which there is substantial ground for difference of opinion"; and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The City contends that its challenges to the Order meet all three standards. However, the Court need not move beyond the first, as the City's challenge does not involve a controlling question of law. On this standard, the City states that, "[t]he specific question for appeal will be whether a municipality, such as the City, owes a duty to the general public based solely on ownership of property, notwithstanding the municipality's absence of control over the property or any qualifying relationship with the party responsible for the alleged hazard." (Filing No. 313 at 22). As the Court has explained above, the City patently misunderstands the Summary Judgment Order and substitutes its argument for the Court's reasoning.

The Court did not hold that the City could be liable "based solely on ownership of property." The Court rejected such an argument—which the City made many times at summary judgment—and instead, held that, on this record, a reasonable jury could conclude that the City is liable for failing to abate a known fire hazard and nuisance (Filing No. 304 at 21). The Court further held that a reasonable jury could also conclude that the City's single demand letter was sufficient action. *Id.* Nonetheless, the Court's holding was based on specific evidence that the City

owned the 310/358 Properties for more than two years before the fire, was actually aware of the fire hazard and nuisance on its property, was aware that a fire could lead to a mass-scale evacuation of the surrounding area, and only demanded once that My-Way vacate the premises but failed to do anything beyond that. *Id.*

The City's proposed question for appeal is therefore premised on a misunderstanding of the Summary Judgment Order. Accordingly, interlocutory appeal is inappropriate, and the City's Motion is **denied**.

## C.    **Motion to Decertify Class**

As stated above, under Rule 23(c)(1)(C) the Court retains authority to modify or vacate a class certification at any time prior to final judgment. "[T]he district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *Rochford*, 565 F.2d at 977. While district courts have broad discretion on whether or not to certify a class, the Seventh Circuit has made clear that an order withdrawing class certification must provide a reasoned Rule 23 analysis sufficient to permit review; generalized concerns about individualized proof do not suffice where the disputed issue remains capable of common resolution. *Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098, 1101–03 (7th Cir. 2019) (vacating district court's decision to decertify after finding the decision lacked sufficient reasoning).

Accordingly, the Court will reanalyze the record under Rule 23's requirements keeping in mind that "in the absence of materially changed or clarified circumstances, the Court cannot condone a series of rearguments on the class issues by either the proponent or the opponent of the class." *Barron*, 2026 WL 431363, at *2 (cleaned up).

22

To certify a class under Rule 23, Plaintiffs must satisfy four prerequisite requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4). Before evaluating the Rule 23 requirements, the Court must first determine whether the class is identifiable. *Oshana v. Coca Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A class is identifiable if class membership can be readily determined by reference to objective criteria. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 496 (7th Cir. 2012). If successful in that regard, Plaintiffs must overcome the final hurdle by showing that the circumstances of their case fit one of the three "types" of class actions which Rule 23(b) defines. The Court previously certified the class pursuant to Rule 23(b)(3).

Where certification is sought under Rule 23(b)(3), Plaintiffs must show that questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual class members and that a class action is the superior method of resolving the controversy. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). A party seeking class certification bears the burden of demonstrating that certification is appropriate by a preponderance of the evidence. *Id.* The determination of whether to certify a proposed class is within the broad discretion of the district court. *Retired Chi. Police Ass'n.*, 7 F.3d at 596. While consideration of class certification is not "a dress rehearsal for the trial on the merits," the court "must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Messner*, 669 F.3d at 811 (omission in original) (quoting *Szabo*, 249 F.3d at 676).

The Court previously certified the following class: Those persons who resided within a half-mile radius evacuation zone around the fire at 358, 310, and 308 NW F Street from April 11 through April 16, 2023 (the "Class") (Filing No. 287 at 7). The Court then certified two subclasses: the Owner Subclass and Non-Owner Subclass. *Id.* The City now moves to decertify the Class.

23

The City does not challenge that the Class is sufficiently identifiable, and the Court sees no reason or change in circumstances that would undermine its previous finding. Accordingly, the Court finds that the Class is still sufficiently identifiable via property records for the Owner Subclass and leases, rental agreements, and tax records for the Non-Owner Subclass.

### 1. Rule 23(a) Requirements

The City contends that the Plaintiffs cannot meet their burden of satisfying the Rule 23(a) requirements (Filing No. 309 at 10). Pursuant to Rule 23, the named parties of a class of plaintiffs may sue on behalf of all members of a class if:

(1)     The class is so numerous that joinder of all members is impracticable;

(2)     There are questions of law or fact common to the class;

(3)     The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Although Plaintiffs ultimately bear the burden of showing that the Rule 23 requirements are met, this Court must engage in its own "rigorous analysis" to ensure that certification is appropriate. *See Santiago v. City of Chi.*, 19 F.4th 1010, 1016 (7th Cir. 2021). Each of the subclasses must independently meet the requirements of Rule 23(a). *See* Fed. R. Civ. P. 23(c)(5); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012) ("[A]s long as each subclass is homogeneous, in the sense that every member of the subclass wants the same relief, and each subclass otherwise satisfies the requirements for certifying a class, so that each could be the plaintiff class in a separate class action, there is no objection to combining them in a single class action."). The Court will address each Rule 23(a) element in turn.

### a. **Numerosity**

"Mere allegations that a class action would make litigation easier for a plaintiff are not enough to satisfy Rule 23(a)(1)." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). The rule requires that "the class must be so numerous that joinder of all class members is impracticable." *Jones v. Blinziner*, 536 F. Supp. 1181, 1189 (N.D. Ind. 1982). "While 'impracticable' does not mean 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of the class.'" *Anderson*, 986 F.3d at 777 (quoting 7A Wright & Miller's Federal Practice & Procedure § 1762 (3d ed.)).

In the Seventh Circuit, "a forty-member class is often regarded as sufficient to meet the numerosity requirement," though the proper focus should be the "practicability of joinder" rather than the number of putative class members. *Id.* This determination requires evaluation of "'the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute.'" *Id.* (quoting 7A Wright & Miller's Federal Practice & Procedure § 1762 (3d ed.)).

The City contends that the Court relied on Plaintiffs' citation to an unauthenticated report suggesting that 2,000 residents evacuated and noting that 2,000 was more than double the 863 properties the plaintiffs sought to certify in *Denney* in its class certification order (Filing No. 309 at 12). The City contends that the Plaintiffs never deposed the author of the report and instead deposed Jonathan Duke, deputy director of Wayne County Emergency Management Agency, who testified that he did not personally believe that 2,000 people were evacuated. *Id.* (citing Filing No. 309-1 at 6 pp. 15:21–25). The City argues that Plaintiffs' counsel admitted on the record, " The number was thrown around a lot, but how specific or how accurate it was, we don't know." *Id.*

25

(quoting Filing No. 309-1 at 15 pp. 53:6–8)[3] The City also contends that Jonathan Duke testified that he "personally saw people inside the evacuation zone." *Id.* (quoting Filing No. 309-1 at 13 pp. 42:3–7).

The City contends that Plaintiffs' counsel has admitted to not knowing how many people were evacuated and the only reason for the estimated 2,000-person number was inadmissible hearsay. The City concludes by proffering that the Court's prior class certification order did not address the fact that 150 individuals initiated their own action based on the facts of this case, and that action remains pending in state court. *Id.* at 13.

The Plaintiffs respond that the City's arguments rest on the false premise that Plaintiffs must prove the exact number of people who were physically evacuated before the class may proceed when Rule 23 does not impose such a requirement (Filing No. 314 at 8). Plaintiffs contend that the City overstates Jonathan Duke's testimony because even though he said he did not personally believe 2,000 people evacuated, he subsequently testified that there were "possibly 2,000 people impacted[,]" but did not have personal knowledge of the figure cited in the incident report which stated that "the fire forced the evacuation of over 2,000 people from their homes." *Id.* at 8–9 (quoting Filing No. 309-1 at 6 pp. 15:21–25; Filing No. 122-3 at 18).

The Plaintiffs note that they listed the author of the incident report, State Fire Marshal Joseph Tanasovish, on their witness list, and he intends to testify directly regarding his knowledge of the relevant events. Plaintiffs contend that the City cannot convert an evidentiary objection to one portion of the record into a basis for vacating certification. *Id.* at 9.

The Plaintiffs argue that the Class is tied to residences within the evacuation zone; not the number of people who were physically forced from their homes by police. *Id.* at 10. They assert

---

[3] The Court notes that counsel's proposed admission was not testimonial, but rather a comment made preceding a question being asked during Jonthan Duke's deposition (*See* Filing No. 309-1 at 15 pp. 53:6–8).

that the City's arguments that the evacuation was not mandatory because officials did not drag residents out, arrest noncompliant residents, or erect barriers at every point of entry is beside the point. Rather, the fact that an emergency evacuation order was issued to residents and persons within a residential half-mile radius is what matters for numerosity. *Id.*

The City replies that Plaintiffs have failed to meet their burden because they have offered no admissible evidence to establish the numerosity of the Class—exactly or generally (Filing No. 316 at 4). The City argues that the Court is required to consider Jonathan Duke's testimony, and the Plaintiffs cannot simply state that Joseph Tanasovich will be called at trial. Rather, they must provide the Court with admissible evidence as to numerosity. Lastly, the City contends that the 150-person mass action in state court proves that joinder is practical. *Id.* at 6.

Upon consideration of both parties arguments, the Court finds that numerosity is still satisfied and the personal belief from one individual that 2,000 people did not actually evacuate is not enough to warrant overturning the Court's previous finding.[4] As Plaintiffs point out, their claims are not based on being dragged out of their homes or arrested for not complying with an emergency evacuation order.

In addition, the Plaintiffs intend to call Joseph Tanasovich to testify about his personal knowledge of the figure, and whose incident report states that "the fire forced the evacuation of over 2,000 people from their homes." (*See* Filing No. 122-3 at 18). Moreover, Jonathan Duke testified that it was possible that 2,000 people were impacted (Filing No. 309-1 at 6 pp. 15:25–16:1). Accordingly, even if the incident report is hearsay, the very testimony the City now relies

---

[4] The designated evidence shows as a result of the fire, the Wayne County Emergency Management Agency issued an evacuation order of a half-mile radius from the origin of the fire—the 358 Property— resulting in the evacuation of up to 2,000 individuals (Filing No. 251-5 at 5, pp. 18:19–19:8, Filing No. 251-3 at 18). The evacuation order remained in place for five days, ultimately being lifted on April 16, 2023. *Id.* at 6, pp. 24:12–23. The smoke from the fire caused air quality concerns in the area and significant disruption to the community. *Id.*

on indicates that 2,000 individuals may have been impacted by the fire. The circumstances in which the Court previously found numerosity satisfied have not changed. Numerosity therefore remains satisfied.

### b. **Commonality**

To satisfy the commonality requirement, the claims of the proposed class members "must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). A "common nucleus of operative fact" generally fulfills this requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). This common nucleus is typically found "where the defendant has engaged in some standardized conduct toward the proposed class members." *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 U.S. Dist. LEXIS 14785, at *8–9 (N.D. Ill Aug. 12, 2002), *aff'd sub nom.*, *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003).

The City contends that for Plaintiffs to meet their burden on this prerequisite, there must be a more specific common issue than, "[w]ere the [d]efendants negligent?" (Filing No. 309 at 13 (quoting *Jamie S.*, 668 F.3d at 497)). Rather, Rule 23(a)(2) requires a common answer capable of resolving "an issue that is central to the validity of each one of the claims in one stroke." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The City contends that there is not a common answer that will resolve an issue that is central to the validity of each one of the claims in one stroke because the Summary Judgment Order dismissed some of Plaintiffs' claims against the City. The City asserts that because the Court dismissed Plaintiffs' strict liability, *res ipsa loquitur*, trespass, and battery claims against the City but those claims remain against Cornerstone, there cannot be a resolution of a central issue in one stroke. *Id.* at 14.

28

Plaintiffs respond that under Rule 23(a)(2), they need not show that every issue is common, but rather that the class claims depend upon a common contention capable of class wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (Filing No. 314 at 11 (quoting *Lacy v. Cook County*, 897 F.3d 847, 865 (7th Cir. 2018) (citation omitted))).

Plaintiffs note that the City's Motion identifies no relevant development since the Court considered this issue and misapprehends the standard by focusing on asserted differences among class members' experiences and damages, while ignoring the central, unifying issues that will resolve liability. Plaintiffs assert that the claims of every class member arise from the same discrete event and turn on the same course of conduct by the same Defendants. *Id.* at 12.

The City replies that other courts have decertified classes specifically on nuisance claims like Plaintiffs' (Filing No. 316 at 7). The City contends that because nuisance contains subjective elements, the claims are not common or typical to all members of the Class. The Court disagrees.

The Court previously found that commonality was satisfied because for the Class members to recover, they will all need to prove that Defendants were negligent or otherwise liable in the way they handled combustible materials and allowed the fire to occur, thus requiring common answers (Filing No. 287 at 15). The Court further found that the inevitability that some class members may have different damages does not disturb a finding of commonality. *Id.*

Here, nothing has changed, and the Court once again finds that commonality is satisfied. The Class members will still all need to prove that Defendants were negligent or otherwise liable in the way they handled combustible materials and allowed the fire to occur. The fact that the Court dismissed some of Plaintiffs' claims against the City does nothing to undermine the Court's previous finding. Accordingly, commonality is satisfied.

### c. **Typicality**

"A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [plaintiffs'] claims are based on the same legal theory.'" *Oshana*, 472 F.3d at 514. "Although '[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (alteration in original) (quoting *De La Fuente v. Stokely-Van-Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

The City argues that Plaintiffs cannot show typicality for the same reason they cannot show commonality—Class members have different legal causes of action, legal theories, and damages requests pending against three different types of Defendants (Filing No. 309 at 14). The City likens this case to *Millman v. United Techs. Corp.*, No. 16-cv-312, 2019 WL 6112559, at *5 (N.D. Ind. Nov. 18, 2019), where a district court found that the legal theories asserting in that case—such as negligence, trespass, nuisance, and state law claims—were not universally applicable to all proposed class members. *Id.* at *4.

Plaintiffs respond that the Court already rejected the City's attempts to defeat typicality by focusing on differences in damages (Filing No. 314 at 13). Plaintiffs note that the Court explained in its class certification order that Defendants were "focus[ing] on the typicality of damages rather than the claims," and held that the Plaintiffs' claims were typical because the two subclass members' claims "all rely on the same legal theories" and "arose from the same course of conduct by Defendants." *Id.* (quoting Filing No. 287 at 15).

The City's reply brief asserts the same reasoning for typicality as it did above in commonality. As with commonality, the Court disagrees.

The Court previously found that typicality was met for the same reasons commonality was met (Filing No. 287 at 15–16). The Summary Judgment Order dismissing some of Plaintiffs' claims against the City does nothing to undermine such a finding. Accordingly, for the same reasons commonality is still satisfied, typicality is as well.

### d. **Adequacy**

To satisfy the adequacy prerequisite, a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is composed of two parts: the adequacy of the named plaintiff[s'] counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chi. Police Ass'n.*, 7 F.3d at 598 (citation modified). "In order to be an adequate representative, the named plaintiff[s] must 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997)).

The City contends that the named Plaintiffs will not protect the interests of the Class because they both claim to be property owners (Filing No. 309 at 15). Thus, they will not adequately represent the Non-Owner subclass. *Id.*

In response, the Plaintiffs argue that the Court already dealt with this issue holding that "the separation of the class into subclasses resolves any issues," because ownership-dependent claims, such as private nuisance, would be asserted by the Owner Subclass, while the Non-Owner Subclass would pursue only claims for which ownership is not required (Filing No. 314 at 14 (quoting Filing No. 287 at 16–17)). The Plaintiffs argue that even if the Court concludes that the

Non-Owner Subclass requires an additional representative, the appropriate remedy is not decertification but modification under Rule 23(c)(1)(c), including appointment or substitution of an additional subclass representative and they respectfully request that opportunity in the alternative. *Id.*

The City replies that trial for this case is set to begin in three months. Thus, modification is not the appropriate remedy, and the Court should instead decertify the class (Filing No. 316 at10). The Court disagrees.

Circumstances concerning adequacy appear to have changed. In the parties' initial briefing for class certification, the City challenged adequacy on the grounds that Craig was *not* a property owner and therefore would not represent the Class adequately (*see* Filing No. 287 at 16). The Court rejected that challenge finding that the creation of the Owner Subclass and the Non-Owner Subclass rectified any issues. However, the City is now challenging the adequacy of the representatives on the ground that Craig *is* a property owner.

Nonetheless, this does not disturb the Court's finding that the named representatives will adequately represent the Class. That is because both representatives will be pursuing all claims in this case. To use the example above, both named representatives will pursue claims for private nuisance and all other claims alleged in the Second Amended Class Action Complaint. The mere fact that the Non-Owner Subclass may not be able to pursue private nuisance claims does not mean that the named representatives will not adequately represent that subclass in the claims the subclass may assert. In other words, there is not a single claim which the Non-Owner Subclass pursues that the Owner Subclass is not also pursuing. Accordingly, the Court is satisfied that adequacy is met, and modification is not necessary.

The Court once again finds that the Rule 23(a) prerequisites are satisfied. Thus, the Court moves on to the Rule 23(b) requirements.

### 2. Rule 23(b) Requirements

For class certification to be proper, Plaintiffs must also show that the circumstances of their case are such that one of the three available options for class certification under subsection (b) of the rule applies. The Court certified the Class pursuant to Rule 23(b)(3). Under Rule 23(b)(3), Plaintiffs must show that questions of law or fact common to the class members predominate over any questions affecting individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The burden is on Plaintiffs to demonstrate, by a preponderance of the evidence, that they have met each requirement of Rule 23. *Messner*, 669 F.3d at 811.

### a. Predominance

The predominance requirement is related to commonality in that common questions must exist class-wide, but "the predominance criterion is far more demanding." *Amchem*, 521 U.S. at 623–24. To meet this requirement, Plaintiffs must show "'common questions represent a significant aspect of [their] case and . . . can be resolved for all members of [the] class in a single adjudication.'" *Messner*, 669 F.3d at 815 (omission in original) (quoting 7AA Wright & Miller's Federal Practice & Procedure § 1778 (3d ed. 2011)). Predominance is "a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

In *Mejdrech v. Met-Coil Systems Corp.*, a class of residents located within a one-mile radius of a factory alleged contaminants from defendant's factory leaked into the soil and groundwater,

which then migrated to the nearby residential area. 319 F.3d 910 (7th Cir. 2003). There, the defendant argued that various causation issues, like the varying degree of contaminations on each property, precluded class certification. *Id.* at 911. The Seventh Circuit affirmed the district court in finding that common issues predominated because "[t]he questions whether Met-Coil leaked TCE in violation of law and whether the TCE reached the soil and groundwater beneath the homes of the class members are common to all the class members." *Id.*; *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394–95 (7th Cir. 2010) (noting that even though class members still must prove individual issues of causation and damages, this does not prevent class certification). The Seventh Circuit in *Mejdrech* explained its reasoning stating, "If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." 319 F.3d at 911.

The City argues that due to the Court's dismissal of some of the Plaintiffs' claims against it, the remaining claims against the City and Cornerstone are not the same (Filing No. 309 at 17). The City contends that because of this, there will be numerous issues with Plaintiffs' claims against Cornerstone, which will be different from and not applicable to the City. The City then argues that personal injury damages will be subjective and different for every Class member.

Plaintiffs respond that predominance is not defeated merely because class members may later need to prove the amount of their damages, the length of their displacement, or the particular expenses they incurred (Filing No. 314 at 15). Plaintiffs contend that the Court already applied that standard relying on *Mejdrech*, where the Seventh Circuit affirmed certification despite property-specific contamination and causation issues because the core questions were common

34

and would not be answered more accurately through repeated individual trials. *Id.* (citing *Mejdrech*, 319 F.3d at 911).

Plaintiffs contend that the Court already anticipated varying damages expressly recognizing that "individuals may still have to prove individual causation and damages," but held that this did not preclude certification because "it is common to have a final phase in which individualized proof must be submitted." *Id.* at 16 (quoting Filing No. 287 at 18–20). Plaintiffs assert that they do not need a single formula that mechanically calculates every Class member's damages to preserve certification. Rather, Plaintiffs need only show that the central questions are common, and their resolution will drive the outcome for every class member. Plaintiffs assert that a separate phase can address class membership and damages and if necessary, any unusually individualized damages claims can be reserved, excluded from class treatment, or handled through follow-on procedures. But none of this requires decertification. *Id.* at 18–19. The Court agrees.

The Court previously found predominance to be satisfied, and nothing has occurred subsequently that warrants an opposite finding. Every Class member's claims still depend on central questions the resolution of which will drive the outcome for all claims. As the Court previously stated, the fact that individualized proof may be required in the final phase of this litigation does not disturb such a finding. Accordingly, predominance is still satisfied.

### b. **Superiority**

In addition to establishing that common issues predominate over individual ones, Plaintiffs seeking class certification under Rule 23(b)(3) must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requirement is satisfied "'if a class action would achieve economies of time, effort, and expense and promote . . . uniformity of decisions as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results." *Bruzek v. Husky Oil Operations Ltd.*, 520 F. Supp. 3d 1079, 1099 (W.D. Wis. Feb. 19, 2021) (omission in original) (quoting *Amchem*, 521 U.S. at 615). To determine superiority, the Court considers:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The City focuses on the fourth factor and contends that Plaintiffs have failed to submit a litigation plan demonstrating class litigation is superior to individual trials (Filing No. 309 at 24). The City cites cases from the Eleventh and Fifth Circuits; both of which found the respective plaintiffs' class arguments lacking because they did not provide a litigation plan as to how the district court could manage all class claims. *Id.* (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278–79 (11th Cir. 2009) (the named plaintiff had done "nothing to acknowledge [the difficulties in managing a class action] or propose a trial plan that would feasibly address them, and the district court [did] not appear to have given any meaningful consideration to how this case, with its individualized claims and defenses, would be tried."); *Robinson v. Tex. Auto Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004) ("The district court failed to indicate how it would manage the gigantic plaintiff class and the large number of defendants.")).

Plaintiffs respond that superiority remains satisfied for the same reason it was satisfied at certification (Filing No. 314 at 19). Plaintiffs argue that this case involves common liability questions arising from one fire, one hazardous site, one evacuation order, and one affected

residential area. Trying these issues once on a class wide basis is more efficient, more consistent, and fairer than requiring residents to litigate the same liability questions separately.

Plaintiffs point out that the Court already found that a class action was far more efficient than individual trials for up to 2,000 individuals, and they argue nothing changes that analysis. The same witnesses, records, property history, fire-origin evidence, emergency-response evidence, evacuation evidence, and liability proof would have to be presented in every individual case. Decertification would not eliminate individualized damages issues; it would merely force those issues to be litigated alongside the same common liability evidence again and again. *Id.* at 20.

Under these circumstances, superiority is satisfied. The City does not challenge the first three factors and thus, the Court finds that they still weigh in favor of superiority. The Court previously found that managing the class action would not be overly difficult and that, if anything, individual trials would cause greater difficulties and expend more judicial resources than necessary (Filing No. 287 at 20). As stated above, nothing subsequent to the Court's class certification order necessitates an opposite finding. Accordingly, the Court finds that superiority remains satisfied.

Having concluded that Plaintiffs still satisfy Rule 23(a) and (b)(3), the Court finds that the Class should not be decertified, and the Motion to Decertify is **denied**.

### IV.     CONCLUSION

Surviving a summary judgment motion means that the court has determined—based on the record before it—that there are genuine, disputed issues of material fact that must be decided by a jury at trial. The City has provided no grounds on which the Court committed a manifest error of law in the Summary Judgment Order, and the Motion for Reconsideration and alternative Motion to Certify the Order For Interlocutory Appeal (Filing No. 312) are **DENIED**. In addition, for the reasons discussed in this Order, the Motion to Decertify Class (Filing No. 308) is **DENIED.**

**SO ORDERED**.

Date:   6/11/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MY-WAY TRADING, INC.
c/o Seth Smith
P.O. Box 1282
308 NW F St.
Richmond, IN 47374
plasticman1@earthlink.net

Benjamin D. Felton
DYER GAROFALO MANN & SCHULTZ
bfelton@dgmslaw.com

Arie J. Lipinski
Lipinski Law
lipinski@lipinski-law.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Jackson Lee Schroeder
Bose McKinney & Evans LLP
jschroeder@boselaw.com

John Smalley
Dyer, Garofalo, Mann, & Schultz
jsmalley@dgmslaw.com

Brad R. Sugarman
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
bsugarman@boselaw.com

Seth M. Thomas
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sthomas@boselaw.com