**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TUSHAWN CRAIG,<br>MARQUETTA STOKES,<br><br>Plaintiffs,<br><br>v.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH,<br>CITY OF RICHMOND, INDIANA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 1:23-cv-01575-TWP-MJD

| | |
|---|---|
| CITY OF RICHMOND, INDIANA,<br>CITY OF RICHMOND, INDIANA,<br><br>Cross Claimants,<br><br>v.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH,<br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH,<br>MY-WAY TRADING, INC.,<br><br>Cross Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| CORNERSTONE TRADING GROUP, LLC,<br><br>Third Party Plaintiff,<br><br>v.<br><br>CITY OF RICHMOND, INDIANA,<br><br>Third Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ALLEN WELLMAN HARVEY KEYES           )
COOLEY, LLP,                         )
                                     )
            Interested Party.        )

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE

This matter is before the Court on a Motion to Exclude the Report and Testimony of William D. Hicks, Jr. ("Dr. Hicks") filed by Defendant City of Richmond (the "City") (Filing No. 289). Plaintiffs Tushawn Craig and Marquetta Stokes (together, the "Plaintiffs") initiated this action on behalf of themselves and all others similarly situated (the "Class") against the City and Defendants Cornerstone Trading Group, LLC, and Seth Smith after a fire occurred at 308, 310, and 358 NW F Street, Richmond, Indiana (collectively, the "Properties") resulting in members of the Class being evacuated from their homes (Filing No. 1-2). The Plaintiffs retained Dr. Hicks as an expert to provide a life and safety code review for the Properties. Dr. Hicks prepared an expert report that was disclosed on January 24, 2025 (the "Report") (Filing No. 290-1). The City moves to exclude the Report and testimony from Dr. Hicks, contending that the Report does not comply with Federal Rule of Civil Procedure 26(a)(2)(B) and that Dr. Hicks' testimony in the Report is inadmissible under Federal Rule of Evidence 702 (Filing No. 291). For the reasons discussed below, the City's Motion is **granted in part** and **denied in part**.

## I.    BACKGROUND

A large-scale industrial fire occurred in April 2023, at the Properties, two of which were owned by the City—310 and 358 NW F Street, Richmond, Indiana (together, the "310/358 Properties"). The Plaintiffs initiated this class action case against the City and Defendants Cornerstone Trading Group, LLC, and Seth Smith alleging various claims, of which only two remain for trial —negligence and private nuisance.

On January 3, 2025, Plaintiffs' counsel retained "Dr. William D. Hicks of Fire Dynamics Analysts, LLC to perform an analysis of the related fire and safety codes regarding a fire incident that occurred at 308, 310, and 358 NW F Street, Richmont, IN on Tuesday, April 11, 2023." (Filing No. 290-1 at 1). On January 24, 2025, Plaintiffs disclosed the Report, which states that it is a fire and life safety code review. The Report is twelve pages long and purports to assert four main conclusions with which the City takes issue. First, Dr. Hicks seeks to offer testimony at trial that the City's conduct, or lack thereof, constituted various fire code violations (the "Code Violation Opinion"). Second, he seeks to offer testimony that the City, as title owner of the 310/358 Properties, was in control of the Properties from the time it became owner until the time of the fire in April 2023 (the "Control Opinion"). Third, Dr. Hicks seeks to offer testimony at trial that the City was responsible for addressing hazards at the 310/358 Properties but failed to do so (the "Responsibility Opinion"). Fourth and finally, he seeks to offer testimony that the City's failure to comply with fire code violations and remediate known fire hazards caused the exacerbation and scale of the resulting fire (the "Causation Opinion").

The City requests that the Court exclude the Report entirely for failure to comply with Rule 26(a)(2)(B) and Rule 702 and in the alternative, to exclude the above four specific opinions (*see* Filing No. 291).

## II.    LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in limine." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purposes. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so

questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

Federal Rule of Evidence 702 governs testimony of expert witnesses. An expert may testify regarding the ultimate issue in a case. Fed. R. Evid. 704(a). Furthermore, an expert can base his opinion on inadmissible evidence. Fed. R. Evid. 703. However, "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

"Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.* at 489. The court is given "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Jenkins*, 487 F.3d at 489).

"In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; [(2)] whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community." *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)). "The court should also consider the proposed expert's full range of

4

experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.*

> Since the gatekeeping inquiry must be tied to the facts of the particular case, . . . a trial court may—but is not required to—consider "one or more of the more specific factors that *Daubert* mentioned when doing so will help determine the testimony's reliability." But, the [Supreme] Court stressed, those factors, which were meant "to be helpful, not definitive," "neither necessarily nor exclusively apply to all experts or in every case." Their applicability will depend on "'the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" The procedure employed will depend largely on the "particular circumstances of the particular case at issue."

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006) (internal citation omitted) (quoting *Kumho Tire*, 526 U.S. at 142, 150, 152).

Additionally, the district court must determine whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616.

> Vigorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence. The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

*Richman*, 415 F. Supp. 2d at 933 (citation modified). All told, "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

### III.    DISCUSSION

The City contends that the Report and testimony of Dr. Hicks should be excluded for two reasons: (1) Dr. Hicks' opinions fail to comply with Federal Rule of Civil Procedure 26(a)(2)(B); and (2) Dr. Hicks' opinions must be excluded under Federal Rule of Evidence 702 for lack of specialized knowledge and because his opinions are not based on sufficient facts, data, or reliable principles and methods (Filing No. 291). The Court will address each argument in turn.

### A.    Fed. R. Civ. P. 26(a)(2)(B)

Fed. R. Civ. P. 26(a)(2)(A) requires parties to disclose the "identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). This rule divides expert witnesses into two categories, one of which requires written reports and the other only summary disclosures. For experts "retained or specially employed to provide expert testimony in the case," such as Dr. Hicks here, a party must provide a detailed written report compliant with Rule 26(a)(2)(B). The purpose of the Rule 26 report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare a response. *See Walsh v. Chez*, 583 F.3d 990, 993 (7th Cir. 2009).

To meet this standard, an expert report "must include 'how' and 'why' the expert reached a particular result, and not merely the expert's conclusory opinions." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)). Specifically, Rule 26(a)(2)(B) provides that an expert report must contain:

> (i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii)    the facts or data considered by the witness in forming them;
> (iii)   any exhibits that will be used to summarize or support them;
> (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

6

(vi)     a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). As the Seventh Circuit has held, however, "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." *Ciomber*, 527 F.3d at 642. "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify, and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony." *Id.* (internal citations omitted).

When a party fails to comply with Rule 26(a)(2)(B), the result is the "exclusion of an expert's testimony . . . 'unless the failure was substantially justified or is harmless.'" *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009) (quoting Fed. R. Civ. P. 37(c)(1)). While the Court has broad discretion in determining whether an error is harmless or justified, it should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Banister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011) (quoting *Westefer v. Snyder*, 422 F.3d 570, 585 n. 21 (7th Cir. 2005)).

The City challenges Dr. Hicks' Report and argues that it does not comply with Rule 26(a)(2)(B). First, rather than a complete statement of all opinions that Dr. Hicks plans to offer at trial, the Report only contains "a summary report of [his] review to date" and expressly states it is "not intended to list and describe each fact upon which the findings and conclusions are based." (Filing No. 291 at 13 (quoting Filing No. 290-1 at 3)). Second, the Report contains a brief statement of qualifications but does not contain a list of cases in which Dr. Hicks has testified at trial or in a deposition during the past 4 years. Finally, the Report does not provide the hourly rate that Dr. Hicks charged Plaintiffs, either for his study or trial testimony. *Id.* at 14. The City also contends

7

that even if Plaintiffs suggest that Dr. Hicks' deposition testimony could cure the significant deficiencies in his expert Report, Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with deposition testimony. *Id.* (citing *Ciomber*, 527 F.3d at 642).

The City argues that the failure to comply with Rule 26(a)(2) was neither harmless nor justified. The City points out that the initial deadline for liability expert disclosures was October 29, 2024, but that deadline was extended at Defendants' request to January 24, 2025, and Plaintiffs opposed the Defendants' request for an extension. Plaintiffs were provided three additional months to prepare their liability expert reports but waited until just three weeks before the deadline to retain Dr. Hicks. *Id.* at 15. The City contends that if Dr. Hicks were permitted to testify with only his summary Report limiting his opinions, then the City will have no opportunity at trial to cure the prejudice created. The City argues the Report was prepared and disclosed and defended by Plaintiffs in Dr. Hicks' February 2025 deposition, so the Court can conclude that the manner of Dr. Hicks' Report was willful in its presentation. *Id.*

The Plaintiffs respond that the City's contention that the Report is incomplete because it does not describe each fact upon which the findings and conclusions are based is flawed. Dr. Hicks explained in his deposition that he did not omit any materials upon which he relied (Filing No. 295 at 16 (citing Filing No. 290-3 at 100:10–101:1)). Plaintiffs argue that the City is adopting a strained reading of Dr. Hicks' conclusions; contrary to the City's claim of unfair surprise, Dr. Hicks' Report does not contain any new opinions. Plaintiffs further argue in a footnote that even if Dr. Hicks' initial Report was less detailed than Rule 26(a)(2)(B) contemplates, any such deficiency was harmless under Rule 37(c)(1) because the City had full opportunity to depose Dr. Hicks, obtain every document he relied upon, and question him extensively about the basis for each opinion. Plaintiffs argue that the City was therefore neither misled nor prejudiced; its objections instead go

to form, not fairness, and any technical shortcomings have been cured through complete discovery. *Id.* at 17 n. 34. Plaintiffs note that during Dr. Hicks' deposition, he testified that his hourly rate was $250.00, and the list of depositions and trial testimony Dr. Hicks prepared reflects all testimony given within the past four years. *Id.*

In Reply, the City disputes the assertion that Dr. Hicks' deposition testimony can cure the deficiencies and cites this Court's decision that "parties cannot cure expert reports that fall short through later depositions." (Filing No. 296 at 9 (quoting *Beyers v. Consol. Ins. Co.*, No. 119-cv-01601, 2021 WL 1061210, at *10 (S.D. Ind. Mar. 19, 2021))). "[Dr.] Hicks was obligated to provide the how and why for his opinions in his report, and the fact that the City had an 'opportunity' to probe his opinions in a deposition provided no 'notice to opposing counsel—before the deposition—as to [the opinions] the expert witness will testify.'" *Id.* (alteration in original) (quoting *Ciomber*, 527 F.3d at 642). The City contends that it did not retain a cause and origin expert because Dr. Hicks' Report did not contain any cause and origin opinions, so it would be highly prejudicial to the City's defense if Dr. Hicks were permitted to testify at trial as to what led to the fire or to offer undisclosed opinions about the scale, severity, and magnitude of the fire. *Id.* at 9. The City argues that if Dr. Hicks' Report violated Rule 26(a)(2)(B), that violation cannot be cured by Dr. Hicks' later deposition.

The Court finds that Dr. Hicks' deposition testimony that his Report contains all information that he relied upon, in combination with the Plaintiffs agreement that they will not introduce any new evidence not contained in Dr. Hicks' Report, supports that any violation is harmless under Rule 37(c)(1). As previously stated, when determining whether a Rule 26 violation is harmless or justified courts should consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood

of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Banister*, 636 F.3d at 833.

Here, Dr. Hicks' deposition testimony did not contain any new information, and the opinions the City challenges concerning what led to the fire and the scale and scope of the fire were already contained in the disclosed Report. Thus, the City did not suffer an unfair surprise. Moreover, Dr. Hicks' assertions about what led to the fire do not purport to establish the origin of the fire as the City claims. The Report merely concludes—as do ample other documents including the Richmond Fire Department's inspections and the Uniform Building Code Orders—that the large collection of combustible materials exacerbated the fire. Dr. Hicks' Report does not purport to conclude what precise combustion began the fire. Moreover, the City had Dr. Hicks' Report prior to his deposition, and Dr. Hicks specifically stated that all information he relied upon is contained in his Report, including his opinions concerning what led to the fire and the scale and magnitude of the fire. The Court finds the City was neither prejudiced nor surprised by Dr. Hicks' opinions in his deposition and could have cured any prejudice.

This finding is consistent with the Court's decision in *Beyers* because in that case, the witness began testifying at their deposition about matters not contained in their initial Rule 26 report. 2021 WL 1061210, at *10. However, Dr. Hicks did not opine on any undisclosed matters. Rather, he specifically stated that all his opinions were contained in his Report and anything he relied upon was also included in the Report.

Finally, as mentioned above, the Plaintiffs do not intend to offer any new evidence not contained in Dr. Hicks' Report (Filing No. 366 at 10). Should Plaintiffs attempt to offer any evidence or testimony from Dr. Hicks beyond the opinions disclosed in his Report, the City may object at trial, and such testimony would likely be deemed inadmissible and stricken. At present,

10

the Court cannot say that his opinions would not be admissible for any purpose, and the City's Motion is therefore **denied** as to exclusion under Rule 26.

**B.**    **Fed. R. Evid. 702**

The City next contends that Dr. Hicks' opinions must be excluded under Federal Rule of Evidence 702 because he lacks specialized knowledge to offer the opinions, and they are not based on sufficient facts or data or reliable principles and methods. Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. However, an expert may not offer legal opinions. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). "It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence." *Id.* Accordingly, "the meaning of statutes, regulations, and contract terms is a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge." *United States v. Lupton*, 620 F.3d 790, 799–800 (7th Cir. 2010) (internal quotation marks and citations omitted).

The City contends that Dr. Hicks' Report and opinions must be excluded for six reasons: (1) they are based on an outdated inspection performed when the City was not the owner of the 310/358 Properties, rendering them unreliable and without sufficient facts or data; (2) Dr. Hicks' code analysis is not amenable to a scientific method and is therefore not reliable; (3) Dr. Hicks'

Code Violation Opinion is not based on his own knowledge, review or analysis and is based on an inapplicable fire code; (4) Dr. Hicks' Control Opinion is a legal conclusion; (5) Dr. Hicks' Responsibility Opinion is a legal conclusion; and (6) Dr. Hicks repudiated his Causation Opinion and instead asserts that the conditions on the Properties only exacerbated the fire, which he also lacks specialized knowledge to assert and is based on insufficient facts and data (*see* Filing No. 291). The Court will address each argument in turn.

### 1.  Outdated Inspection

The City asserts that Dr. Hicks bases all his opinions solely on an inspection of the Properties conducted on May 15, 2019, almost 4 years before the fire occurred on April 11, 2023, and over two years prior to the City owning the 310/358 Properties (Filing No. 291 at 17). The City contends that because of this, there are no "fully documented fire code violations" during the City's ownership of the 310/358 Properties as Dr. Hicks claims. *Id.* (quoting Filing No. 290-1 at 11). The City then argues that Co-Defendants in this case have indicated that a considerable amount of materials were removed from the Properties after the Unsafe Building Commission Orders in late 2019 and before the fire, but Dr. Hicks did not review documents providing such facts and thus, his opinions are not based on sufficient facts or data as Rule 702(b) requires.

The Plaintiffs contend that Dr. Hicks' Report was not based solely on the 2019 Richmond Fire Department inspection reports but also upon the Unsafe Building Commission's findings, the City's own code enforcement records, and the governing fire safety codes, including the International Fire Code, the Indiana Administrative Code, and Indiana's Unsafe Building Law (Filing No. 295 at 9). Dr. Hicks also reviewed fire safety violations documented by the City's own fire prevention personnel and assessed those violations against the record evidence to perform an independent evaluation. From this analysis, Dr. Hicks considered whether the identified hazards

were consistent with cited violations and opined on the consequences of the failure to mitigate those known fire safety risks in the aftermath of the April 2023 fire. Plaintiffs further contend that Dr. Hicks' Report clearly explains the sources and methodology relied upon. *Id.* at 10 (citing Filing No. 290-1 at 6–7). The Court agrees.

While the City reasserts its same argument in its reply brief—that Dr. Hicks only reviewed an inspection of the Properties conducted on May 15, 2019—the City simultaneously concedes that "[t]here is no record of any inspection between the City's inspection in May 2019 and the [f]ire in April 2023." (Filing No. 296 at 14). Were the Court to agree with the City in its assertion that any expert testimony that is not based on a review of inspections of the Properties from 2020–2023—inspections the City concedes do not exist—should be considered unreliable, then no expert would be able to testify in this case, including those offered by the City. This cannot be a proper outcome.

The City's argument is also unpersuasive considering that neither the Plaintiffs nor Dr. Hicks had reason to know of the potential fire at the Properties. Requiring the Plaintiffs to obtain an independent inspection of a building prior to a fire they did not know would occur is not reasonable. The City cannot fail to inspect the Properties even though it was one of the few parties in a position to do so only to claim that the Plaintiffs' purported expert testimony is unreliable for lack of recent inspection. Accordingly, the City's Motion to Exclude Dr. Hicks' Report and testimony on the grounds that his opinions were based on an outdated inspection is **denied**.

## 2. **The Scientific Method**

The City asserts that Dr. Hicks relies on NFPA 921, *Guide for Fire and Explosion Investigations*, as the methodology supporting his opinions (Filing No. 291 at 19). The City asserts that NFPA 921 is not intended for code analysis, and points to its own expert's opinion that NFPA

921 requires the use of the scientific method in performing an original and cause analysis of a fire loss. The City's expert opines that NFPA 921 does not contain a methodology for performing a code analysis and that the scientific method is ill-suited to the proper analysis of the applicable code requirements in a given jurisdiction. *Id.* The City asserts that when it obtained title to the 310/358 Properties, it specified in the Sales Disclosure Document that the intended "occupancy/use" of the property was for "remediation/demolition." *Id.* at 20 (quoting Filing No. 238-22 at 2).

The Plaintiffs respond that the Seventh Circuit recognizes that experts who base their opinions on accepted professional standards and industry methods apply reliable methodologies under Rule 702, and courts have endorsed NFPA 921 (Filing No. 295 at 10 (citing *Smith*, 215 F.3d at 719 ("The trial court must use the criteria relevant to a particular kind of expertise in a specific case to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."); *Am. Home Assurance Co. v. Makita Corp. of Am.*, 752 F. Supp. 3d 1028, 1048 (N.D. Ind. 2024) ("NFPA 921 is a recognized guide for use by fire investigators in the fire investigation process." (internal quotation marks omitted)))). The Plaintiffs then argue that the City has not explained how listing its intended "occupancy/use" status would absolve it from remediating specific documented code violations, but, nonetheless, disagreements between the parties' experts on the proper code application and the relevant consequences of their respective applications represent a classic "battle of the experts" question and are not grounds for exclusion. *Id.* at 18–19.

In Reply, the City contends that Dr. Hicks confirmed in his deposition that he took the fire code violations verbatim from the 2019 inspection report and made sure that the wording matched

14

up with the violations (Filing No. 296 at 11). The City argues that Dr. Hicks did not collect and analyze any data, did not identify any additional fire code violations beyond those found in 2019, and did not analyze compliance or hazard abatement. The City further contends that NFPA 921 is not intended for code analysis but rather requires the use of the scientific method in performing an origin and cause analysis of a fire loss, but Dr. Hicks expressly stated that he did not perform an origin and cause analysis and does not know the origin of the fire. *Id.* at 12.

The only evidence the City cites for its position that NFPA 921 is inappropriate for the analysis Dr. Hicks carried out is its own experts' reports (*see* Filing No. 291 at 19–20 (citing Filing No. 238-16 at 8)). The City has provided no case law, statute, regulation, or administrative record indicating that NFPA 921 cannot be used for a life and safety code analysis such as the one Dr. Hicks performed. The Northern District of Indiana recognized that the "NFPA 921 is a comprehensive, peer-reviewed, and detailed guide for fire investigation, and courts have held that its methodology is reliable for purposes of Rule 702." *Am. Home Assurance Co.*, 752 F. Supp. 3d at 1047–48 (citation modified) (alteration omitted). While the Court acknowledges that NFPA 921 may be used to determine a fire's origin, the Court is not persuaded that NFPA 921 may be used solely for determining a fire's origin and not for the purposes for which Dr. Hicks used it.

Experts often disagree, and dueling expert opinions are not uncommon. Such disagreements are best suited for a jury to resolve and, should it be necessary, objections at trial rather than total exclusion. Accordingly, the City's Motion to exclude on this basis is **denied.**

### 3.  <u>Personal Knowledge</u>

Next, the City contends that Dr. Hicks essentially took the 2019 inspection report and regurgitated it (Filing No. 291 at 20–21). The City points out that Dr. Hicks did not take any photographs or documentation or interview anyone regarding the 2019 inspection report. Rather,

he simply accepted 2019 inspection report as accurate. The City argues that Dr. Hicks analysis was based on an international model code, IFC 2012, not Indiana's applicable fire code, and courts have excluded expert testimony when the experts cite outdated versions of the code at issue. *Id.* at 21. Thus, allowing Dr. Hicks to simply restate information already in the record and relying on an inapplicable code will not assist the trier of fact in assessing any alleged fire code violation at the Properties, contrary to the requirements of Rule 702(a), and is not based on any facts or data Dr. Hicks collected himself. Thus, the City contends Dr. Hicks' opinions are not based on sufficient facts or data as required by Rule 702(b). *Id.*

The Plaintiffs respond that Dr. Hicks was retained as a fire and life safety code review expert rather than a cause and origin expert. For that purpose, reliance on documented inspections, deposition testimony, and the City's own fire-safety findings is entirely appropriate (Filing No. 295 at 18). Plaintiffs assert that the City is welcome to present evidence that at least some materials were removed between the 2019 inspection date and the fire, evidence that Dr. Hicks considered representations that the City had done nothing to remediate various fire code violations and to remove accumulated materials from their properties, and testimony concerning a December 29, 2022 report indicating that "the volume of plastics storage inside and outside of structures created complicated reconnaissance conditions." *Id.* (quoting Filing No. 251-8 at 172:18–21). Plaintiffs argue that Dr. Hicks' review of the Richmond Fire Department's inspection reports and his comparison of those findings against nationally recognized codes are the sort of professional analysis Rule 702 contemplates. *Id.*

In Reply, the City argues persuasively that an expert using an inapplicable fire code may cause that expert's opinions to be excluded (Filing No. 296 at 13). The City asserts that the international fire code Dr. Hicks used, IFC 2012, was not the applicable fire code at the time of

the May 2019 inspection or at the time of the fire in April 2023, and the specific provision Dr. Hicks cites for his Responsibility Opinion—IFC 109.2—was deleted from Indiana Fire Code 2014 in "entirety without substitution." *Id.* (quoting 675 IAC 22-2.5-2(t)). The City points out that Plaintiffs admit in their response brief that although Indiana did not adopt Section 109.2 of the IFC 2012, that provision remains instructive in articulating nationally accepted principles of hazard abatement and owner responsibility. *Id.* (citing Filing No. 295 at 19).

The Court agrees with the City that allowing Dr. Hicks to introduce testimony concerning inapplicable code sections that have not been adopted by Indiana would serve only to confuse the jury, especially considering a negligence claim remains in this case. There is a risk that the jury may determine that because Dr. Hicks asserts that the City violated an inapplicable code, it was negligent. Moreover, the Court agrees that simply citing to the entirety of the Indiana Administrative Code and Unsafe Building Law is insufficient. Accordingly, the City's Motion is **granted in part** as to Dr. Hicks' Responsibility Opinion.

### 4.  Dr. Hicks' "Control Opinion"

The City next turns to Dr. Hicks' Control Opinion, where he states that "the City of Richmond, IN had held control and ownership of the 310/358 Properties for two years." (Filing No. 290-1 at 11). The City contends that control is a legal question relating to whether the City had a duty to Plaintiffs, and that legal question is in the purview of the judge, and not an expert witness. (Filing No. 291 at 22).

While the Court agrees that the issue of control is a legal one solely for the judge, the Court has already determined in its Order on Pending Summary Judgment Motions that the City owed a duty to the Plaintiffs irrespective of control because foreseeability was the relevant inquiry, not control (*see* Filing No. 304 at 19). Accordingly, such objection is better suited for trial and can be

17

made in context should the need arise. The City's Motion is therefore **denied** concerning Dr. Hicks' Control Opinion.

### 5. <u>Dr. Hicks' "Responsibility Opinion"</u>

The Court need not discuss whether Dr. Hicks' Responsibility Opinion is a legal conclusion as the Court has already granted the City's Motion to exclude this opinion. Dr. Hicks opinion as to responsibility is excluded and the City's motion to exclude this testimony is **granted**.

### 6. <u>Dr. Hicks' "Causation Opinion"</u>

The City next turns to Dr. Hicks' Causation Opinion, which states that the fire "and its subsequent impact on the community resulted from the City of Richmond and Cornerstone Trading Group, LLC's failure to mitigate multiple fire code violations identified and documented during the May 15, 2019 inspection." (Filing No. 290-1 at 12). The City states that during Dr. Hicks' deposition, he did not assert that the failure to mitigate the conditions on the Properties caused the fire but rather affected the size, impact, and intensity of the Fire. The City contends that Dr. Hicks therefore repudiated his Causation Opinion.

The City points out that Dr. Hicks did not do any analysis to quantify the impact that the failure to correct the violations had on the fire, even though an analysis could have been done by reviewing an inventory for the Properties. However, Dr. Hicks testified that an analysis would not have been done by him, but rather by a Fire Protection Engineer (Filing No. 291 at 27 (citing Filing No. 290-3 at 143:22–144:8)). And Dr. Hicks did not conduct a failure analysis—that is, he did not evaluate how a change in conditions could have prevented or mitigated the fire—the very analysis required to support his conclusion. *Id.*

The Plaintiffs contend that the fire's subsequent impact on the community would necessarily incorporate the fire's size, impact, and intensity and thus, this was not a new opinion

18

outside of Dr. Hicks' report. Indeed, many of the violations at issue relate directly to the magnitude of a potential outbreak and the rapidity of its growth (Filing No. 295 at 17). Dr. Hicks specifically testified that, while he believed a failure to correct analysis or failure analysis might be theoretically possible, "you would actually have to have access to the material before it burned to get weights, chemical composition, [and] heat release rates," and that it could be done if a Fire Protection Engineer "could get on the front end of the whole incident." *Id.* at n. 36 (quoting Filing No. 290-3 at 143:13–21).

The City is once again attempting to have the Court exclude Dr. Hicks' Report and opinions on the grounds that he did not perform an analysis that he specifically testified would have had to have been performed before the fire. As the Court stated previously, neither Dr. Hicks nor the Plaintiffs knew that the fire was going to occur. Dr. Hicks was consistent and clear through his Report and deposition that his opinion relates to failures to remediate known and documented fire code violations that led to the fire's intensity, size, and duration (Filing No. 290-3 at 95:22–96:10). The City is welcome to challenge Dr. Hicks' opinions through their own expert's testimony and through cross-examination at trial. However, the Court cannot say that his opinions are causation are unreliable and not admissible for any purpose. Accordingly, the City's Motion is **denied** as to Dr. Hicks' Causation Opinion.

## IV.   CONCLUSION

For the reasons discussed above, the City's Motion to Exclude the Report and Testimony of Dr. William D. Hicks, Jr. (Filing No. 289) is **GRANTED IN PART and DENIED IN PART**. The Motion is **granted** insofar as Plaintiffs may not elicit testimony from Dr. Hicks concerning his Responsibility Opinion or opinions based on inapplicable fire codes not adopted by Indiana, such as IFC 2012 § 109.2. The Motion is **denied** in all other respects.

19

An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED**.

Date:    8/7/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MY-WAY TRADING, INC.
c/o Seth Smith
P.O. Box 1282
308 NW F St.
Richmond, IN 47374
plasticman1@earthlink.net

Benjamin D. Felton
DYER GAROFALO MANN & SCHULTZ
bfelton@dgmslaw.com

Arie J. Lipinski
Lipinski Law
lipinski@lipinski-law.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Jackson Lee Schroeder
Bose McKinney & Evans LLP
jschroeder@boselaw.com

John Smalley
Dyer, Garofalo, Mann, & Schultz
jsmalley@dgmslaw.com

Brad R. Sugarman
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
bsugarman@boselaw.com

Seth M. Thomas
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sthomas@boselaw.com