**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TUSHAWN CRAIG,<br>MARQUETTA STOKES,<br><br>            Plaintiffs,<br><br>            v.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH,<br>CITY OF RICHMOND, INDIANA,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:23-cv-01575-TWP-MJD |

CITY OF RICHMOND, INDIANA,


            Cross Claimants,

            v.

CORNERSTONE TRADING GROUP, LLC,
SETH SMITH,
MY-WAY TRADING, INC.,

Cross Defendants.


CORNERSTONE TRADING GROUP, LLC,

Third Party Plaintiff,

            v.

    CITY OF RICHMOND, INDIANA,

Third Party Defendant.


ALLEN WELLMAN HARVEY KEYES
COOLEY, LLP,

Interested Party.                                      )
                                                       )

## ORDER ON OMNIBUS AND SETTLEMENT MOTIONS IN *LIMINE*

This matter is before the Court on two Motions in *Limine*: a Motion in *Limine*, Omnibus (Filing No. 346) filed by Defendant City of Richmond, Indiana (the "City") which contains thirteen motions in *limine*; and Cornerstone Defendants' Motion in *Limine* to Exclude Evidence, Argument and/or Reference to Any Settlement Communications, Agreed Judgment and Party Solvency (Filing No. 352) filed by Defendants Cornerstone Trading Group, LLC and Seth Smith and Cross-Defendant, My-Way Trading, Inc. (collectively, the "Cornerstone Defendants"). Plaintiffs Tushawn Craig ("Craig") and Marquetta Stokes ("Stokes") (together, "Plaintiffs") initiated this action on behalf of themselves and all others similarly situated (collectively, the "Class") alleging various claims against the City, Cornerstone Trading Group, LLC and Seth Smith after a fire occurred at 308, 310, and 358 NW F Street Richmond, Indiana (collectively, the "Properties"), resulting in members of the Class being evacuated from their homes (Filing No. 1-2). The City owned the properties located at 310 and 358 NW F Street (the "310/358 Properties").

Plaintiffs' claims against Defendants are set to be tried by a jury on September 14, 2026. The City recently filed the instant motion seeking preliminary rulings from the Court regarding admissibility of various types of evidence. For the reasons discussed below, both Motions are **granted in part and denied in part**.

## I.      LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

2

Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401. "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose." *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 14-cv-1862, 2018 WL 3120623, at *2 (S.D. Ind. June 26, 2018).

## II.    DISCUSSION

The Court will first address the Cornerstone Defendants' Motion in *Limine* before turning to the City's Motion.

### A.    Cornerstone Defendants' Motion in *Limine* (Filing No. 352)

The Cornerstone Defendants seek exclusion of any evidence, argument or reference to any settlement agreement, settlement communications, agreed judgment or a party's solvency (Filing No. 352 at 2). They point out that they have reached a tentative agreement to settle some of the City's crossclaims against them which may result in the filing and entry of an agreed judgment. The Cornerstone defendants argue that there is no proper purpose for which settlement communications would be admissible in this matter, and any reference to settlements agreements or an agreed judgment would violate Federal Rule of Evidence 408. *Id*. Neither the City nor the Plaintiffs oppose the exclusion of settlement negotiations, agreements, or any agreed judgment to

3

prove liability, fault, the amount of Plaintiffs' claims, or Cornerstone Defendants' ability to pay compensatory damages (Filing No. 370).[1]

The Plaintiffs do, however, oppose the Motion insofar as the categorical exclusion of the Cornerstone Defendants' financial condition. *Id*. Plaintiffs contend that their punitive damages request against Cornerstone Trading Group, LLC and Seth Smith remains pending, and Indiana law recognizes that a defendant's financial condition is relevant to determining the appropriate amount of punitive damages. *Id*. (citing *Stroud v. Lints*, 790 N.E.2d 440, 445 (Ind. 2003)). Plaintiffs thus assert that such evidence may properly be reserved for any punitive-damages phase, but it should not be excluded from the case altogether.

The Court agrees that settlement negotiations or agreements and any agreed judgment may not be introduced in this case pursuant to Federal Rule of Evidence 408. *See* Fed. R. Evid. 408. However, when punitive damages are found to be appropriate, the Indiana Supreme Court has expressly stated that the wealth of a defendant is relevant to a determination of the appropriate amount. *See Stroud*, 790 N.E.2d at 445 ("[I]f punitive damages are appropriate, the wealth of the defendant has for many years been held relevant to a determination of the appropriate amount."). While the Cornerstone Defendants contend that such evidence is substantially outweighed by the dangers of unfair prejudice and misleading the jury and therefore must be excluded under Federal Rule of Evidence 403 (Filing No. 352 at 2), the Court disagrees. Wealth is an appropriate is a relevant factor in determining the amount of punitive damages to award should the jury find for such damages.

Accordingly, the Cornerstone Defendant's Motion is **granted** as to evidence of settlement negotiations and agreements and any agreed judgment. However, the Motion is **denied** as to

---

[1] The City did not file a response opposing the Cornerstone Defendants' Motion.

evidence of the City's respective wealth. Though such evidence may be properly reserved for any punitive-damages phase if appropriate.

**B.      The City's Motion in *Limine* (Filing No. 346)**

The City asks the Court to exclude thirteen different categories of evidence which the Court will address in turn.

**1.   Motion in *Limine* 1**

The City asks the Court to exclude any testimony from Plaintiff Stokes concerning her experienced fear, anxiety, and uncertainty with regard to the negative effects the fire had on her property as a mental health professional (Filing No. 348 at 9). The City argues that this evidence should be excluded for two reasons: (1) the City has concurrently filed a separate motion in *limine* stating that Plaintiffs may not seek emotional distress damages in the absence of proof of a direct physical impact; and (2) Plaintiffs have not identified Stokes as an expert witness they may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. *Id*.

The Court has addressed the City's separate motion in *limine* concerning Plaintiff's emotional distress damages in a previous Order.  (Filing No. 383). Plaintiffs have stated that they do not plan to introduce testimony from Stokes as a mental health professional and confirmed that they "will not elicit a mental-health diagnosis, a medical explanation of her symptoms, or any opinion based upon Stokes's professional education or experience." (Filing No. 366 at 2). Moreover, Plaintiffs do not plan to have Stokes offer an expert opinion about the medical significance of her symptoms or whether exposure to any particular chemical caused a medical condition. *Id*.

As the Court previously explained, Stokes may offer lay testimony about her experiences. Accordingly, this Motion in *Limine* is **denied** and a detailed discussion of the City's arguments

concerning whether Indiana law bars such evidence can be found in the Court's prior Order. (See Filing No. 383).

### 2. Motion in *Limine* 2

The City seeks to exclude "undisclosed opinion testimony from other fact witnesses that Plaintiffs have identified on their final witness list." (Filing No. 346 at 2). The City asserts that Plaintiffs have stated they may call thirty-seven separate witnesses at trial, but they have only disclosed one witness, William Hicks, Jr. ("Hicks"), as providing opinion testimony (Filing No. 348 at 12). The City provides two examples for its assertion.

First, the City believes Plaintiffs intend to have Doug Gardner testify that he commissioned the National Oceanic and Atmospheric Administration ("NOAA") to do a plume study to discuss the concern for a fire on the properties that could be a four-alarm fire, requiring joint assistance from fire departments to control and the evacuation of the neighboring homes. The City notes that the plume study is based on NOAA's HYSPLIT air dispersion model which "is a complicated, multifaceted computer modeling system that predicts how emissions will travel, taking into account not only wind flow, direction, and speed, but also particle behavior, dispersal mechanics, and the impact of meteorological and even radioactive factors." *Id*. (quoting *Bahr v. Regan*, 6 F.4th 1059, 1085 n.18 (9th Cir. 2021)). The City contends that testimony as to the use and meaning of the air dispersion model requires an expert qualified by knowledge, skill, experience, training, or education under Federal Rule of Evidence 702, which Doug Gardner, the Deputy Chief of Fire Prevention for the Richmond Fire Department, does not possess. *Id*. at 13.

The City also identifies Christopher Abel and asserts that Plaintiffs have identified Abel as an environmental chemist who will testify regarding an October 31, 2024 Investigation Report that he authored, and the toxic chemicals that were found in sampled sites. *Id*. at 14. The City notes

6

that it had previously identified Mr. Abel as an expert it would call to testify as to site conditions at the 310/358 Properties, but nowhere in Mr. Abel's expert report does he offer testimony on the toxicity of the substances his investigation detected in soil and groundwater at the 310/358 Properties. *Id*.

In Response, the Plaintiffs argue that Gardner has firsthand knowledge concerning his inspection of the properties, the hazards he observed, the 2019 Unsafe Building Commission proceedings, his involvement in obtaining the NOAA study, the concerns communicated to City officials, and the City's subsequent actions (Filing No. 366 at 5). The City itself concedes that Gardner may testify "as a fact witness as to the 2019 UBC hearing, including what was said about the NOAA model." *Id*. (quoting Filing No. 348 at 13). The Plaintiffs further argue that they do not have to prove the scientific accuracy of the NOAA model merely to establish what information was presented to the City and what risks the City understood. Afterall, evidence may be admitted to establish notice even when it is not offered to prove the truth of every technical statement it contains. *Id*. at 6 (citing *Daniel v. Cook County*, 833 F.3d 728, 735–36 (7th Cir. 2016)). Plaintiffs contend that Gardner's testimony concerning his own observations, actions, and communications does not become expert testimony merely because he possesses professional experience. Rules 701 and 702 distinguish such firsthand testimony from opinions dependent upon scientific or technical analysis. *Id*. The Court agrees.

Here, Plaintiffs do not intend to ask Mr. Gardner about the technical accuracy of the NOAA HYSPLIT model. Instead, Plaintiffs intend to elicit testimony concerning: (1) that an air-plume study was obtained in connection with properties; (2) that the study and its figures were presented or discussed during the 2019 proceedings; the concerns and warnings that Gardner communicated concerning a potential fire, the need for assistance from other agencies, and possible evacuation;

and what they did, or did not do, after receiving that information (Filing No. 366 at 5). Such evidence is within Gardner's personal knowledge and does not require an expert disclosure. Accordingly, a blanket exclusion covering every unidentified question that might be asked of every fact witness would be unfounded as the Court cannot say that such evidence is inadmissible for any purpose. Thus, the City's Motion in *Limine* 2 is **denied** and the City may object in context.

### 3. Motion in *Limine* 3

The City contends that the Court should prohibit argument from Plaintiffs regarding the standard of care under state and federal fire codes to the extent such evidence or argument is not based on expert testimony (Filing No. 348 at 15). The City argues that industry standards concerning the standard of care require explanation and support through an expert witness. *Id*. (citing *Troutwine Estates Dev. Co., LLC v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 902 (Ind. Ct. App. 2006)). In application, the City argues that this means Plaintiffs and their counsel must confine their evidence and questioning with respect to the safety concerns from fire codes to the experts. *Id*. at 16.

In Response, the Plaintiffs assert that Indiana permits applicable safety regulations to be considered as evidence of breach when the defendant's duty exists independently under common law (Filing No. 366 at 7 (citing *Beta Steel v. Rust*, 830 N.E.2d 62, 74 (Ind. Ct. App. 2005) (finding that evidence of violations of the Indiana Administrative Code and National Electrical Code were relevant to whether a premises owner breached its common law duty and could be considered by the jury ); *Androusky v. Walter*, 970 N.E.2d 687, 695 (Ind. Ct. App. 2012) (violation of an administrative regulation is evidence of negligence although not negligence per se))). Plaintiffs argue that distinction controls here because they do not rely upon the fire and safety codes to create a duty; and, the Court has already determined that the City owed a common-law duty to the

8

Plaintiffs. The Plaintiffs state that they do not intend to argue that any alleged code violation independently establishes negligence, replaces the Court's ordinary care instruction, or creates an independent claim against the City for failing to enforce the law against Cornerstone. They argue that they should be permitted to present otherwise admissible code-related evidence through Hicks, and to question City fire and building officials about the codes and safety requirements they applied, discussed, or communicated in performing their duties. Plaintiffs argue persuasively that this firsthand evidence may bear upon the hazardous nature of the Properties, Defendants' notice and foreseeability, and whether Defendants exercised reasonable care. *Id*. at 8.

The Court will not allow the Plaintiffs to introduce evidence for the purpose of establishing that any code violation establishes negligence. However, a blanket exclusion of all evidence and limiting questioning of the fire and safety codes solely to experts is too broad of an exclusion. The Court cannot say that any evidence or questioning of the fire and safety codes in relation to a non-expert is automatically inadmissible for any purpose. Accordingly the City's Motion in *Limine* 3 is **denied**.

### 4. Motion in *Limine* 4

The City's fourth request is that the expert testimony of Plaintiffs' expert, William Hicks, Jr be excluded. However, the City filed a separate motion concerning this same exclusion which the Court has ruled on. Accordingly, for the reasons explained in Filing No. 380, the City's Motion in *Limine* 4 is **denied**.

### 5. Motion in *Limine* 5

The City's fifth request is to exclude evidence, testimony, or argument regarding fear, anxiety, uncertainty, or other mental distress for future injury (Filing No. 348 at 17). The City filed a separate Motion in *Limine* concerning this same evidence which the Court recently ruled on.

Accordingly, the City's Motion in *Limine* 5 is **denied** consistent with the Court's ruling in Filing No. 383.

### 6. **Motion in *Limine* 6**

The City seeks to exclude Plaintiffs' compensatory damages evidence that was not timely disclosed or produced. (Filing No. 346 at 2). Rule 26(a)(1)(A)(iii) requires every party, without awaiting a discovery request, to provide at the outset of litigation "a computation of each category of damages claimed," along with the underlying documents and evidentiary materials on which each computation is based. (Filing No. 348 at 21). (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Rule 37(c)(1) is direct, if a party fails to provide information or identify a witness as Rules 26(a) or 26(e) require, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. *Id*. at 22 (citing *Freeman v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-3844, 2023 WL 2613641, at *1 (S.D. Ind. Mar. 23, 2023)).

The City argues that Craig has failed to produce any evidence supporting categories of claimed damages, including those incurred because of the evacuation (i.e., the Airbnb costs, property taxes, home insurance, and sewer, water, and internet fees), and those resulting from his emotional distress and mental anguish. The City argues that Stokes provided only limited information and documents with respect to her alleged damages, and it has not received any additional or supplemental information from Stokes since her June 14, 2024, deposition. The City explains that it is not suggesting there should have been more evidence, but notes that it is entitled to an order preventing either Craig or Stokes from testifying regarding the types of damages that were not disclosed during discovery. *Id*. at 22–23.

The Plaintiffs do not oppose this request to the extent that it excludes only those economic categories of damages which were genuinely undisclosed (Filing No. 366 at 12). However, Plaintiffs argue that the City's request appears much broader. The Plaintiff's point out that the City acknowledges that their initial disclosures identified evacuation-related expenses, loss of the use of real and personal property, and anxiety-related damages and the Plaintiffs' interrogatory answers further itemized their alternate lodging, housing expenses, utilities, food, cleaning expenses and other losses. Craig and Stokes were then examined extensively about those subjects during their depositions which the City's memorandum recites. Plaintiffs contend that Rule 26 does not require documentary corroboration of every fact concerning damages; and argue that Craig and Stokes may testify from personal knowledge concerning amounts incurred and the City may cross-examine them about such amounts. *Id*.

Plaintiffs contend that the absence of a predetermined dollar figure does not preclude noneconomic damages and loss of use and enjoyment, inconvenience, anxiety, and emotional distress are not established through receipts or an arithmetic computation. Plaintiffs argue that they disclosed those categories and testified concerning the nature and duration of their experiences, therefore, the jury must determine their value from the evidence and the Court's instructions. *Id*. (citing *Zander v. Orlich*, No. 2:14-cv-400, 2017 WL 6262208, at *2 (N.D. Ind. Dec. 6, 2017) (precluding argument that the plaintiff was required to prove a specific dollar amount for noneconomic damages)).

The Court agrees that any compensatory damages for concrete injuries such as damages for an Airbnb, property taxes, home insurance, and certain utility expenses were required to be disclosed. While the Plaintiffs are correct that Rule 26(e)(1)(A) does not require a formal supplementation when the relevant information has otherwise been made known, the Plaintiffs

11

must still provide a computation of each category of damages. They may not simply state that they claim damages for staying in an Airbnb without providing some sort of computation for such damages. Indeed, it would be impossible for the jury to determine such damages without such disclosures. Plaintiffs may not simply fail to disclose a computation and then "testify from personal knowledge concerning amounts actually paid and disclosed." (Filing No. 366 at 12). Rule 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Plaintiffs concede that any category of damages which was genuinely not disclosed at all should be excluded.  Accordingly, the City's Motion in *Limine* 6 is **granted** as to any information or computation not disclosed before trial concerning damages, and such testimony shall be excluded.

However, because the Plaintiffs disclosed the various categories of damages, the Court will allow them the opportunity to supplement such disclosures with computations for the categories the City was made aware of, **within seven days** of this Order.

### 7.  Motion in *Limine* 7

The City contends that Plaintiffs and Cornerstone Defendants should be prohibited from providing evidence, testimony or argument about the way the City fought the Fire. (Filing No. 346 at 3). The Cornerstone Defendants do not oppose Motion in *Limine* 7.

Plaintiffs do not oppose Motion in Limine No. 7 but argue that it should be granted only to the extent that it prohibits them from asserting that the City was negligent in the manner in which it fought the fire. Plaintiffs argue that witnesses, including firefighting officials with firsthand knowledge should remain free to describe the fire's progression, duration, and spread, the

conditions they observed, the timing and nature of the emergency response, the resulting smoke, ash and debris, and circumstances surrounding the evacuation (Filing No. 366 at 14). Plaintiffs contend that those facts provide necessary context and bear upon the progression and scope of the fire and the cause and extent of Plaintiffs' evacuation and property-related damages. *Id*. The City does not ask to exclude such evidence.

The City's Motion in *Limine* 7 is **granted**. Neither Plaintiffs nor the Cornerstone Defendants may provide evidence, testimony or argument regarding the way the City fought the fire for the purpose of arguing the City was negligent. This ruling does not preclude otherwise admissible factual evidence concerning the fire and emergency response relevant to Plaintiffs' claims.

### 8.  Motion in *Limine* 8

The City argues that Plaintiffs and the Cornerstone Defendants should be prohibited from offering argument, evidence, or testimony regarding the presence (or lack) of liability insurance that might pay for Plaintiffs' claims. (Filing No. 346 at 3). The City contends that the presence of liability insurance or lack of such insurance is irrelevant, prejudicial, and incurable once offered (Filing No. 348 at 24). The Cornerstone Defendants do not oppose Motion in *Limine* 8.

Plaintiffs respond that they do not intend to offer evidence, testimony, or argument concerning whether the City or the Cornerstone Defendants possess liability insurance, whether insurance may satisfy any judgment, or whether an insurer is paying the City's defense costs. (Filing No. 366 at 14). Plaintiffs therefore do not oppose Motion in Limine No. 8, but contend that they should not be foreclosed from offering  such evidence for a purpose expressly permitted by Federal Rule of Evidence 411, in which case, they will seek a ruling outside the jury's presence. *Id*. The Court agrees and the City's Motion in *Limine* 8 is **granted**.

### 9.   Motion in *Limine* 9

The City asks the Court to exclude the financial condition of any party, how an award of damages would be paid, the City's litigation strategy or legal fees, punitive damages, or any "David versus Goliath" themed arguments.(Filing No. 346 at 4). The Cornerstone Defendants do not oppose this Motion in *Limine* 9.

The Plaintiffs do not oppose the motion, however, they contend that this ruling should not eliminate their request for punitive damages against Cornerstone Trading Group, LLC and Seth Smith (Filing No. 366 at 15). Plaintiffs note that the City's own memorandum recognizes that punitive damages against the Cornerstone Defendants present a separate issue and proposes that financial condition evidence be reserved for a subsequent phase following a finding of liability and compensatory damages. Plaintiffs do not oppose this procedure and the Court finds it reasonable.

The City's Motion in *Limine* 9 is therefore **granted** as to the exclusion of all financial conditions, how awards of damages would be paid, the City's litigation strategy or legal fees, punitive damages, or any other "David versus Goliath" themed arguments; subject to the Plaintiffs ability to introduce such financial evidence and argument supporting punitive damages against Cornerstone and Smith in a subsequent phase following a finding of liability and compensatory damages.

### 10. Motion in *Limine* 10

The City asks the Court to exclude any testimony, evidence or argument concerning "golden rule" themes such as asking the jury to place themselves in Plaintiffs' shoes (Filing No. 348 at 29). Neither the Cornerstone Defendants nor the Plaintiffs oppose this request and the Court agrees. Accordingly, the City's Motion in *Limine* 10 is **granted**.

**11. Motion in *Limine* 11**

The City asks the Court to prohibit evidence, testimony or argument regarding settlement negotiations or the failure of the parties to reach a settlement in this case. *Id*. at 30. Neither the Cornerstone Defendants nor the Plaintiffs oppose this request and the Court agrees. Accordingly, the City's Motion in *Limine* 11 is **granted**.

**12. Motion in *Limine* 12**

The City asks the Court to prohibit testimony, evidence, or argument regarding other fires not at issue in this litigation. (Filing No. 346 at 3). The City argues that such evidence is, at best, marginally probative and would be prejudicial to the Defendants. (Filing No. 366 at 30). The City asserts that the Defendants' acts must be judged by the conditions and conduct at the Properties and must not be confused with conditions and conduct that may have caused fires at unrelated properties. Accordingly, such evidence is not relevant and should be excluded under Rule 401, and if not, excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, and wasting time. *Id*. at 31.

The Plaintiffs oppose this request. While they do not intend to offer evidence of fires at unrelated properties involving unrelated parties merely to suggest that Defendants acted negligently, Plaintiffs argue that the City's request is too broad and the categorical request should be denied. (Filing No. 366 at 17). Plaintiffs argue that admissibility of such evidence depends upon the particular incident, its similarity to the circumstances presented here, and the purpose for which it is offered. *Id*. Plaintiff's contend that the Seventh Circuit recognizes that evidence of another accident may be relevant when the circumstances are substantially similar. *Mihailovich v. Laatsch*, 359 F.3d 892, 908–13 (7th Cir. 2004) (finding that the district court abused its discretion by categorically excluding evidence of substantially similar accidents). *Id*.

The Court concludes that Plaintiffs may not introduce evidence of an unrelated fire to show that the Defendants were negligent and the motion is **granted** in this respect. However, the City's categorical exclusion of every unrelated fire for every purpose irrespective of the context within which such evidence is offered is too broad. The Court cannot say that such evidence would be inadmissible for every purpose, especially considering the lack of context surrounding the purpose for which the evidence might be offered. Accordingly, the City's Motion in *Limine* 12 is **denied in part,** and the City can object in context should the need arise.

### 13. Motion in *Limine* 13

Finally, the City asks the Court to prohibit testimony, evidence, or argument that the litigation is causing or adding to Plaintiffs' emotional distress (Filing No. 348 at 31). Plaintiffs do not oppose this request and the Court agrees. Accordingly, the City's Motion in *Limine* 13 is **granted**.

### III.   CONCLUSION

For the reasons discussed above, the Cornerstone Defendant's Motion (Filing No. 352) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **granted** as to evidence of settlement negotiations and agreements and any agreed judgment. However, the Motion is **denied** as to evidence of their respective wealth which may be properly reserved for any punitive-damages phase if appropriate.

The City's Motion in *Limine*, Omnibus (Filing No. 346), is also **GRANTED IN PART AND DENIED IN PART**. The Motion is **granted** to the extent outlined above for Motions in *Limine* 6, 7, 8, 9, 10, 11, and 13. The Motion **is denied** to Motions in *Limine* 1, 2, 3, 4, and 5. The Motion is **granted in part** and **denied in part** as to Motion in *Limine* 12.

An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED**.

Date:    8/10/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MY-WAY TRADING, INC.
c/o Seth Smith
P.O. Box 1282
308 NW F St.
Richmond, IN 47374
plasticman1@earthlink.net

Benjamin D. Felton
DYER GAROFALO MANN & SCHULTZ
bfelton@dgmslaw.com

Arie J. Lipinski
Lipinski Law
lipinski@lipinski-law.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Jackson Lee Schroeder
Bose McKinney & Evans LLP
jschroeder@boselaw.com

John Smalley
Dyer, Garofalo, Mann, & Schultz
jsmalley@dgmslaw.com

Brad R. Sugarman
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
bsugarman@boselaw.com

Seth M. Thomas
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sthomas@boselaw.com