**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TUSHAWN CRAIG and MARQUETTA STOKES,<br><br>Plaintiffs<br><br>vs<br><br>CORNERSTONE TRADING GROUP, LLC, SETH SMITH, and CITY OF RICHMOND, INDIANA,<br><br>Defendants. | Civil Action No. 1:23-cv-01575-TWP-MJD |

**BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA OF NON-PARTY JOURNALIST MIKE EMERY**

Kristopher L. Cundiff, Atty # 35193-49
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
PO Box 150
Fishers, IN 46038
(463) 271-4676
Email: kcundiff@rcfp.org

*Attorney for non-party Mike Emery*

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ........................................ 1

STANDARD OF LAW ........................................ 4

ARGUMENT ........................................ 5

I. This Court should quash the subpoena pursuant to Rule 45(d) because enforcing compliance would place an undue burden on a non-party journalist........................................ 5

A. Any information that Mr. Emery could provide is readily available from the parties. ....... 5

B. Mr. Emery's position as a journalist makes the subpoena's burden heavier. ........................ 6

C. Defendants' counsel has made unreasonable and irrational demands of Mr. Emery........... 8

II. This Court should quash the subpoena pursuant to Rule 45(d)(3) because it seeks privileged or other protected matter under Indiana law. ........................................ 10

A. The Indiana Shield Law offers absolute protection for the "source of any information" obtained in the newsgathering process. ........................................ 10

B. The First Amendment offers broader protection for newsgathering materials sought by subpoenas in civil cases. ........................................ 10

C. Defendants cannot meet their burden to show that Mr. Emery's testimony is relevant and necessary. ........................................ 12

III. If the Court quashes the subpoena as an undue burden, it should award Emery his reasonable attorney's fees. ........................................ 13

CONCLUSION ........................................ 14

## INTRODUCTION AND BACKGROUND

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims… And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999).

On August 28, 2026, Mike Emery, a journalist employed by Civic Spark Media, LLC d/b/a Western Wayne News ("WWN"), received a copy of a subpoena sent via certified mail to the Post Office Box listed on WWN's website as the paper's mailing address, commanding him to testify as a non-party witness in the trial in the above-captioned action. Declaration of Mike Emery ("Emery Decl.") ¶ 4.[1] The subpoena, issued by Defendants Cornerstone Trading Group, LLC and Seth Smith (collectively, the "Cornerstone Defendants"), did not indicate on its face why Mr. Emery was being subpoenaed, but a review of recent filings in the case suggested—and discussions with counsel for the Cornerstone Defendants confirmed—that Mr. Emery's testimony was being sought because he authored a news article more than three years ago about the industrial accident at the center of this civil action. Emery Decl. ¶ 5; Declaration of Kristopher Cundiff ("Cundiff Decl.") ¶ 5.

---

[1] Mr. Emery is not moving to quash this subpoena based on improper service of the subpoena, though he does not concede that certified mail delivery to a general P.O. box affiliated with an individual's employer constitutes "delivering a copy to the named person" under Fed. R. Civ. P. 45(b)(1). As set forth in the Emery Declaration, the parcel sent to the WWN P.O. Box was retrieved by the publisher of WWN and handed to Mr. Emery on August 28, 2028. Emery Decl. ¶ 4. After being retained, undersigned counsel attempted in good faith to negotiate a resolution of the matter that would obviate the need for Mr. Emery to testify in the trial; as those efforts ultimately failed, Mr. Emery is filing this motion to quash.

Mr. Emery was not a witness to that accident and has no firsthand knowledge whatsoever about any issue that may bear on the elements of the causes of action that are being litigated in the upcoming trial. Emery Decl. ¶ 8. He has no knowledge of whether any defendant (or anyone else) acted with negligence, created a private nuisance, engaged in trespass, or violated Indiana's Anti-Dumping Statute. *Id.*; *see also* Dkt. No. 388 at 2 (Entry Following Final Pretrial Conference) (listing the "claims proceeding to trial"). The news article by Mr. Emery, published in WWN on April 20, 2023, under the headline "Blame for Fire's Cause, Costs Hit Property Owner" (the "Article") reported on the fact that the accident happened, pulled information from public records (including court records), and quoted statements from certain Richmond city officials reacting to the event. Emery Decl. Ex. B. But Mr. Emery has no direct knowledge of any facts that would bear on the merits of the claims or cross-claims in this case. Emery Decl. ¶ 8.

Based on meet-and-confer discussions with counsel for the Cornerstone Defendants, it appears that they are seeking his testimony merely as a vehicle to "get [the Article] in front of the jury," Cundiff Decl. Ex. B, despite the fact that newspapers and periodicals are self-authenticating pursuant to Federal Rule of Evidence 902(6). Even when presented with compromise proposals that could allow the Article to be authenticated without the need for live testimony, such as a certification authenticating a copy of the Article as a business record maintained in the newspaper's archives pursuant to Federal Rule of Evidence 902(11), the Cornerstone Defendants' counsel insisted that Mr. Emery should still be forced to testify unless the parties would "stipulate to the facts in the article" itself because it "contains truthful, valuable information to [his] clients." Cundiff Decl. ¶¶ 10-14 and Ex. B. This is a wholly absurd and

improper request given the Rules of Evidence, Mr. Emery's non-party status, and his utter lack of firsthand knowledge.

The theory that apparently underlies the Cornerstone Defendants' subpoena of Mr. Emery would allow litigants to routinely subpoena journalists to have them come in and explain the facts underlying a lawsuit for no other reason than that they published a news story reporting on the incident. Instead of hiring investigators or preparing opening statements, attorneys could dragoon reporters into providing basic information about a case and then summarizing it for the jury. That is a highly inappropriate use of the subpoena power under Rule 45, and, for that reason and others explained herein, the subpoena should be quashed because it imposes an undue burden on Mr. Emery. *See* Emery Decl. ¶ 11.

Precisely because of this concern—and the chilling effect on the gathering and reporting of news that would result if journalists were forced to double as witnesses in any matter they had covered—legislatures and courts have provided protection for journalists against being compelled to provide information or testimony in litigation. As further discussed below, Indiana's "Shield Law" provides absolute protection against compelled disclosure of "the source of any information" a journalist obtains in the course of newsgathering, whether the information was "published or not published." Ind. Code § 34-46-4-2. And Indiana courts have recognized a broader qualified privilege under the First Amendment against disclosure of unpublished newsgathering information (not just sources) in civil litigation. *See, e.g., In re Subpoena Duces Tecum to Stearns v. Zulka*, 489 N.E.2d 146, 150–51 (Ind. Ct. App. 1986) ("*Zulka*"). Given the total lack of probative testimony Mr. Emery could possibly offer—which already mandates quashing the subpoena as an undue burden under Rule 45(d)—the Cornerstone Defendants cannot possibly meet the much higher standard required b *Zulka* of showing a "compelling need" for information that is

"highly relevant," and which they have not been able to obtain from other sources. *Id*. at 151.

This case, in which a litigant apparently wishes to use a news reporter as a shortcut to summarize basic information about the case, perfectly illustrates the need for stronger protections for journalists. *See id.* at 150-51; *Gonzales*, 194 F.3d at 35 ("The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation."). Mr. Emery has nothing to offer of relevance to this case that cannot be easily put into evidence through less burdensome means by the parties themselves. The protections of the Shield Law and reporter's privilege sharply limit any testimony that he could possibly offer, and requiring him to testify at all imposes an undue burden on a non-party. For these reasons, this Court should quash the subpoena and award reasonable attorney's fees pursuant to Rule 45(d).

**STANDARD OF LAW**

The movant seeking an order quashing a subpoena bears the burden of demonstrating undue burden under Rule 45(d). *Acuity v. Kerstiens Home & Designs, Inc.*, No. 1:16-cv-02800, 2018 WL 3375015, at *1 (S.D. Ind. July 10, 2018). In determining whether a Rule 45 subpoena is unduly burdensome, a court may examine a number of factors, including relevance, the need of the party for the information sought, and the burden compliance would impose. *Id.*; *see also Nw. Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (holding that a subpoena is unduly burdensome when "the burden of compliance with it would exceed the benefit of production of the [information] sought by it"). "Additionally, non-party status is a significant

factor to be considered when assessing undue burden for the purpose of a Rule 45 motion." *Acuity*, 2018 WL 3375015, at *1 (cleaned up). Under Rule 45, a party asserting a privilege bears the burden of establishing the privilege applies, at which point the burden shifts to the issuing party to attempt to overcome the applicable privilege. *Id.*

Additionally, the state law claims at issue in this case (which is in this Court on diversity jurisdiction under the Class Action Fairness Act) are subject to state law privileges. Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *see, e.g.*, *Longs v. Lebo*, No. 3:07-CV-83 RM, 2009 WL 799533, at *3 (N.D. Ind. Mar. 24, 2009); *see also Daly v. Nexstar Broad., Inc.*, 542 F. Supp. 3d 859, 865 & n.3 (S.D. Ind. 2021). Indiana statutory law provides journalists a privilege against disclosing "the source of any information" obtained in the course of newsgathering. *See* Ind. Code § 34-46-4-1, *et seq*. (hereinafter the "Shield Law"). Though the Shield Law does not specify whether the recipient or issuer of the subpoena bears the burden of proof when the law is invoked, the Indiana Court of Appeals has found "highly persuasive" a Texas Supreme Court decision holding "that when a non-party newsgatherer claims a privilege the burden shifts to the discovering party." *Zulka*, 489 N.E.2d at 150–51. This is especially true in a civil case. *Id.*

## ARGUMENT

### I. This Court should quash the subpoena pursuant to Rule 45(d) because enforcing compliance would place an undue burden on a non-party journalist

#### A. Any information that Mr. Emery could provide is readily available from the parties.

Because there is little, *if any*, relevant and probative information that can be obtained through Mr. Emery's testimony at trial—and no information that is not already in the evidentiary record from other sources, including the parties—the burden of his compliance as a nonparty

outweighs any benefit of his testimony and Rule 45(d)(3)(A)(iv) requires an order quashing the subpoena. *See, e.g., Nw. Mem'l Hosp.*, 362 F.3d at 928-30 (affirming lower court order quashing subpoena for medical records to be used at forthcoming trial because the burden of compliance would exceed the benefit of production, and emphasizing that even though the records may be "relevant" in the sense of generally being discoverable, their probative value is "meager"). The subpoena, if enforced, would impose an undue burden on Mr. Emery. Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv); *see also Thayer v. Chiczewski*, 257 F.R.D. 466, 469-70 (N.D. Ill. 2009) ("Subpoenaed non-parties have the right to challenge the burdensomeness and expense of responding to the subpoena, pursuant to [Rule] 45(c).").

To the extent Mr. Emery possesses any information relevant to the claims and defenses in this lawsuit, the same information is more easily obtainable through party witnesses and documentary evidence held by the parties, making his testimony wholly unnecessary. *See Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *2 (N.D. Ill. Jan. 6, 2005) (granting motion to quash defendants' subpoenas to various news organizations because defendants "cannot establish that their subpoenas seek information they do not already have or that is not readily available from other sources"). Further, as discussed below, compelling Emery to provide testimony concerning his newsgathering and reporting activities—including about communications he may or may not have had with sources—would jeopardize his ability to work as a journalist. *See* Emery Decl. ¶¶ 9-10.

**B. Mr. Emery's position as a journalist makes the subpoena's burden heavier.**

The core of a journalist's job is to seek out, investigate, and report on information regarding events of public interest, including but not limited to politics, government, accidents, natural disasters, crime, and the criminal justice system. Implicit in that role is the reporter's duty to interview witnesses and participants and gather facts. Because they are often keen

observers, meticulous note keepers, and effective commutators, journalists like Mr. Emery can be tempting subpoena targets for parties and counsel looking for a shortcut. Absent the protections of Rule 45 and the other state, common law and Constitutional principles at play here, such subpoena power would undoubtedly result in an intrusion into journalists' ability to freely collect and disseminate newsworthy information to the public *and* undermine the public perception of impartiality that is critical to a free press.

Mr. Emery should not be forced to testify merely because he published a news article that was listed on the Cornerstone Defendants' exhibit list for trial. For non-parties, "the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson*, 2005 WL 43240, at *1. And Emery's status as a journalist informs the "relative hardship" he would experience by being required to testify as a witness, and weighs heavily against compelling his compliance with the subpoena. *See Hobley v. Burge*, 223 F.R.D. 499, 505 (N.D. Ill. 2004); *see also* Emery Decl. ¶¶ 9-11. Indeed, "[g]iven the important role that newsgathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." *Id.*

Subpoenas to journalists like Mr. Emery threaten to undermine their "efforts to maintain their independence and gain the trust of sources." *Patterson*, 2005 WL 43240, at *3 (N.D. Ill. Jan. 6, 2005) (citation omitted). As "journalistic and editorial judgments" are Emery's "stock and trade . . . surely some good justification should be advanced before these journalistic and editorial judgments can be examined by outsiders and made public in the context of a civil lawsuit." *Id.*

### C. Defendants' counsel has made unreasonable and irrational demands of Mr. Emery.

The Cornerstone Defendants have suggested that they require Mr. Emery's testimony to ensure that the Article—or perhaps certain information contained in the Article—is admitted as evidence before the jury. *See* Ex. B to Cundiff Decl. ("This article contains truthful, valuable information to my clients, and I am going to fight to get it in front of the jury."). Remarkably, counsel for Cornerstone Defendants suggested that they would withdraw the subpoena if *Mr. Emery* somehow convinced the City to stipulate to the facts reported in the Article—a demand that flies in the face of Rule 45, which protects non-parties from being unduly burdened by getting enmeshed in someone else's litigation. *See id*.[2]

In any case, assuming *arguendo* that the Article contains facts relevant to this litigation, those facts are available from—and will presumably be put into evidence by—other sources, namely the parties themselves. Indeed, the only information covered in the Article that would not already appear in the parties' own records are quotes from the public officials—but those officials are affiliated with a party in the case, and *already appear on each of the parties' witness lists*. *See* Dkt. Nos. 349, 359 (listing Mayor Dave Snow, City Attorney Andrew Sickmann, and Fire Department Chief Tim Brown); Dkt. No. 334 (listing Sickmann and Brown). A reporter does not need to be hauled into court to testify about prior statements from the parties that—if necessary—could easily be introduced without his testimony. *Cf.* Fed. R. Evid. 801(d)(1)-(2). The burden imposed on Mr. Emery by the subpoena is inherently undue given that he cannot

[2] This demand is all the more unreasonable given that, as the Court is aware, the parties have apparently been unable to agree on *any* stipulations. *See* Dkt. No. 388 at 6-7 (noting that the parties' submission of "their own proposed stipulations … means that no stipulation was yet agreed upon").

offer testimony that is both probative and not cumulative of evidence already in the record from the parties. The Court should quash the subpoena under Rule 45(d)(1) and (3)(a)(iii).

This conclusion is supported by the analysis of the Seventh Circuit in *Northwestern Memorial Hospital v. Ashcroft*, in which the subpoena-issuing party to a case pending in the U.S. District Court for the Southern District of New York sought medical records from a non-party, Northwestern Memorial Hospital. There, the Seventh Circuit explained that even if records are "relevant," they also must be "probative," and it affirmed a district court order quashing the subpoena because the subpoena-issuing party "had repeated opportunities to articulate a use for the records that it seeks, and it has failed to do so." 362 F.3d at 930. As the court explained, a subpoena can be quashed where the subpoenaing party cannot show that the "cost is offset by the probative value of the records." *Id.* at 933.

Simply put, because discovery is sought from a non-party, it is not enough for there to be a possibility that Mr. Emery's testimony "*might* reflect something . . . that *might* be helpful" to Cornerstone Defendants. *Hobley*, 223 F.R.D. at 505. Rather, when non-party compliance with a subpoena "would impose a significantly greater burden for significantly less useful material," the subpoena should be quashed. *Id.*; *see also Vike v. Coopman*, No. 08-cv-486-bBC, 2009 WL 3321018, at *1 (W.D. Wis. Oct. 14, 2009) (quashing subpoena for trial testimony and document production because the information sought "is irrelevant to any issue in [the] case" and, thus, "any burden that would be imposed upon the witness … is more than is warranted").

In sum, the hardship Mr. Emery will suffer as a non-party journalist if compelled to comply with the subpoena far outweighs any possible benefit to the Cornerstone Defendants of obtaining testimony from him, and the subpoena should therefore be quashed under Fed. R. Civ. P. 45(d)(1).

## II. This Court should quash the subpoena pursuant to Rule 45(d)(3) because it seeks privileged or other protected matter under Indiana law.

### A. The Indiana Shield Law offers absolute protection for the "source of any information" obtained in the newsgathering process.

The subpoena to Mr. Emery seeks information that is protected by the reporter's privilege generally, and Indiana's Shield Law in particular. By its plain terms, the Indiana Shield Law provides absolute protection against the compelled disclosure "in any legal proceedings" of "the source of any information" obtained in the newsgathering process, regardless of whether the information was "published or unpublished." Ind. Code § 34-46-4-2. Although conversations with the Cornerstone Defendants' counsel suggest that their primary purpose of seeking testimony from Mr. Emery is not to uncover his sources, Mr. Lipinski did suggest an interest in uncovering the origin of certain information in the Article. *See* Cundiff Decl. ¶ 9. The Shield Law would provide absolute protection against forcing Mr. Emery to disclose his sources for that or any other information in the Article—or, for that matter, the source of any information that Mr. Emery has obtained in his reporting in connection with any other article, whether or not it was published. Ind. Code § 34-46-4-2. At a minimum, therefore, even if Mr. Emery were required to testify, he cannot be compelled to answer any questions about the sources for his reporting.

### B. The First Amendment offers broader protection for newsgathering materials sought by subpoenas in civil cases.

Apart from applicable shield laws, courts around the country—including in Indiana—have recognized a broader qualified privilege for reporters against being required to disclose unpublished newsgathering *information* beyond sources. Sometimes, that protection is explicitly embodied in a shield law;[3] other times, courts have recognized a broader privilege under the First

---

[3] *See e.g*, Wis. Stat. § 885.14(2) (prohibiting compelled disclosure of "[a]ny news, information, or identity of any source of any news or information," in addition to the identities of confidential sources).

Amendment. *See*, *e.g.*, *United States v. Criden*, 633 F.2d 346, 356 (3d Cir. 1981) (privilege is "deeply rooted in the first amendment"). While the Indiana Supreme Court has declined to apply reporter's privilege under the First Amendment in the context of criminal trials, *see In re WTHR-TV (State v. Cline)*, 693 N.E.2d 1 (Ind. 1998), the Court did not overrule the earlier decision in *Zulka* and explicitly distinguished that decision as being "limited to civil cases." *Id*. at 10 n.9.[4]

Indiana courts have applied that privilege against compelled disclosure of non-confidential newsgathering information in civil cases like this one. *See Zulka*, 489 N.E.2d at 150. Quoting the U.S. Court of Appeals for the Third Circuit, the Indiana Court of Appeals explained:

> We do not think that the privilege can be limited solely to protection of sources. The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes. Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the privilege.

*Zulka*, 489 N.E.2d at 151 (quoting *United States v. Cuthbertson*, 630 F.2d 139 (3rd Cir. 1980)) (citations omitted).

As the *Zulka* court recognized, for reporters who rely on sources in the newsgathering process, "the effect of such [compelled] disclosure upon future investigative reporting threatens

[4] Notably, on the same day the Indiana Supreme Court issued its decision in *Smith v. Cline*, the Court held that a subpoena to the same television news network in a different criminal case should be quashed under the Indiana Trial Rules because the defendant had not "explained what WTHR has or may have that is relevant to her defense, nor how anything in WTHR's possession—whatever it is—might help her prepare for trial, or is not otherwise available to the defense." *WTHR-TV v. Milam*, 690 N.E.2d 1174, 1176 (Ind. 1998). The Court explained that "discovery rights do not entitle a criminal defendant to commandeer the efforts of third parties as a substitute for independent defense investigation. Nor do the Trial Rules allow the defendant to rummage through the files of third parties, *particularly the press*, for information whose materiality is only a matter of pure supposition." *Id.* (emphasis added).

freedom of the press and the public's need to be informed." *Id.* at 149–50. Indeed, the court noted, the role of a news organization

> [i]s to gather as much information as it possibly can with respect to all facets of activity of interest and importance to readers. If it does its job well, it logically will be the repository of much information concerning controversial events which take place in the area which it serves . . . To make the press, in effect, the investigative arm of every civil litigant inevitably will constrict the flow of information to the press, and ultimately to us all.

*Id.* at 150 (quoting *Suede Originals v. Aetna Casualty* (1982), Tex. Dist., 8 Media L. Reptr. 2565). Those principles apply with full force here, where a reporter is being commanded to testify in a civil trial simply because he wrote a news article that defense counsel believes could serve as a handy summary of the case for the jury. *See* Cundiff Decl. ¶ 9.

### C. Defendants cannot meet their burden to show that Mr. Emery's testimony is relevant and necessary.

Where the qualified privilege applies, the burden shifts to the subpoenaing litigant to establish that:

> (a) the material sought is *highly relevant*,
>
> (b) there is a *compelling need* for the information sufficient to override the First Amendment privilege, and
>
> (c) the party has been *unsuccessful in securing the information from other sources*.

*Zulka*, 489 N.E.2d at 151 (emphasis added) (citation omitted).

The Cornerstone Defendants cannot—and have not even attempted to—make this showing here. Mr. Emery has no firsthand knowledge of any fact related to this case. Basic information about prior inspection and enforcement against Cornerstone properties are a matter of public record. To the extent any specific statements made by individual City officials and reported in the Article are of interest to the Cornerstone Defendants, counsel can ask about those

statements from the officials themselves, each of whom already appears on the parties' witness lists. *See supra.* There is simply no need—let alone a "compelling" one—to drag Mr. Emery into court to testify in this trial. Because any relevant information Mr. Emery might have was obtained in the course of his newsgathering efforts, and the Cornerstone Defendants cannot overcome the privilege, the subpoena should be quashed under the First Amendment and Indiana state law, pursuant to Rule 45(d)(3)(A)(iii).

### III. If the Court quashes the subpoena as an undue burden, it should award Emery his reasonable attorney's fees.

Attorney's fees are an available, and appropriate, sanction for the court to impose when a party fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Indeed, even "good faith in issuing a subpoena is not sufficient to avoid sanctions . . . if a party has issued the subpoena in violation of the duty imposed by that Rule." *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *3 (N.D. Ill. May 13, 2002). In particular, courts have awarded fees when a party's "counsel fail[s] to take reasonable steps after meeting and conferring with" a non-party subpoena recipient. *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *6 (N.D. Ill. May 6, 2013) (awarding fees).

As in *Am. Soc. Of Media Photographers, Inc. v. Google, Inc.*, the Cornerstone Defendants "could have withdrawn the subpoena and attempted to subpoena a different [individual or entity] that possessed the relevant information. This was not, however, the course of action [they] chose." 2013 WL 1883204, at *6. That choice is particularly difficult to defend given that the Cornerstone Defendants were presented with options that would have obviated the need for any testimony from Mr. Emery while still establishing the authenticity of the Article, to the extent they wished to use the Article itself during the trial. *See* Cundiff Decl. ¶¶ 10-14. When

presented with that off-ramp, the Cornerstone Defendants insisted that they would withdraw the subpoena only if the non-party secured a stipulation of the facts in the Article. It is patently absurd to demand that a non-party step in to mediate ongoing disputes among the parties in the leadup to trial or else be required to come testify about matters already otherwise in the record. Rule 45 is designed to protect against such abuse of the Court's subpoena power. As such, in quashing the subpoena to Mr. Emery, the Court should also award Mr. Emery his reasonable attorney's fees.

## CONCLUSION

For the foregoing reasons, Mr. Emery respectfully requests that this Court enter an order quashing the Cornerstone Defendants' subpoena for Mr. Emery's testimony and directing the Cornerstone Defendants to pay reasonable attorney's fees in connection with this Motion.

DATED: September 9, 2026

Respectfully submitted,

/s *Kristopher L. Cundiff*

Kristopher L. Cundiff, Atty # 35193-49
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
PO Box 150,
Fishers, IN 46038
(463) 271-4676
kcundiff@rcfp.org

*Attorney for non-party Mike Emery*