IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TUSHAWN CRAIG and MARQUETTA STOKES, Plaintiffs, | ) | |
| vs | ) | Civil Action No. 1:23-cv-01575-TWP-MJD |
| CORNERSTONE TRADING GROUP, LLC, SETH SMITH, and CITY OF RICHMOND, INDIANA, Defendants. | ) | |

**THE CITY OF RICHMOND'S POST-TRIAL MOTION FOR RULE 52(a)(1) FINDINGS AND CONCLUSIONS ON THE CITY'S IMMUNITY DEFENSES**

On September 18, 2026, this Court submitted Plaintiffs' claims to a jury. Prior to that submission, and by renewed oral motion, the City of Richmond moved for judgment as a matter of law on the City's immunity defenses. (Tr. Vol. 4 at 906:2-919:2). Upon receipt of the jury's verdict, the City raised the need for the Court to make findings of fact on the full record, rather than under the Rule 50 standard that required the construction of the evidence most favorably to the non-moving party. (Tr. Vol. 5 at 1043:18-1044:12).[1]

On September 21, 2026, the Court ordered the City to supplement its oral motion by filing a written motion, and proposed findings of fact and conclusions of law by Friday October 9, 2026. (Dkt. 430.) The City immediately responded to this order, noting that its Motion for Findings and Conclusions under Rule 52(a)(1) was first made prior to trial. (Dkt. 433 (citing Dkt. 335).) The

[1] The Court suggested Rule 50(b) provided the procedure; counsel for the City responded, "Yes." (Tr. Vol. 5 at 1044:6-8.) Counsel should have instead pointed the Court's attention to Rule 52(a)(1)'s requirement for the Court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). No final judgment under Rule 58 has been entered, so any renewed motion for judgment as a matter of law is not yet ripe. Fed. R. Civ. P. 50(b), 58(a).

City submits this written motion in support of judgment as a matter of law in its favor due to its immunity defenses to Plaintiffs' claims. The City's proposed findings of fact and conclusions of law are submitted as Exhibit A.

Plaintiffs' claims in this matter arise from an evacuation order issued in relation to an April 11, 2023 fire that occurred on three parcels of industrial property located in Richmond, Indiana: 308, 310 and 358 NW F Street (the "Fire"). Plaintiffs Tushawn Craig and Marquetta Stokes first filed this action against Seth Smith and his company Cornerstone Trading Group, LLC ("CTG") three days after the Richmond Fire Department extinguished the fire. Plaintiffs later amended their Complaint adding the City as a Defendant. On April 23, 2024, Plaintiffs filed their Second Amended Complaint, which is their current pleading. (Dkt. 72)

This post-trial motion is based on the City's common law and statutory immunity from the claims Plaintiffs and the other class members bring against the City. This Court previously granted the City's motion for summary judgment on all but two of Plaintiffs' claims: negligence and private nuisance to proceed to trial. As explained herein, those claims fail as a matter of law based on the trial record because of one or more of the immunities stated below.

## <u>Summary of Evidence Submitted at Trial[2]</u>

The crux of Plaintiffs' Complaint and damages is not about damages caused by the Fire itself, but rather the trial record clearly demonstrates that Plaintiffs sought two types of damages following the evacuation order: (1) monetary damages for expenses directly caused by the evacuation, and (2) non-monetary damages (emotional distress and loss of use) because of the evacuation order. Plaintiffs' counsel in closing summarized Plaintiff Craig's damages for the negligence claim as "his [evacuation] expenses, the anxiety of the evacuation." (Tr. Vol. 5, p. 984.)

[2] The full trial transcript for the five-day trial has been prepared. (*See* Dkt. 441.)

The damages claimed for nuisance claim was "the inability to have the peaceful enjoyment of their homes" during the evacuation. (*Id.*, p. 986.)

**Legal Standard**

Indiana's statutory immunity provisions apply to claims in tort. Ind. Code § 34-13-3-1. Whether an immunity prevents a governmental entity from being liable "is a question of law for the court to decide." *Schon v. Frantz*, 156 N.E.3d 692, 699 (Ind Ct. App. 2020) (quoting *Lee v. Bartholomew Consol. Sch. Corp.*, 75 N.E.3d 518, 525 (Ind. Ct. App. 2017)). "The party seeking immunity bears the burden of proving that its conduct falls within the provisions of the ITCA." *Id.* The application of immunity and the legal sufficiency of a plaintiff's claims are distinct questions. As the Indiana Supreme Court explained in *F.D. v. Indiana Department of Child Services*, immunity "assumes negligence but denies liability" — meaning the court addressing immunity should not be confused with an assessment of whether the elements of the plaintiff's cause of action are otherwise satisfied. 1 N.E.3d 131 (Ind. 2013). Further, nuisance claims seeking damages can sound in tort. *See VanHawk v. Town of Culver*, 137 N.E.3d 258, 268 (Ind. 2019).

**<u>Argument</u>**

**A. Plaintiffs' claims are barred by statutory and common law immunities.**

Governmental entities are immune under the Indiana Tort Claims Act ("ITCA"), as well as under common law, from lawsuits seeking damages from certain activities. Specifically, the ITCA includes twenty-four (24) categories of actions or inaction that bar liabilities that result from government actions. Ind. Code §§ 34-13-3-3(a)(1)-(24). The underlying purposes of governmental immunity from suit under the ITCA are to protect the public treasury from excessive lawsuits and to ensure that public employees can exercise discretion in carrying out their official duties without fear of litigation. *State v. Lucas by Nevitt*, 223 N.E.3d 253 (Ind. Ct. App. 2023), *trans. denied*. These immunities are said to "assume negligence but deny liability." *Ind. Dept. of Nat. Res. v.*

*Houin*, 191 N.E.3d 241, 247 (Ind. Ct. App. 2022), *trans. denied*. "Thus, the issues of duty, breach and causation are not before the court in deciding whether [a] government entity is immune." *Peavler v. Bd. of Com'rs of Monroe Cnty.*, 528 N.E.2d 40, 46 (Ind. 1988).

If a governmental entity engages in any of the conduct described in the immunities or combinations of conduct, it will be immune from suit regardless of legal theory or the name given to a cause of action by a plaintiff. *Norris by Norris v. Bd. of Educ. of Greenwood Cmty. Sch. Corp.*, 797 F. Supp. 1452, 1461 (S.D. Ind. 1992). Moreover, "[w]hen specific statutory immunities apply they shield the government from any general theory of negligence." *Holiday Rambler Corp. v. Gessinger*, 541 N.E.2d 559, 563 (Ind. Ct. App. 1989).

Plaintiffs' damages were incurred because of evacuation orders issued in conjunction with the April 2023 Fire. It is undisputed that Plaintiffs' damages did not arise prior to the communication of the evacuation orders. And Plaintiffs did not submit any evidence of damages or injuries caused by the conditions of the City's property or the Fire itself. Thus, the Court must first evaluate whether the City is immune from claims for damages arising from the evacuation orders themselves. If the Court finds the City's immunity applies based on the City's then-fire chief Tim Brown issuing evacuation orders, the Court can immediately enter judgment as matter of law on Plaintiffs' claims in favor of the City. If the Court finds that Plaintiffs claims may proceed, it must then evaluate whether the City's conduct is otherwise immune from claims underlying Plaintiffs' negligence and nuisance claims.

### B. The City is immune from Plaintiffs' claims because they arise from the City's issuance of a fire evacuation order.

1. The City has immunity under Indiana Code § 34-13-3-3(a)(7) for discretionary functions relating to fire-fighting, such as the issuance of evacuation orders.

Indiana Code § 34-13-3-3(a)(7) provides that a governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the "performance of a discretionary function." Ind. Code § 34-13-3-3(a)(7). The Indiana Court of Appeals said that

> most, if not all, of the actions undertaken and decisions made by fire departments during the course of actually fighting a fire involve allocation of resources, the balancing of risks and benefits, and cannot adequately be reviewed by resort to traditional tort standards. Such decisions thus exemplify exercises of the policy-formulation discretion which is shielded by immunity under [discretionary function immunity].

*Leo Mach. & Tool, Inc. v. Poe Volunteer Fire Dep't, Inc.*, 936 N.E.2d 855, 861 (Ind. Ct. App. 2010), *aff'd on reh'g*, 940 N.E.2d 384 (Ind. Ct. App. 2011) (citing *Willis v. Warren Tp. Fire Dept.*, 650 N.E.2d 321, 323 (Ind. Ct. App. 1995)). In *Leo*, the court found that decisions made fighting a fire are immune because they are "undertaken after a conscious and informed risk/benefit analysis based upon the specific challenges and threats caused by [a] particular fire." *Id.* The court noted that because claimants "failed to designate any evidence establishing that the fire was extinguished" prior to their claims against the City, the discretionary function immunity attached to an order refusing to allow the business owner to enter the structure to remove equipment. *Id.*

Here, the trial received undisputed evidence that Plaintiffs' damages were limited to the evacuation period between April 11, 2023 at approximately 4:00 p.m. until Sunday April 16, 2023, at 4:00 p.m. (Tr. Vol. 2, p. 426.) It was "being told that I need to go" rather than the Fire itself that caused Plaintiffs' damages. (Tr. Vol. 2, p. 427.) The evidence further established that the Fire (and the City's fire response) began at approximately 2:40 p.m., more than one hour before the evacuation order, and the firefighting efforts continued until April 18, 2023, two days after the evacuation order was lifted. (Ex. 21, p. 2; Tr. Vol I, p. 158-59.). Chief Brown testified as follows:

Q Were you involved in the evacuation of the community?
A Yes.
Q How?
A The deputy director of EMA met with me and asked if we would want to do an evacuation, and I said yes.

(*Id.* at 126.) Chief Brown based this decision on "[n]ot knowing what we had burning, not knowing how the fire is going to spread, we were also having small explosions on the grounds, so we opted for the safety of the community to evacuate around the incident area." (*Id.* at 127.) The Chief further testified that "once I gave the okay to do the evacuation, the Emergency Management Agency took over and took care of [issuing notices of] the evacuation." (*Id.* p. 159-161.) Thus, the evacuation order was issued "after a conscious and informed risk/benefit analysis based upon the specific challenges and threats" caused by the Fire. *Leo Mach. & Tool, Inc.*, 936 N.E.2d at 861. The City is therefore immune from any damages arising from the evacuation order.[3]

2. <u>The City has common law sovereign immunity for the evacuation orders</u>.

Indiana common law grants sovereign immunity to cities for claims relating to fire protection. *Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins. Co.*, 3 N.E.3d 1, 7-8 (Ind. 2014). Indiana appellate courts broadly apply Indiana's common law sovereign immunity against claims related to fire response events even when those claims are framed to avoid immunity. *City*

[3] The evacuation orders that Chief Brown issued were communicated to the public by Wayne County Emergency Management Agency. (Tr. Vol. I at 160.) ("[O]nce I gave the okay to do the evacuation, the Emergency Management Agency took over and took care of the evacuation.") These "Nixle Alerts" were sent via an enhanced emergency communication system. The ITCA also provides immunity for the "development, adoption, implementation, operation, maintenance, or use of an enhanced emergency communication system." Ind. Code § 34-13-3-3(a)(19). This Court should also find that the City has immunity for evacuation orders issued through the "***operation***, maintenance, or ***use***" of an emergency management communication system.

*of Peru v. Lewis*, 950 N.E.2d 1, 6 (Ind. Ct. App. 2011). For example, sovereign immunity applies to claims involving the adequacy of staffing, training, and communications. *Id.* It also applies to claims involving the adequacy of fire alert response time and "failure to seek mutual aid/assistance 'from other surrounding fire departments and/or volunteer fire departments and agencies.'" *Lamb v. City of Bloomington*, 741 N.E.2d 436, 441 (Ind. Ct. App. 2001). Plaintiffs' claims here allege that the evacuation orders, which were City acts "during the course of fighting a fire" resulted in their damages. *See Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-1205 (Ind. Ct. App. 2011). While *Leo Machine & Tool* applied the ITCA discretionary function immunity, it expressly noted that cities often assert alternative arguments, such as here, that such acts are also entitled to common law sovereign immunity.

**C. The City's other immunity defenses preclude judgment for Plaintiffs as a matter of law.**

Even if the Court determines that Plaintiffs' claims can proceed beyond the fire response immunity, the City is otherwise immune from the conduct which established Plaintiffs' claims.

1. The City is immune from Plaintiffs' claims under § 34-13-3-3(a)(7) as a <u>discretionary function</u>.

A governmental entity retains sovereign immunity for discretionary acts committed by it or its employees. *See Lee by and through Estes v. Bartholomew Consol. Sch. Corp.*, 75 N.E.3d 518, 526 (Ind. Ct. App. 2017) (citing *Joseph v. LaPorte Cnty.*, 651 N.E.2d 1180, 1183 (Ind. Ct. App. 1995), *trans. denied*). A city is entitled to immunity by showing the acts at issue were "policy decisions made by consciously balancing risks and benefits." *Lee*, 75 N.E.3d at 526. Planning activities include acts or omissions "in the exercise of a legislative, judicial, or executive or planning function which involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy." *Id.* (citing *Marrek v.*

*Cleveland Metroparks Bd. of Com'rs,* 459 N.E.2d 873 (1984)). In contrast, operational decisions by cities do not trigger discretionary function immunity.

The City's actions (and inactions) in this case were the subject of lengthy and detailed planning and policy decisions that constitute the performance of discretionary functions by the City. The evidence at trial demonstrates that the City had been planning and making policy decisions for several years regarding the 310/358 Properties. The City had received a 2018 Brownfield Grant which the evidence demonstrated compelled the City to receive legal title to the Property. The City did not take actual possession and control and there was no evidence of the City conducting any operations at the 310/358 Properties. Indeed, the City's only presence on the 310/358 Properties prior to the Fire was a single day to perform an environmental assessment. To complete that assessment, the City was required to seek an access agreement from Smith.

The City's actions were not merely a ministerial or operational act but were planning and policy decisions. The City brownfield process was followed to conduct a brownfield investigation of properties, choose eligible properties, receive legal title, and conduct assessments. Then Mayor Snow testified that the costs required to take possession of the 310/358 Properties from CTG would have run into "seven figures" and that it was not feasible to "seize Mr. Smith's assets" that covered the 310/358 Properties. (Tr. Vol 3, p. 590-91.) The trial evidence demonstrated years of correspondence between Smith, CTG and the City and the fact that no correspondence was produced at trial after August of 2021, does not undermine the undisputed facts that the City had been involved in years of planning regarding these properties. The City's actions with respect to the 310/358 Properties were entitled to immunity under Indiana Code § 34-13-3-3(a)(7).

2. The City is immune from claims it failed to enforce orders (Indiana Code § 34-13-3-3(a)(8)).

Indiana Code § 34-13-3-3(a)(8) provides immunity for the adoption and enforcement of or failure to adopt or enforce any law, including rules and regulations. The immunity provided by Section 3(a)(8) "extends well beyond 'traditional law enforcement activities such as the arrest or pursuit of suspects by police.'" *Mullin v. City of S. Bend*, 639 N.E.2d 278, 283 (Ind. 1994) (quoting *Quakenbush v. Lackey*, 622 N.E.2d 1284 1287 n.3 (Ind. 1993)). Indeed, for purposes of Section 3(a)(8), "enforcement" has been more broadly defined as "'those activities in which a government entity or its employees compel or attempt to compel the obedience of **another** to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1275 (Ind. Ct. App. 2005) (quoting *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) (emphasis supplied), *trans. denied*.

Here, Plaintiffs argued that the City failed to enforce the 2019 Orders regarding the 310/358 Properties and failed to remediate fire hazards and unsafe conditions. (Tr. Vol. 5 (974-978.) Plaintiffs argued to the jury that the City was required "to compel the obedience of **another** to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Mullin*, 639 N.E.2d at 283 (emphasis supplied). However, Section 3(a)(8) provides immunity to the City for these alleged failures and entitles the City to judgment as a matter of law on Plaintiffs' claims.

3. The City is immune as its acts, including taking title to 310 and 358, were taken <u>to investigate or remediate a brownfield</u>.

Indiana Code § 34-13-3-3(a)(22) provides immunity for "act[s] taken to investigate or remediate hazardous substances, petroleum, or other pollutants associated with a brownfield[.]" Plaintiffs do not dispute that this property was a brownfield as defined by Indiana Code § 13-11-2-19.3. The evidence at trial established that the City received legal title to this property as an act to investigate a brownfield. (Tr. Vol. II, p. 370-73.) Indeed, the City's sole involvement with these Properties was for acts to investigate a brownfield.

The purpose of statutory immunity is to encourage the reuse and redevelopment of brownfield property and to protect municipalities as they take actions to do so. (*see* Pub. L. No. 235-2005). Plaintiffs' claims run opposite the statutory immunity afforded the City for taking these acts to investigate brownfields and if ignored create liabilities that will discourage brownfield investigation. According to Plaintiffs, because legal title transferred to the City as part of the brownfield process, the City was required to operate the facility and address conditions the City did not create. But neither exception to the immunity applies here. There was no evidence that the City was responsible for the initial placement of the plastics. Further, there was no evidence that the City's conduct constituted reckless or wanton and willful misconduct. Indeed, the evidence demonstrated that the City used its brownfield process to compel Smith to remove millions of tons from the property prior to the Fire.

4. The City is immune from nuisance liability for the actions of another (Indiana Code § 34-13-3-3(a)(10).

Indiana Code § 34-13-3-3(a)(10) provides immunity for the "act or omission of anyone other than the governmental entity or the governmental entity's employee." Under this immunity, the City cannot be held liable for the acts or omissions of anyone other than itself, such as the actions and inaction of Smith. As shown above, while the Fire appears to have originated on the 358 Property (a parcel titled to the City), Smith had control over the 310/358 Properties at the time of the Fire. Moreover, it was Smith's actions that caused the accumulation of combustible material at the 310/358 Properties and his threats against the City which prevented the City access to the Properties. These acts were the acts or omissions of others for which the City cannot be liable.

## V. Conclusion

Following the trial of this matter, the City is entitled to judgment as a matter of law on Plaintiffs' claims.

Respectfully submitted,

*/s/ Andrew M. McNeil*
Andrew M. McNeil (No. 19140-49)
Bradley R. Sugarman (No. 22152-49)
Seth M. Thomas (No. 25834-49)
Jackson L. Schroeder (No. 35355-49)
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000

amcneil@boselaw.com
bsugarman@boselaw.com
sthomas@boselaw.com
jschroeder@boselaw.com

*Attorneys for Defendant City of Richmond, Indiana*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record via email.

John A. Smalley
Benjamin D. Felton
Alex Mann
DYER, GAROFALO, MANN & SCHULTZ
131 North Ludlow Street, Suite 1400
Dayton, OH 45402
jsmalley@dgmslaw.com
bfelton@dgmslaw.com
amann@dgmslaw.com

*Attorneys for Plaintiffs*

Arie J. Lipinski
LIPINSKI LAW
951 N Delaware Street
Indianapolis, IN 46202
lipinski@lipinski-law.com

*Attorney for Seth Smith, Cornerstone Trading Group, LLC, and My-Way Trading, Inc.*

*/s/ Andrew M. McNeil*
Andrew M. McNeil