**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| TUSHAWN CRAIG and<br>MARQUETTA STOKES<br><br>Plaintiffs,<br><br>vs.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH; and<br>CITY OF RICHMOND, INDIANA,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:23-cv-01575-TWP-MJD |

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**THE CITY OF RICHMOND'S POST TRIAL MOTION**
**FOR RULE 52(a)(1) FINDINGS AND CONCLUSIONS ON**
**THE CITY'S IMMUNITY DEFENSES**

## I. INTRODUCTION

The jury found the City liable for negligence and nuisance after trial. Using the same argument attempted at summary judgment and the City's motion for reconsideration, the City now asks this Court to treat the plaintiffs' evacuation-related damages as proof that the claims arise from the evacuation decision itself, then to apply fire-response immunities to the City's earlier failure to address a known hazard on property it owned. That collapses two distinct events and two distinct theories. Plaintiffs challenge the City's pre-fire conduct as a landowner. They do not challenge the fire department's tactics, the timing or content of emergency alerts,[1] or the decision to evacuate residents while the fire burned.

This Court has already repeatedly rejected the City's attempt to recast these claims as failures to enforce laws or operate an emergency communication system. The trial evidence that Chief Brown ordered an evacuation during an active fire does not change the conduct at issue. This Court should find that none of the asserted immunities covers the City's pre-fire landowner conduct, and deny the City's Motion.

## II. ARGUMENT

### A. The Evacuation and Fire Response Immunities Do not Reach Plaintiffs' Claims.

[1] The City previously asserted under Section 34-13-3-3(a)(19), which concerns the development, operation, or use of an enhanced emergency communication system. *See* City's Mtn. for Summary Judgment (ECF No. 241 at 41-42). While the City does not reassert this particular immunity here, this Court held it to be inapplicable for the same reason that Chief Brown's involvement in the evacuation order does not help the ITCA defenses at issue in the City's present motion. Plaintiffs do not challenge the Nixle alerts, their content, or their timing. The City's own evidence was that Chief Brown gave the evacuation "okay" and the Emergency Management Agency handled notices. Even if the City participated in authorizing an evacuation, the City has not shown that a communication-system act caused the losses for which it was found liable. The evacuation order and emergency management system conveyed the response to the fire, it did not create the pre-fire hazard or the fire itself.

The City relies on Chief Brown's testimony that he ordered an evacuation because responders did not know what was burning, could not predict how the fire would spread, and observed small explosions.[2] That evidence may describe a discretionary emergency decision during firefighting. It does not describe the conduct Plaintiffs challenged, namely, the City's years-long failure, as owner, to address a dangerous accumulation of combustible materials before the fire began.

The City points to Mayor Snow's testimony about the cost of taking possession from Smith and the City's choice not to pursue further legal action.[3] That evidence concerns one possible means of obtaining physical possession. It does not establish that the City consciously weighed policy alternatives concerning any steps it could take as owner to secure the property, reduce the combustible accumulation, or otherwise mitigate a hazard it knew could cause a neighborhood evacuation. The City still has not shown that the specific inaction underlying the verdict was a protected planning decision.

The same distinction defeats the City's common-law fire-protection argument. The cases it cites concern the provision of fire-protection services and response. *See Veolia Water Indianapolis, LLC v. National Trust Insurance Co*., 3 N.E.3d 1, 7–8 (Ind. 2014) (recognizing common-law immunity for the government's provision of fire protection). Plaintiffs challenge the City's separate conduct as a property owner before the fire began, not its provision of fire-protection services once the emergency arose.

**B. <u>Section 34-13-3-3(a)(7) Does Not Apply.</u>**

[2] City's Mtn. (ECF No. 444) at 5–6 (citing Tr. Vol. 1 at 126).
[3] City's Mtn. (ECF No. 444) at 8.

Section 34-13-3-3(a)(7) protects only a loss resulting from performance of a discretionary function. Under Indiana's planning/operational test, the City must show that the challenged omission was a policy decision made through conscious balancing of risks and benefits. The City's label of its conduct as "planning" does not satisfy that burden. Courts must examine the actual decision-making process and the specific conduct that Plaintiffs challenge. *See City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138–40 (Ind. 2016). Immunity is "strictly construed against limitations on a claimant's right to bring suit" because it is an exception to the general rule of governmental liability. *Schon v. Frantz*, 156 N.E.3d 692, 699 (Ind. Ct. App. 2020) (quoting *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013)). The City identifies real policy decisions, including applying for a Brownfield grant, participating in the Brownfield program, and acquiring title to the properties. Plaintiffs do not challenge those decisions. This Court recognized that the City's decision to acquire the properties may have been a policy decision, but held it irrelevant because Plaintiffs' claims concerned what the City did after acquiring title.[4] The City's post-trial motion still does not identify a policy decision about whether or how to secure, monitor, or remediate its property after title transferred. Instead, it relies on a general history of Brownfield activity, the absence of further correspondence after August 2021, and Mayor Snow's estimate that taking possession would cost seven figures.[5] None shows that the City actually weighed alternatives or made an official policy choice concerning the hazards at issue.

The trial evidence made that gap concrete. Mayor Snow had no cost analysis, remediation plan, or other assessment showing what remediation would cost or whether the City could do it. The City presented no evidence that a council member or other City decision-maker affirmatively

---

[4] Summary Judgment Order (ECF No. 304) at 35.
[5] City's Mtn. (ECF No. 444) at 7–8.

decided not to remediate. The City visited the properties once and never returned, even though it knew hazards remained and had a deadline to act.[6] As this Court explained, a possible need for appropriation does not automatically convert a failure to do anything into a policy decision, and the City cannot carry its burden by arguing that inaction itself proves policymaking.[7] Throughout the trial, the City offered no remediation plan, no cost analysis, and no affirmative decision not to act. The omission at issue, failing to keep known hazards on City-owned property in a reasonably safe conditions, is readily assessed under ordinary tort standards. Section (a)(7) does not immunize it.

**C. Section 34-13-3-3(a)(8) Does Not Apply.**

Section 34-13-3-3(a)(8) does not cover Plaintiffs' claims. It immunizes the adoption and enforcement of, or failure to adopt or enforce, a law. This Court has twice rejected the City's attempt to recast this landowner claim as a failure to enforce Unsafe Building Commission orders against My-Way.[8] The orders matter because they establish what the City knew about the properties' unsafe condition; they do not transform the City's own post-title conduct into an enforcement claim. Plaintiffs do not seek to hold the City liable for failing to compel Smith to obey the orders. They contend that the City itself failed to address a known hazard on property it owned. The City's reliance on Plaintiffs' closing references to the orders confuses evidence of notice with the source of the City's alleged duty and breach.[9]

**D. Section 34-13-3-3(a)(10) Does Not Apply.**

---

[6] Tr. Vol. 5 at 961, 964–65.
[7] Tr. Vol. 5 at 964–65.
[8] Summary Judgment Order (ECF No. 304) at 36–37; Order on Pending Motions (ECF No. 324) at 16–19.
[9] City's Mtn. (ECF No. 444) at 9.

Section 34-13-3-3(a)(10) does not bar liability for the City's own conduct merely because Smith and Cornerstone also contributed to the dangerous condition. The City argues that Smith created the nuisance, controlled the properties, and threatened the City.[10] But the statute immunizes only losses resulting from acts or omissions of someone other than the government, it does not erase a government entity's independent acts or omissions that also contributed to the loss. *See Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1066 (Ind. Ct. App. 1995).[11] At trial, this Court identified evidence that the City knew the nuisance remained, took title for the purpose of remediation and demolition, and could have worked with Smith to remedy it. Smith testified that he was willing to work with the City and was actively removing millions of pounds of plastic; the City would not talk with him or attempt to help.[12] This Court accordingly denied immunity under subsection (a)(10).[13] Smith's role in creating or maintaining the condition does not establish that his conduct was the only cause of the City's liability.

**E. <u>Section 34-13-3-3(a)(22) Does Not Apply.</u>**

Section 34-13-3-3(a)(22) protects an act taken to investigate or remediate hazardous substances or pollutants associated with a Brownfield. The City argues that its receipt of title was itself an investigative act and that immunity should protect its Brownfield process.[14] This Court has already drawn the statutory line that Plaintiffs do not challenge the City's acquisition of title or its environmental assessment, their claims rest on the City's inaction after taking title.[15] At trial, this Court noted that the City went to the properties only once, never returned to investigate or

---

[10] City's Mtn. (ECF No. 444) at 10.
[11] Summary Judgment Order (ECF No. 304) at 37–38.
[12] Tr. Vol. 5 at 962–64.
[13] Tr. Vol. 5 at 966.
[14] City's Mtn. (ECF No. 444) at 9–10.
[15] Summary Judgment Order (ECF No. 304) at 39–40.

remediate, and took no remediation action even though it knew hazards remained.[16] This Court denied immunity because taking title and Brownfield status are not acts to investigate or remediate.[17] The City's policy argument that immunity encourages Brownfield redevelopment cannot enlarge the statute to protect an owner's failure to act after the protected investigation or remediation has ceased.

## III. CONCLUSION

The jury resolved Plaintiffs' negligence and nuisance claims against the City. The City has not shown that Rule 52 authorizes findings that would displace that verdict, or that any immunity covers the pre-fire landowner conduct on which Plaintiffs' claims rest. Plaintiffs respectfully request that this Court deny the City's motion and enter judgment on the verdict.

.

Respectfully submitted,

**/s/ John A. Smalley**

John A. Smalley, Esq. (OH Sup. Crt. 0029540)
Attorney for Plaintiffs
131 N. Ludlow Street, Suite 1400
Dayton, OH 45402
Telephone: (937)223-8888
Facsimile: (937) 824-8630
Email: jsmalley@dgmslaw.com

[16] Tr. vol. 5 at 961–62.
[17] Tr. vol. 5 at 961–62.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing pleading has been filed this 23rd day of October, 2026 with the Clerk of Court using the CM/ECF system, which will send notification to the following counsel of record:

Andrew M. McNeil
Bradley R. Sugarman
Jackson L. Schroeder
Seth M. Thomas
Bose McKinney & Evans, LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Attorneys for City of Richmond

Arie Lipinski
LIPINSKI LAW
951 N. Delaware Street
Indianapolis, IN 46202-3377
Attorneys for Seth Smith, Cornerstone Trading
Group, LLC, and My-Way Trading, Inc.

**/s/ John A. Smalley**
John A. Smalley, Esq. (OH. Sup. Crt. 0029540)
Attorney for Plaintiffs