UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TUSHAWN CRAIG and MARQUETTA STOKES, individually and on behalf of others similarly situated, | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Cause No. 1:23-cv-01575-TWP-MJD |
| CORNERSTONE TRADING GROUP, LLC, SETH SMITH, an individual, and CITY OF RICHMOND, INDIANA, | ) | |
| *Defendants* | ) | |

**DEFENDANT CITY OF RICHMOND, INDIANA'S BRIEF IN SUPPORT OF ITS RENEWED MOTION TO DECERTIFY THE PLAINTIFFS' CLASS**

The Defendant, the City of Richmond, Indiana (hereinafter, the "**City**"), by counsel and pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, hereby files its brief in support of its *Renewed Motion to Decertify the Plaintiffs' Class,* filed contemporaneously herewith (hereinafter, the "***Renewed Motion to Decertify***"). As set forth in the *Renewed Motion to Decertify*, the City respectfully requests that this Court enter an order decertifying this action from class treatment and recognizing that the September's jury verdict provided no special verdict of class liability, rather it was expressly limited to Defendants' individual liability to the named plaintiffs, Mr. Tushawn Craig and Ms. Marquetta Stokes (hereinafter, collectively the "**Plaintiffs**").

The City's motion is presented in three parts. *First*, the Plaintiffs have failed to carry their burden to manage this case as a class action and implement a feasible trial plan to resolve the certified "common issues" of the Defendants' liability to their class and/or subclasses as a whole. *Second,* based on the trial record, the Plaintiffs failed to satisfy the Rule 23 requirements to sustain class treatment, including those specific to Rule 23(c)(4) issue certification. *Third,* decertification

of the Plaintiffs' class is required because their failure to obtain class-wide specific jury verdicts in the first phase means the anticipated "individual follow-on proceedings" on the non-named class members' claims cannot take place without violating both the Defendants' Seventh Amendment right against reexamination and this Circuit's settled precedent regarding bifurcated class proceedings. For these reasons, which are expanded upon in further detail herein, the City renews its motion for this Court to decertify the Plaintiffs' class pursuant to Rule 23(c)(1)(C).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a fire which ignited on the premises of 308, 310, and 358 N.W. F Street in Richmond, Indiana (hereinafter, collectively the "**Properties**" and each individually a "**Property**"), on the afternoon of April 11, 2023 (hereinafter, the "**Fire**"). Dkt. 438, Trial Tr., vol. 3, 510:10–16. At the time of the Fire, the 308 Property was owned by the Defendant, Cornerstone Trading Group, LLC, and/or the Defendant, Seth Smith (hereinafter, collectively the "**Cornerstone Defendants**"), while the 310 and 358 Properties were titled to the City. *Id*. at 510:25–511:13. The Fire persisted until it was extinguished on April 18, 2023. Trial Tr., vol. 1, 158:20–159:3. The Plaintiffs initiated this litigation shortly thereafter, asserting, in pertinent part, causes of action for the torts of negligence and nuisance arising from the Fire and the subsequent issuance of evacuation notices for the one-half-mile radius therearound (hereinafter, the "**Evacuation Notices**"). Dkt. 72; *see* Dkt. 304 at 60–61 (granting City summary judgment on other causes of action) *and* Dkt. 421 ("Plaintiffs … voluntarily dismiss [other causes of action] against the Cornerstone Defendants").

On September 13, 2024, Plaintiffs filed a motion to certify a class for which they would serve as representatives, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Dkt. 116; *see* Dkt. 117 [hereinafter, cited as "Pltfs' Cert. Br."]. The Plaintiffs proposed their class as comprising all persons "who resided within a .5 mile radius evacuation zone" around the Fire

"from April 11 through April 16, 2023." Dkt. 133 ["Pltfs' Cert. Rep."], at 3. The Plaintiffs further proposed dividing their class into an "Owner" subclass consisting of all class members who "owned property within the evacuation area[,]" and a "Non-Owner" subclass consisting of the remaining class members. *Id*. The Plaintiffs then requested that the Court follow the example of *Mejdrech v. Met-Coil Systems Corporation*, which they interpreted as allowing for "common issues as to [the Defendants'] liability" to be certified for class treatment and "resolve[d] … in one sweeping case[,]" with "individual follow-on proceedings" conducted thereafter to resolve remaining issues for each member. *Id.* at 11 (citing *Mejdrech v. Met-Coil Sys. Corp.* 319 F.3d 910, 911–12 (7th Cir. 2003)). The Court granted Plaintiffs' motion without modification and certified the Plaintiffs' class and subclasses to resolve the so-called "common issues" in a first phase liability trial, with a bifurcated "final phase" to be held thereafter to resolve "individual causation and damages" on a member-by-member basis. Dkt. 287 ["Order on Cert."], at 18.

On April 21, 2026, the City filed a motion to decertify the Plaintiffs' class and subclasses under Rule 23(c)(1)(C) (hereinafter, the "***Motion to Decertify***"). Dkt. 308 at 1–4. There, the City raised its concerns that, *inter alia*, the Plaintiffs had "not developed collective evidence sufficient" to demonstrate the Defendants' class- or subclass-wide liability, with no showing yet made as to "the number of [class members] that evacuated" or the extent to which the evacuation zone was "actually exposed to smoke and debris" from the Fire. *Id*. at 2; *see* Dkt. 309, ["City's Decert. Br."], at 3, 22–23. The City further raised other concerns, including on numerosity, as the Plaintiffs had yet to present any admissible evidence of the size of their own class. *Id*. at 12 (Plaintiffs' claim of 2,000 members "is based solely on inadmissible hearsay"). The Plaintiffs dismissed these concerns and reasserted their intent and ability to "resolve [class- or subclass-wide] liability and common causation[,]" as well as establish the propriety of their class, at the upcoming trial. Dkt. 314 ["Plfts'

Decert. Resp.”], at 6, 15. This Court denied the *Motion to Decertify*. Dkt. 324 [“Order on Decert.”], at 37; *see*, *et al*., *Id*. at 27 (dismissing lack of numerosity evidence because “Plaintiffs intend to call Joseph Tanasovich to testify” to numerosity at trial).

In the lead-up to trial, the parties were ordered to submit their proposed jury instructions and verdict forms. *See* Dkt. 42, filed Jan. 26, 2024, at 9–10. On July 27, 2026 the Plaintiffs submitted only two jury instructions, Dkt. 351 [“Pltfs’ Prop. Instr.”], at 4, and no verdict forms. This Court then ordered the parties to prepare and submit a “joint set of final jury instructions and verdict forms[,]” Dkt. 362, the Plaintiffs failed to prepare or submit any verdict forms mentioning the Defendants’ class- or subclass-wide liability or directing the jury to make any class liability ruling thereon. *See* Dkt. 375-2 [hereinafter, cited as “Joint Prop. Verdict Forms”], at 1–6. At the final pretrial conference, the Court discussed the parties’ proposed instructions. Dkt 388 [“Pret. Conf. Entry”], at 6. However, the preliminary jury instructions as adopted by the Court failed to explain the liability class framework, identify the so-called “common issue or issues” of the Defendants’ class- or subclass-wide liability, or otherwise describe the jury’s task in regard to the putative members of the class. *See* Dkt. 421-1 [“Ct. Prelim. Instr.”], at 1–20. While the City objected to the Court’s preliminary instructions, those objections were overruled. Dkt. 414 at 1–2. The Plaintiffs neither joined in the City’s objection nor raised any of their own.

Trial for this case began on September 14, 2026. Dkt. 421. The Plaintiffs called seven (7) witnesses at trial: Mr. Jeffrey Gabbard, Deputy Fire Marshal, State of Indiana; Mr. Timothy Brown, Chief, Richmond Fire Department; Mr. Aaron Jordan, former Building Commissioner, City of Richmond; Mr. Douglas Gardner, Deputy Chief of Fire Prevention, Richmond Fire Department; Ms. Beth Fields, Director of Strategic Initiatives, City of Richmond; Ms. Marquetta Stokes, the Plaintiff; and Mr. Tushawn Craig, the Plaintiff. Trial Tr., vol. 1, 65:18, 120:6, *Id*. at

vol. 2, 210:18, 260:5, 327:14, 413:17, *Id*. at vol. 3, 473:23. Ms. Stokes and Mr. Craig each testified to their own personal experiences during the Fire and Evacuation Notices. *Id*. at vol. 2, 413:17–437:19, *Id*. at vol. 3, 473:23–498:6. However, at no point during direct examination of any of their witnesses did the Plaintiffs' counsel ask about the Defendants' class- or subclass-wide liability, nor the class- or subclass-wide impact of the Fire and/or Evacuation Notices. *See Id*. at vol. 1, 65:18–90:8, 120:6–146:6, *Id*. at vol. 2, 210:18–229:15, 260:5–286:18, 327:14–359:11, 413:17–437:19, *Id*. at vol. 3, 473:23–498:6.

At the close of trial, the jury was presented with verdict forms (hereinafter, the "***Jury Verdict Forms***"), in which they recorded their verdict that the Defendants were liable to Ms. Stokes and Mr. Craig for negligence and nuisance. Dkt. 425 ["Ct. Verdict Forms"], at 2–5; *see Id*. at 1 (identifying "the Plaintiffs" as "Tushawn Craig and Marquetta Stokes"). Nowhere in the *Jury Verdict Forms* was there any specific finding of fact regarding any Defendant, no defendant was assigned any specific liability for the occurrence of the Fire generally, nor for any damages allegedly suffered by the other, unnamed members of the Plaintiffs' class and subclasses. *See Id*. at 1–5. In fact, the *Jury Verdict Forms* did not contain or use the word "class" or make any factual finding as to putative class members at all. *See Id*. The parties had conferred with the Court to discuss the *Jury Verdict Forms* prior to the jury's deliberations. *See* Pret. Conf. Entry at 6, Trial Tr., vol. 4, 945:17–954:14, *Id*. at vol. 5, 1035:25–1036:12. During this discussion, the Plaintiffs raised no issue as to the adequacy of the *Jury Verdict Forms*, and in fact affirmatively approved their submission to the jury as written, without any special findings requested therein. *See, et al.*, Trial Tr., vol. 4, 952:1–3 (The Court: "Mr. Smalley, are you fine with the verdict forms?" Mr. Smalley: "Yes, Your Honor").

## II. LEGAL STANDARD

The proponent of class certification under Rule 23 bears the burden of demonstrating, by a preponderance of the evidence, the appropriateness of class treatment. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). This burden is not excused once satisfied at a single point in time but persists for the entire litigation until final judgment. Fed. R. Civ. P. 23(c)(1)(C), *Mazzei v. Money Store*, 829 F.3d 260, 270 (7th Cir. 2016) ("In opposing [a] decertification motion, [proponent] retained the burden to demonstrate that these requirements were satisfied"). As such, class treatment may be rescinded, amended, or altered if, at any time prior to final judgment, it is determined that the proponent's class, as prior certified, is no longer appropriate. *Id*. This is true even if a jury verdict has already been returned. *Id*. at 269.

A proponent demonstrates the appropriateness of their class with evidence that it meets each requirement of Rule 23(a)—respectively, numerosity, commonality, typicality, and adequacy, *see* Fed. R. Civ. P. 23(a)(1)–(5)—as well as at least one subsection of Rule 23(b). *Mazzei*, 829 F.3d at 270. Normally, the appropriateness of class treatment is assessed in regard to the proponent's claim as a whole, such that certifying a conventional damages class under Rule 23(b)(3) requires a determination that, *inter alia*, "common questions predominated as to the entire cause of action." *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 898 (7th Cir. 2024). In this case, the Plaintiffs ostensibly requested a Rule 23(b)(3) certification. *See* <u>Pltfs' Cert. Br.</u> at 7. However, certifying particular issues for class treatment—which is what the Plaintiffs actually sought—is the function of Rule 23(c)(4). *See Jacks*, 118 F.4th at 897. Proponents in the Plaintiffs' position may opt for such "issue certification" even when their claim as a whole does not meet the requirements for class treatment, including due to a lack of claim-wide predominance. *See Id*. at 896–97; *see In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) ("[A] court

may employ Rule 23(c)(4) when it is the only way that a litigation retains its class character, i.e., when common questions predominate only as to the 'particular issues'").

Notwithstanding the foregoing, issue certification under Rule 23(c)(4) is not merely a work-around to a lack of predominance or any other deficiency; rather, it comes with its own set of specific requirements. First, any issues proposed for certification must be such that their class- or subclass-wide resolution would "materially advance" resolution of the entire case. *Jacks*, 118 F.4th at 899; *see Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1188 (10th Cir. 2023) (issue certification depends on "whether resolution of the issue … will 'materially advance' resolution of the dispute"). Put differently: issue certification is appropriate only if it "would be the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898; *Black*, 69 F.4th at 1188 ("materially advance" test is "[s]ubsumed in … whether [issue certification] is superior to other available methods") (internal quotations omitted). Second, the proponent must show that "common questions predominate as to each issue to be certified[.]" *Jacks*, 118 F.4th at 897. Put more simply: the issue(s) to be certified must not only be capable of "be[ing] determined on a class-wide basis," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015), but also be sufficiently "divisible from the individual issues" that their resolution does not "leave[] significant and complex questions unanswered" in regard to each class member. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272–73 (3d Cir. 2011); *see Jacks*, 118 F.4th at 893 (liability issue class not appropriate where it is "not possible to separate the question of liability from the question of [individual] damages").

Regardless of whether a court grants class treatment for their entire damages claim under Rule 23(b)(3) or only particular issues under Rule 23(c)(4), a proponent bears the burden of demonstrating the "manageability" of their class action framework. 2 *Newberg and Rubenstein on*

*Class Actions* § 4:72 (6th ed.); *see* Fed. R. Civ. P. 23(b)(3)(D) (superiority of class treatment depends in part on "the likely difficulties in managing a class action"), *Wallace v. NCL (Bahamas), Ltd.*, 271 F.R.D. 688, 701–702 (S.D. Fla. 2010) (declining certification where proponent "fail[ed] to … propose a plan to manage th[eir] case as a class action"). This burden requires the proponent to create and implement a "trial plan that would feasibly address" the certified claim or issue(s), as the case may be, on a class- or subclass-wide level. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278–79 (11th Cir. 2009); *see Jacks*, 118 F.4th at 893 (decertifying liability issue class where "there was no feasible way to determine liability for the class as a whole"). Often, proponents fail to carry this burden by failing to develop evidence representative and probative of their class or subclasses. *See Gates*, 655 F.3d at 272–74 (issue class was "not feasible" when proponents failed to "propose[] what common proof would be presented" on class-wide issue), *Jacks*, 118 F.4th at 892 (affirming decertification where plaintiffs' trial plan did not include any evidence "representative of the entire class"), *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 485 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) (liability issue class invalid because "Plaintiff has not provided common proof to support a class-wide judgment as to liability"). By requiring a proponent to actually manage their cases as class actions, rather than merely seek class treatment to benefit their negotiating position, a court can prevent the occurrence of a "shapeless, freewheeling trial" at which that proponent fails to legitimately address the purpose for which their class was certified. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013).

When class certification is paired with bifurcation—such as in both *Mejdrech* and the instant case—there exists a risk that defendants' rights under the Reexamination Clause of the Seventh Amendment will be violated. U.S. Const., amend. VII. Trial courts are permitted by Rule 42 to bifurcate cases "in furtherance of convenience or to avoid prejudice[,]" Fed. R. Civ. P. 42(b),

and are generally entitled to deference on their decisions to do so. *Blyden v. Mancus*i, 186 F.3d 252, 268 (2d Cir. 1999). However, when a class action framework incorporates bifurcation, Plaintiffs must exercise care in the litigation to avoid "the same issue [being] reexamined by different juries" during different bifurcated phases. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (finding impermissible overlap in class-wide liability and member-specific comparative negligence and proximate cause). Such a violation can occur by erroneous planning, such as when a claim or issue selected for class-wide resolution impermissibly "overlaps" with a claim or issue left for resolution on a member-by-member basis. *Id*. At least equally common, however, are violations caused by erroneous execution, such as when a jury meant to decide a class-wide claim or issue is not provided with a verdict form sufficient to make their decision. *Blyden*, 186 F.3d at 258–61 ("in order to permit subsequent individualized damages determinations, a special verdict would have to be returned specifying … those acts [for which] each defendant was liable"). In the event of either type of violation, the framework cannot be permitted to proceed. *See Rhone-Poulenc Rorer*, 51 F.3d at 1303–4 (decertifying liability issue class because of risk of "inconsistency between juries"), *Blyden*, 186 F.3d at 271 (vacating class-wide trial verdict because individualized proceedings would need to "revisit the issue of … liability" which "would violate the Seventh Amendment").

## III. DISCUSSION

### A. The Plaintiffs failed to carry their burden to manage this case as a class action and resolve "common issues" of the Defendants' liability to their class and/or subclasses.

As explained above, relevant case law imposed on the Plaintiffs—as proponents of class treatment—the burden of managing this case as a class action and facilitating the class- or subclass-wide resolution of the certified "common issues" of the Defendants' liability. *See, et al*., Fed. R. Civ. P. 23(b)(3)(D), *Jacks*, 118 F.4th at 892, *Gates*, 655 F.3d at 272–73. This burden required the

Plaintiffs to, *inter alia*, execute a feasible litigation plan establishing the Defendants' liability to their class and/or subclasses at September's trial, as well as develop and designate evidence probative of those "common issues[.]" *See, et al*., *Vega*, 564 F.3d at 1278–79, *Jacks*, 118 F.4th at 892, *Gates*, 655 F.3d at 272–73.

Early in this proceeding, the Plaintiffs proposed their class framework—pursuant to which the Court scheduled an initial class-wide liability trial and a subsequent phase of member-specific proceedings—through reference to the *Mejdrech* case. *See* Pltfs' Cert. Rep. at 11. While it is true that *Mejdrech* involved certification of issues related to class-wide liability, the framework in that case differed from that of the Plaintiffs in that it explicitly set forth specific factual questions pertaining to class-wide liability. *Mejdrech*, 319 F.3d at 911 (identifying "core questions" of "whether or not and to what extent [the defendant] caused contamination of the area in question"); *see* Fed. R. Civ. P. 23(c)(1)(B) (an order certifying a class "must define the … issues"). Plaintiffs never proposed to the Court prior to or during the liability phase trial that was completed in September any factual issues that would be resolved by the jury. *Compare* Order on Cert. at 18 (recognizing "[t]here are common issues across all claimants in each subclass" but declining to identify those issues beyond general liability) *with* Pltfs' Prop. Instr. at 1–4 (proposing no verdict forms), Joint Prop. Verdict Forms at 1–6 (proposing no special verdict forms). In any event, *Mejdrech* was but a single entry in an entire genre of class action cases where liability issues were certified for class- or subclass-wide resolution under Rule 23(c)(4), to be followed by bifurcated phases of individualized proceedings on member-specific issues such as damages. *See*, *et al*., *Gates*, 655 F.3d 255, *Jacks*, 118 F.4th 888, *Blyden*, 186 F.3d 252, *Nassau Strip Search Cases*, 461 F.3d 219, *In re Flint Water Cases*, 558 F. Supp. 3d 459 (E.D. Mich. 2021), *Simon v. Philip Morris Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001), *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356 (D.

Md. 2004), *Navelski v. Int'l Paper Co.*, 261 F. Supp. 3d 1212 (N.D. Fla. 2017). In fact, at least one leading treatise refers to *Mejdrech*-like frameworks as the "most commonly requested [form of] issue certification" under Rule 23(c)(4). 1 *McLaughlin on Class Actions* § 4:43 (22nd ed.). If Plaintiffs intended to proceed with issue certification during the recent trial, these other cases and authorities provided sufficient guidance on how to implement and resolve class-wide liability under their framework. However, as discussed in the Subsections below, the Plaintiffs did not submit any issues on the Defendants' class- or subclass-wide liability to the jury and, naturally, the jury therefore failed to deliver a verdict on any such issues. This non-feasance on the part of the Plaintiffs has invalidated the purpose for which their class was certified, *see* Order on Cert. at 18, and has made decertification necessary.

*1. The Plaintiffs failed to manage this case as a class action by failing to propose special verdict forms which would have resolved the Defendants' class- or subclass-wide liability at trial.*

In the words of the District Court for the Eastern District of New York, the purpose and goal of a class-wide liability trial in an issue certification framework is as follows:

> … [to] ensure that the issue of general compensatory liability is decided *so that transferee judges can properly instruct subsequent juries on the proper scope of their inquiry* into each class member's actual compensatory damages.

*Simon*, 200 F.R.D. at 50 (emphasis added). If this goal becomes unattainable—in other words, if the liability-only jury's verdict "does not suffice to establish … liability to the entire class [or subclasses]"—the Reexamination Clause is impugned. *Blyden*, 186 F.3d at 266–69, *see* 2 *Newberg and Rubenstein on Class Actions* § 4:91 (6th ed.). Given this risk, courts recognize special verdict forms or special jury interrogatories under Rule 49 as an absolute necessity to ensure that "the decision of the [liability-only] jury will provide sufficient guidance to allow later juries to implement the first jury's formal findings without confusion or uncertainty[.]" *Flint Water*, 558 F. Supp. 3d at 522 (quoting *Manual for Complex Litigation*, Fourth, § 22.755); *see* 2 *Newberg and*

*Rubenstein on Class Actions* § 4:91 (6th ed.) ("special verdict forms can avoid the [Reexamination Clause] problems raised by" issue certification frameworks).

A number of common attributes have developed for designing special verdict forms to adequately resolve class- or subclass-wide liability. Such forms must explicitly pertain to the plaintiff class and/or subclasses as a whole, not merely to certain members thereof, *see Blyden*, 186 F.3d at 259–60, 266–68 (finding erroneous a verdict form prompting ruling on liability to "the plaintiffs or any of them"); they must further address liability with the "specificity necessary for instructing a second jury as to the aspects of the litigation previously resolved[,]" *Flint Water*, 558 F. Supp. 3d at 522; and they must further still set forth rulings which are unambiguous, rather than "confusing" or "uncertain." *Simon*, 200 F.R.D. at 50–51. Ideally, such forms should also include the option to rule *against* a finding of class- or subclass-wide liability, *see Blyden*, 186 F.3d at 260 (verdict form allowed jury to answer "no" to question of class-wide liability), or at the very least should explain that the lack of such liability means "the end of all the [class members'] cases[.]" *Rhone-Poulenc Rorer*, 51 F.3d at 1297. Special verdict forms must be assessed for their adequacy standing alone, without anything assumed regarding the jury's intent or reasoning based on surrounding circumstances. *See Blyden*, 186 F.3d at 265 (erroneous verdict forms were insufficient to foreclose class-wide liability despite jury instructions that case "was a class action and … the named plaintiffs represent [their entire class]").

Here, the *Jury Verdict Forms* contained none of the attributes necessary to resolve the Defendants' liability to the putative class members. Far from explicitly pertaining to the Plaintiffs' class or subclasses, the *Jury Verdict Forms* failed to mention the existence of either and, in fact, only identified Mr. Craig and Ms. Stokes as "the Plaintiffs" to which the verdict applied. *See* <u>Ct. Verdict Forms</u> at 1–5. Moreover, nowhere in the *Jury Verdict Forms* was the jury specifically and

unambiguously prompted to rule on the Defendants' liability to the entire class or to either the Owner or Non-Owner subclasses. *See Id.* Given their burden as proponents of class certification, the Plaintiffs were required to propose special verdict forms adequate to resolve any issues they sought to litigate regarding the Defendants' class- or subclass-wide liability; they did not do so. *See* Pltfs' Prop. Instr. at 1–4 (proposing no verdict forms), Joint Prop. Verdict Forms at 1–6 (proposing no special verdict forms). At the very least, the Plaintiffs should have objected to the Court's *Jury Verdict Forms* as insufficient for their task; once again, they did not do so. *See* Trial Tr., vol. 4, 945:17–954:14, *Id*. at vol. 5, 1035:25–1036:12. By failing to take even the first step toward seeing the so-called "common issues" of the Defendants' liability—the entire underlying justification for their class, *see* Order on Cert. at 18—resolved at September's trial, the Plaintiffs have failed to carry their burden to manage this case as a class action. *See*, *et al*., *Wallace*, 271 F.R.D. at 701–702.

The Plaintiffs' failures at class action management appear to be merely a symptom of a wider ill. When the Court questioned Plaintiffs' counsel how he planned to proceed with resolving the claims of unnamed class members in light of the jury's verdict, he answered candidly: "I'm not 100 percent sure." Dkt. 440, Trial Tr., vol. 5, 1042:13–16.[1] That statement, as much as anything else, demonstrates that the Plaintiffs' focus during trial was on resolving only the named Plaintiffs' individual claims, with class and subclass liability a mere afterthought. It is therefore little surprise that the jury rendered no verdict as to class liability and only specifically adjudicated liability to Ms. Stokes and Mr. Craig. *See* Ct. Verdict Forms at 1–5. The Plaintiffs not only failed to manage

[1] As of this filing, Plaintiffs have still not informed the Court, or the Defendants, of any litigation plan for subsequent proceedings for the class or sub-class.

their case as a class action; they failed to present their case at trial with even a semblance of class character. Decertification is the only appropriate remedy.

2. *The Plaintiffs failed to manage this case as a class action by declining or failing to develop, designate, or present any evidence at trial which was representative and probative of the Defendants' liability on a class- or subclass-wide basis.*

Even if the Plaintiffs' class is assumed, *arguendo*, to have not been invalidated by their failure to ensure the resolution to the "common issues" of the Defendants' class- or subclass-wide at trial, they nevertheless still failed to manage this case as a class action by failing to set forth "a feasible litigation plan" to reach such a resolution. *Jacks*, 118 F.4th at 892. Recall that, a proponent of an issue certification class must necessarily develop and present evidence probative of liability on a class- or subclass-wide level. *See Gates*, 655 F.3d at 272–74, *Jacks*, 118 F.4th at 892. Put another way: a proponent requesting class treatment for the issue of liability must justify certification by showing that they have sufficient "common proof to support a class-wide judgment as to liability." *Marlo*, 251 F.R.D. at 485. It is not enough for a proponent to simply present "sufficient evidence" to receive a ruling in regard to a handful of "particular individuals" within their class, *Id*., absent an affirmative showing that "the experiences of these individuals were representative of the entire class." Jacks, 118 F.4th at 892. When a proponent is "incapable of proposing a feasible litigation plan" for their own class action, decertification becomes necessary. *Espenscheid*, 705 F.3d at 776.

At September's trial, the Plaintiffs called seven (7) witnesses; of these, two (2) were the named Plaintiffs themselves, with the others being various firefighters or other City employees. Trial Tr., vol. 1, 65:18, 120:6, *Id*. at vol. 2, 210:18, 260:5, 327:14, 413:17, *Id*. at vol. 3, 473:23. During direct examination of these witnesses by the Plaintiffs' counsel, no testimony was prompted or delivered regarding the effect of the Fire or the Evacuation Notices on the class as a whole, nor even on either the entire Owner or Non-Owner subclasses. *See Id*. at vol. 1, 65:18–

90:8, 120:6–146:6, *Id*. at vol. 2, 210:18–229:15, 260:5–286:18, 327:14–359:11, 413:17–437:19, *Id*. at vol. 3, 473:23–498:6. While Ms. Stokes and Mr. Craig each testified to the impacts they individually suffered from the Evacuation Notices, at no point during trial did the Plaintiffs' counsel ever even attempt to establish their experiences to be representative of the class or subclasses as a whole. *See Id*. at vol. 2, 413:17–437:19, *Id*. at vol. 3, 473:23–498:6. On the contrary, the Defendants' trial evidence demonstrated that many or even most people in the class did not evacuate as the named Plaintiffs had. *See, et al*., Trial Ex. 366 (drone footage from Apr. 11, 2023, showing homes illuminated, people walking, cars driving within evacuation zone), Trial Ex. 367 (drone footage from Apr. 12, 2023, showing pedestrians walking and normal traffic within evacuation zone), Trial Ex. 373 (drone footage from Apr. 13, 2023, showing pedestrians walking and normal traffic within evacuation zone), Trial Tr., vol. 3, 719:25–720:21 (Mr. Michael Britt: Richmond police did not "force anyone to leave their homes" or "prevent anyone from returning"). Courts ruling on class treatment under similar circumstances have found decertification to be proper. *See Jacks*, 118 F.4th at 893–94, 899 (upholding decertification where proponent's trial plan consisted of "call[ing] three to twelve class members" to deliver non-representative testimony). The reason why is simple: even if the jury here was assumed, *arguendo*, to have had "sufficient evidence to make judgments as to [Ms. Stokes and Mr. Craig]," the Plaintiffs cannot simply "extrapolate … those findings to a class-wide judgment." *Marlo*, 251 F.R.D. at 485. The Plaintiffs here failed to develop or, at the very least, failed to present ***any*** common evidence of the Defendants' liability to their class or subclasses. Through these failures, the Plaintiffs have failed to carry their burden to manage their case as a class action. *See Id*., *Jacks*, 118 F.4th at 892, *Gates*, 655 F.3d at 272–74. This Court must therefore decertify the Plaintiffs' class.

**B. Based on the evidence presented at trial, the Plaintiffs failed to demonstrate compliance with Rule 23(a)'s requirements, Rule 23(b)(3), and the requirements for issue certification under Rule 23(c)(4).**

Certifying a particular issue for class treatment under Rule 23(c)(4)—including as part of a *Mejdrech*-like framework—is appropriate only upon satisfaction of specific requirements. In addition to demonstrating adherence to the requirements of Rule 23(a), *see* Fed. R. Civ. P. 23(a)(1)–(5), a proponent of issue certification must show both that "common questions predominate as to each issue to be certified" and that "certifying the proposed issues would be the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898. As discussed in the Subsections below, the Plaintiffs have failed to make the necessary showings in regard to multiple of these requirements, including the two (2) requirements specific to issue certification. Decertification of the Plaintiffs' class is therefore required.

*3. <u>The Plaintiffs' evidentiary showing at trial failed to establish the Rule 23(a) factors.</u>*

Certifying any form of class action requires the proponent to demonstrate the appropriateness of class treatment by a "preponderance of the evidence[.]" *Mazzei*, 829 F.3d at 268. Necessarily, such a demonstration would include evidence that the proponent's class satisfies all criteria of Rule 23(a): that their class is "so numerous that joinder of all members is impracticable"; that "there are questions of law or fact common to [all members of] the class"; that the named class members' "claims or defenses … are typical" of the other members; and that the named members "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). If a proponent's class is ever shown to be deficient in regard to any of these criteria—including after a jury verdict—that class must be decertified. *Mazzei*, 829 F.3d at 273.

The City has consistently voiced its objections regarding the Plaintiffs' satisfaction of Rule 23(a)'s criteria. The City raised concern, for example, at the Plaintiffs' "demonstration" of numerosity, which relied entirely on a single, disputed hearsay statement alleging that the

Evacuation Notices were received and adhered to by approximately two thousand (2,000) people. City's Decert. Br. at 7–8, 11–13. In response, the Plaintiffs assured the City and the Court that their plan for trial included presenting a witness to testify that a sufficiently large number of people not only resided within the half-mile-radius evacuation zone, but also evacuated their homes due to the Fire. Plfts' Decert. Resp. at 6–8. The City objected that Plaintiffs had no common evidence and could not produce any common answers sufficient to satisfy Rule 23(a)'s commonality requirement. City's Decert. Br. at 13-14. The City also noted the lack of any evidence that the legal theories of the named Plaintiffs—who claimed negligence and nuisance specifically on theories of emotional distress and the incurrence of costs to heed the Evacuation Notices—were typical of other members of their class and subclasses. City's Decert. Br. at 14–15. Once again, the Plaintiffs responded with assurances that the claims of both their named and unnamed class members "arise from [the same] common facts" and would be proven using the same "common proof" at trial. Plfts' Decert. Resp. at 10. The City noted Plaintiffs could not satisfy the adequacy prong of Rule 23(a) and Plaintiffs acknowledged that the non-owners subclass may not have a nuisance remedy available to them. City's Decert. Br. at 15. This Court accepted the Plaintiffs' assurances at face value and denied the *Motion to Decertify*. Order on Decert. at 37; *see Id*. at 27 (Court: numerosity satisfied because "Plaintiffs intend to call Joseph Tanasovich to testify" at trial), *Id*. at 29–31 (Court: commonality and typicality satisfied because Plaintiffs could "prove that Defendants were negligent" to all class members); *Id. at 31-32* (Court: adequacy circumstances have changed but the Court was satisfied that named Plaintiffs were adequate for both the class and sub-class).

Plaintiffs failed to deliver on any of their assurances at trial. They presented no evidence at trial which identified the persons who are in fact members of their class, nor even any evidence that such persons numbered in an amount sufficient to satisfy Rule 23(a)'s numerosity

requirement. Moreover, although the Plaintiffs presented evidence probative of the allegation that Ms. Stokes and Mr. Craig were impacted by the Fire and Evacuation Notices and suffered damages from that impact, *see* Trial Tr., vol. 2, 413:17–437:19, *Id*. at vol. 3, 473:23–498:6, they presented nothing to allow a jury to establish these facts in regard to ***any*** of their unnamed class members. On the contrary, testimony from the named Plaintiffs themselves demonstrated their awareness of and adherence to the Evacuation Notices to have primarily been products of, respectively, happenstance and personal whim. *See, et al*., *Id*. at vol. 2, 427:1–4 (Ms. Stokes: claiming to have evacuated only after "Mr. Craig … [made her] realize that [they] needed to leave"), *Id*. at 430:4–11 (Ms. Stokes: claiming herself and Mr. Craig chose to violate Evacuation Notices and return home), *Id*. at vol. 3, 487:9–488:18 (Mr. Craig: claiming to have become aware of Evacuation Notices through chance encounter with police officer). Rather than satisfy their burden to prove the appropriateness of their class—including under the Rule 23(a) criteria—by a "preponderance of the evidence[,]" *Mazzei*, 829 F.3d at 268, Plaintiffs put forth nothing. No evidence at trial established that either the Fire or the Evacuation Notices touched the Plaintiffs' entire class. This omission extends to the very base level of the Plaintiff's case; they presented nothing, for example, showing the extent to which the Evacuation Notices were disseminated to the putative class members.

Prior to trial, the Plaintiffs were able to hold their class together through assumptions and promises of future evidence that would meet their Rule 23(a) burden; now, with trial having passed, the insufficiencies of the Plaintiffs' evidence are plain to see. In light of Plaintiffs' failure to demonstrate all of the Rule 23(a) factors with evidence admitted at trial, this class action must be decertified.

4. *Based on the Plaintiffs' evidentiary showing at trial, common questions do not predominate in regard to the "common issues" of the Defendants' class- or subclass-wide liability.*

Under relevant case precedent, the Plaintiffs' issue certification framework is permissible only if "common questions predominate over questions of liability but subside over questions of damages." *Acosta v. Bd. of Trs. of Unite Here Health*, 779 F. Supp. 3d 974, 1003 (N.D. Ill. 2025). Put another way: the Plaintiffs' class is appropriate only if liability can be resolved not only "on a class-wide basis," *Mullins*, 795 F.3d at 671, but also in a manner "separate … from the question of [each class member's] damages[.]" *Jacks*, 118 F.4th at 893; see *Gates*, 655 F.3d at 272–73 (affirming denial of liability issue certification because, *inter alia*, the "common issues [among the proposed class members] are not divisible from the individual issues"). In several cases, the predominance of "common questions" has typically been resolved by defining the proponent's class as those impacted in fact by the complained-of conduct. *See*, *et al*., *Pella Corp. v. Saltzman*, 606 F.3d 391, 392–396 (7th Cir. 2010) (in defective design action, certifying liability issue class case comprised of "owners of structures containing the [defectively designed] windows in question"), *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 874–876 (7th Cir. 2015) (in unfair debt collection action, upholding liability issue class comprised of those whom had "[been] sent a letter [by defendant] seeking to collect a debt"), *Mullins*, 795 F.3d at 658, 669–72 (in products liability action, upholding liability issue class comprised of "consumers 'who purchased [the product] … for personal use'"). In this way, *Mejdrech* represents the minority approach in that its plaintiffs' class was initially defined based on a geographical area, but subject to later truncation to only those members proven at trial to have actually been impacted in fact by the defendant's acts or omissions. *Mejdrech*, 319 F.3d at 911 (issue class certified to identify the "particular class members whose homes are in the area of contamination" to whom the defendant would be liable). The Plaintiffs' framework here actually failed to follow either approach.

As already pointed out above, the Plaintiffs' trial plan focused entirely on establishing the Defendants' liability to Ms. Stokes and Mr. Craig on an individual level. *See* Trial Tr., vol. 1, 65:18–90:8, 120:6–146:6, *Id*. at vol. 2, 210:18–229:15, 260:5–286:18, 327:14–359:11, 413:17–437:19, *Id*. at vol. 3, 473:23–498:6 (declining to question Plaintiffs' witnesses on class-wide impact or liability). As such, the Plaintiffs made no showing that the Defendants' alleged acts or omissions impacted any, let alone all, other class members, much less that they did so in a manner sufficiently uniform for liability to be capable of class- or subclass-wide resolution. This is yet another deficiency which the City predicted in its original *Motion to Decertify*. *See* City's Decert. Br. at 19–20. However, this Court denied decertification upon Plaintiffs' reassurance that they would present "liability proof" establishing the Defendants' liability to all their class members. Order on Decert. at 37 (citing Plfts' Decert. Resp. at 20). Now, with trial concluded, it is clear the Plaintiffs presented no such "liability proof" or, for that matter, any proof at all applicable to their unnamed class members. In the case of *Jacks v. DirectSat USA, LLC*, the Seventh Circuit Court upheld decertification in part because the class's proponent planned to prove class-wide liability with nothing more than "three to twelve class members" delivering non-representative testimony. *Jacks*, 118 F.4th at 893–94, 899. If the litigation plan in *Jacks* failed to justify class treatment, it is difficult to see how the Plaintiffs' plan here—which appears to have not even intended to prove class-wide liability—can succeed. Plaintiffs chose to define their class based on residence within a particular geographical area, then failed to prove that any person in that area other than named Plaintiffs Mr. Craig and Ms. Stokes was actually impacted by the Fire and/or Evacuation Notices. Holding the Defendants liable in subsequent member-specific proceedings will still require resolution of significant and complex factual questions unresolved by the jury's verdict. *Gates*,

655 F.3d at 271–73. Such circumstances are the antithesis for issue certification. Decertification is therefore necessary.

5. *<u>Based on the Plaintiffs' evidentiary showing at trial, continued class treatment is neither the most efficient nor most practical means of resolving this case.</u>*

In the wake of the completed trial, the class framework proposed by the Plaintiffs no longer materially advances resolution of the litigation. Even assuming Plaintiffs had demonstrated compliance with all of the Rule 23(a) factors, and the jury had resolved particular liability issues, Plaintiffs also must demonstrate that continued class certification is "the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898; *Black*, 69 F.4th at 1188. Here, the Plaintiffs' trial strategy in the first phase has left unresolved, *inter alia*, the questions of class membership, individual liability, causation, and damages. The Seventh Circuit Court has held that certification is not superior and does not materially advance resolution where, as here, resolving liability on a class- or subclass-wide basis nevertheless leaves too much for member-by-member resolution. *Jacks*, 118 F.4th at 899. This Court, like that in *Jacks*, must similarly decertify the Plaintiffs' class. In fact, the class at issue here is even more ripe for decertification than in *Jacks*, because Plaintiffs have failed to resolve the only class-wide issue for which they requested certification: liability. Just as September's trial was not managed efficiently, it is all but assured that this case's "final phase" of an untold number of subsequent proceedings will be equally unmanageable. *See* Trial Tr., vol. 5, 1042:13–16 (Plaintiffs' counsel: no determined plan for final phase).

**C. Decertification is now necessary to protect the Defendants' constitutional rights and to comply with Seventh Circuit precedent.**

Even if the defects discussed in Sections A and B above are assumed, *arguendo*, to not be fatal to the Plaintiffs' class, decertification is nevertheless necessary due to the constitutional implications of September's trial on the anticipated "final phase" of member-specific proceedings.

While bifurcated proceedings are constitutionally permitted, care must be taken to avoid relitigating liability issues during successive phases. *See Blyden*, 186 F.3d at 268–69, 2 *Newberg and Rubenstein on Class Actions* § 4:91 (6th ed.). In the influential *Matter of Rhone-Poulenc Rorer, Inc.*, the Seventh Circuit Court stated that those adopting a bifurcated framework to resolve particular certified issues on a class-wide basis must ensure complete diversity of issues between bifurcated phases. *Rhone-Poulenc Rorer*, 51 F.3d at 1303 ("the judge must not divide issues … in such a way that the same issue is reexamined"). The *Rhone-Poulenc Rorer* opinion makes clear that the failure to take such care violates the defendant's Seventh Amendment rights. *Id*. In a bifurcated issue certification framework, these concerns can be mitigated by resolving the class-wide liability issues in a competent manner: the liability verdict must simply be sufficiently specific and unambiguous that it can be "implement[ed] … without confusion or uncertainty" into each member's individual proceedings. *Manual for Complex Litigation* § 22.755 (4th ed.); *see Blyden*, 186 F.3d at 258–61.

Here, the Plaintiffs' class framework was not at all competently executed: the Plaintiffs failed to carry their burden of managing this case as a class action, including by failing to ensure that the so-called "common issues" of the Defendants' class- or subclass-wide liability were resolved at trial. *See supra* part A, pp. 9–16. As a result, the September jury neither was prompted to resolve those "common issues" nor rendered any verdict on the same. *See* Ct. Verdict Forms at 1–5. A close parallel can be found in the case of *Blyden v. Mancusi*, where the Second Circuit reviewed the appropriateness of an issue class certification framework after the liability-only jury failed to render a verdict "suffic[ient] to establish … liability to the entire class" due to erroneously written verdict forms. *Blyden*, 186 F.3d at 257–61, 266–68. Due to these erroneous forms, the issue of liability was not fully decided by the first phase jury, causing liability issues to be repeatedly

relitigated at subsequent individualized proceedings, which the Second Circuit decried as "clearly violat[ing] the Seventh Amendment." *Id*. at 269. The *Jury Verdict Forms* used here failed to even go as far as the deficient forms in *Blyden*, as they contain no mention whatsoever of the Plaintiffs' class or subclasses. *See* Ct. Verdict Forms at 1–5. Like in *Blyden*, no finder-of-fact in this case's "final phase" of individualized proceedings would, through reference to the *Jury Verdict Forms*, be able to deduce the Defendant's liability to any unnamed class member without violating the Seventh Amendment.

The teachings of *Rhone-Poulenc Rorer* and *Blyden* are clear: if Plaintiffs sought issue certification on Defendants' class-wide liability "a special verdict would have to be returned specifying … those acts [for which] each defendant was liable." *Blyden*, 186 F.3d at 271. The absence of such a verdict was an error in execution that, if allowed to stand, "would violate the Seventh Amendment." *Id*. Likewise, allowing the "final phase" to proceed in this case, under these circumstances, would require either (i) the repeated re-litigation of liability on a member-by-member basis in violation of the Seventh Amendment; or (ii) the improper and unfounded "extrapolat[ion]" of the jury's findings on the named Plaintiffs to all members of their class. *Marlo*, 251 F.R.D. at 485. Either scenario would violate the Defendants' constitutional right to a trial by jury. *See Rhone-Poulenc Rorer*, 51 F.3d at 1303. To avoid such a violation, this Court must acknowledge the jury's verdict as limited to the named Plaintiffs alone and so decertify the Plaintiffs' class.

## **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court decertify the class under Rule 23(c)(1)(C), as the September 18, 2026, jury verdict was wholly limited to Defendants' liability to the named Plaintiffs, Mr. Tushawn Craig and Ms. Marquetta Stokes, and the named Plaintiffs only, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/Seth M. Thomas*__________________

Andrew M. McNeil (No. 19140-49)
Bradley R. Sugarman (No. 22152-49)
Seth M. Thomas (No. 25834-49)
Jackson L. Schroeder (No. 35355-49)
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
amcneil@boselaw.com
bsugarman@boselaw.com
sthomas@boselaw.com
jschroeder@boselaw.com

*Counsel for Defendant City of Richmond, Indiana*

**CERTIFICATE OF SERVICE**

I certify that on October 28, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record via email.

John A. Smalley
Benjamin D. Felton
Alexander H. Mann
DYER, GAROFALO, MANN & SCHULTZ
131 North Ludlow Street, Suite 1400
Dayton, OH 45402
jsmalley@dgmslaw.com
bfelton@dgmslaw.com
amann@dgmslaw.com

*Attorneys for Plaintiffs*

Arie J. Lipinski
LIPINSKI LAW
951 N Delaware Street
Indianapolis, IN 46202
lipinski@lipinski-law.com

*Attorney for Seth Smith, Cornerstone Trading Group, LLC, and My-Way Trading, Inc.*

*/s/Seth M. Thomas*________
Seth M. Thomas