**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| TUSHAWN CRAIG and<br>MARQUETTA STOKES<br><br>Plaintiffs,<br><br>vs.<br><br>CORNERSTONE TRADING GROUP, LLC,<br>SETH SMITH; and<br>CITY OF RICHMOND, INDIANA,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:23-cv-01575-TWP-MJD |

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE CITY'S RENEWED MOTION TO DECERTIFY THE PLAINTIFFS' CLASS**

## Table of Contents

**I. INTRODUCTION** ........ 1

**II. LEGAL STANDARD** ........ 2

**III. ARGUMENT** ........ 2

A. In Finding Fault with the Verdict Forms, the City Disregards this Court's Instructions to the Jury and the City's Own Approval of the Forms. ........ 2

B. The Trial Record Provides Common Liability Evidence Related to Defendants' Conduct, the Fire, and the Evacuation ........ 6

C. The City's Renewed Rule 23(a) Objections Misrepresent Both this Court's Prior Findings and the Trial Record ........ 10

1. Numerosity turns on the certified class, not the number of residents physically compelled to evacuate. ........ 10
2. Differences in how class members learned of or responded to the evacuation do not defeat commonality or typicality. ........ 12
3. The City identifies nothing in the trial record undermining this Court's adequacy determination. ........ 13

D. The Trial Resolved Central Questions Common to the Class, and the Individualized Proceedings this Court Expressly Contemplated Do Not Defeat Predominance or Superiority ........ 14

E. The Seventh Amendment Requires Preservation of the Jury's Findings, Not Decertification of the Class ........ 17

**IV. CONCLUSION** ........ 20

## Table of Authorities

### Cases

*Artis v. Santos*, 95 F.4th 518 (7th Cir. 2024) .......... 4

*Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360 (7th Cir. 2015) .......... 2

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) .......... 5, 19

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) .......... 9

*Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011) .......... 10

*Houseman v. United States Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999) .......... 5, 18

*Hydrite Chemical Co. v. Calumet Lubricants Co.* 47 F.3d 887 (7th Cir. 1995) .......... 4

*In re Flint Water Cases*, 558 F. Supp. 3d 459 (E.D. Mich. 2021) .......... 5

*In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995) .......... 18

*Jacks v. DirectSat USA, LLC*, 118 F.4th 888 (7th Cir. 2024) .......... 9, 15, 17

*Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476 (C.D. Cal. 2008) .......... 9

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) .......... 14

*Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910 (7th Cir. 2003) .......... 15

*Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098 (7th Cir. 2019) .......... 2

*Simon v. Philip Morris Inc.* 200 F.R.D. 21 (E.D.N.Y. 2001) .......... 5

*Wallace v. NCL (Bahamas), Ltd.*, 271 F.R.D. 688 (S.D. Fla. 2010) .......... 6

### Rules

FED. R. CIV. P. 23 .......... passim

FED. R. CIV. P. 49 .......... 4

## I. INTRODUCTION

The City's renewed motion to decertify uses misleading trial record excerpts to submit the same arguments that this Court has rejected again and again. It quotes Plaintiffs' approval of the verdict forms while omitting the City's own approval immediately preceding it. It portrays counsel's discussion of post-trial procedures as evidence that the class framework failed, while omitting the City's stated participation in planning those proceedings. And it treats differences among class members' experiences and the need for subsequent individualized proceedings as newly discovered defects, although this Court considered those differences when certifying the Class and again when denying the City's first motion to decertify. This Court has already cautioned that "**in the absence of materially changed or clarified circumstances, the Court cannot condone a series of rearguments on the class issues by either the proponent or the opponent of the class**."[1] However, the City's motion does not supply the changed circumstances Defendants would need to justify decertification.

As Plaintiffs have consistently argued in multiple briefings, the need for individualized proof does not undermine certification and the trial record provides no reason to depart from this Court's prior rulings. In denying decertification the first time, this Court reaffirmed that class members' claims turn on Defendants' failure to remediate known fire hazards on their respective properties and their responsibility for allowing the fire to occur.[2] It considered differences in displacement, expenses, causation, and damages, and concluded that "the fact that individualized proof may be required in the final phase of this litigation does not disturb" its predominance finding.[3] The City now invokes those same arguments as new grounds to dismantle the Class after

[1] Order on Pending Motions (ECF No. 324) at 22 (citation omitted and emphasis added).
[2] Order on Pending Motions (ECF No. 324) at 21–22; 29.
[3] Order on Pending Motions (ECF No. 324) at 34–35.

trial. This Court should reject that effort to convert the individualized proceedings it anticipated into a reason to undo the class proceedings already conducted.

## II. LEGAL STANDARD

While a district court may revisit class certification before final judgment, FED. R. CIV. P. 23(c)(1)(C), decertification is not a vehicle to rehash arguments already rejected after a jury trial delivers a verdict unfavorable to the party seeking decertification. The question remains whether Rule 23's requirements continue to be satisfied based on the current record. Continued disagreement with this Court's prior ruling is not a changed circumstance.

Rule 23 requires a rigorous analysis, which may overlap with the merits as needed to assess the Rule's requirements. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). While courts have broad discretion on whether or not to certify a class, the Seventh Circuit has made clear that an order withdrawing class certification must provide a reasoned Rule 23 analysis sufficient to permit review; generalized concerns about individualized proof do not suffice where the disputed issue remains capable of common resolution. *Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098, 1101-03 (7th Cir. 2019) (vacating district court's decision to decertify after finding the decision lacked sufficient reasoning).

Individualized issues do not defeat certification unless they predominate over common ones or make class treatment inferior. Where common questions can be resolved with common proof and drive the case, Rule 23(b)(3) remains satisfied even if damages require individualized determination. In sum, decertification is warranted only if, on the present record, Rule 23 is no longer met. Absent that, this Court should adhere to its prior certification decision.

## III. ARGUMENT

### A. In Finding Fault with the Verdict Forms, the City Disregards this Court's Instructions to the Jury and the City's Own Approval of the Forms.

The City submits that the jury was never asked to resolve class-wide liability and therefore decided only the named Plaintiffs' individual claims.[4] To be clear, this Court instructed the jury otherwise:

> Your liability findings will apply to the class as a whole. Your damages findings, if any, apply only to Mr. Craig and Ms. Stokes. If you find any of the defendants liable, the Court will conduct separate proceedings to determine if any other class members are entitled to damages.[5]

Indeed, the class nature of the proceeding was made clear from the outset. In its preliminary instructions, this Court told the jury that "[t]his case is tried as a class action on behalf of all certified class members," identified the certified class, and explained that Craig and Stokes asserted negligence and nuisance claims as class representatives.[6] This Court repeated that explanation in its final instructions, immediately before explaining the separate phases and the class-wide effect of the liability findings.[7] These were clear directions to the jury about the claims it was deciding and the effect of its findings. The City cannot establish that the trial lacked class character by omitting those instructions from its account.

The references to Craig and Stokes on the verdict forms were consistent with the jury's task of deciding their individual damages. The jury was instructed to determine Defendants' liability, calculate the named Plaintiffs' damages, and leave other class members' entitlement to damages for subsequent proceedings.[8] Consistent with those instructions, the jury assigned fault percentages to each Defendant and separately answered whether each Defendant was liable for

[4] City's Brief (ECF No. 450) at 11–13.
[5] Trial Tr., Vol. 5 at 1027:20–24.
[6] Trial Tr., Vol. 1 at 11:18–12:5.
[7] Trial Tr., Vol. 5 at 1026:20–1027:24.
[8] Trial Tr., Vol. 5 at 1027:15–24.

nuisance.[9] This Court instructed the jury to return a verdict for Defendants if none was at fault and provided a defense verdict accordingly.[10] Thus, the City identifies no missing option here.

Moreover, the City's argument also omits its own approval of the forms. It quotes Plaintiffs' counsel's agreement,[11] but fails to disclose the exchange immediately preceding it:

> THE COURT: Okay. That's it. So you are fine with these verdict forms?
> MR. McNEIL: The City of Richmond is.[12]

The following discussion addressed other class members. Counsel for Cornerstone and Smith referred to the instruction explaining that the damages were for the two named Plaintiffs, and this Court confirmed that other class members would be addressed in a separate proceeding.[13] Defendants' approval is legally significant. *See Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) (discussing the invited-error principle where a party challenged a ruling precipitated by the confusing verdict form it had proposed). Here, the City affirmatively accepted the forms after this Court provided an opportunity to review them. Its renewed opposition to class certification does not explain why its approval of these particular forms should be disregarded. Nor does Plaintiffs' burden under Rule 23 entitle the City to approve a trial procedure and then characterize that same procedure as Plaintiffs' failure to manage the action.

Further, the City's assertion that special verdict forms or interrogatories were an "absolute necessity" overstates its own authorities.[14] Rule 49(a)(1) makes special verdicts discretionary, and the Seventh Circuit recognizes the district court's discretion to choose between general and special verdict forms. *Artis v. Santos*, 95 F.4th 518, 531–32 (7th Cir. 2024). The pertinent constitutional

---

[9] Trial Tr., Vol. 5 at 1039:21–1041:2.
[10] Trial Tr., Vol. 5 at 1033:5–24.
[11] City's Brief (ECF No. 450) at 5.
[12] Trial Tr., Vol. 4 at 951:23–25.
[13] Trial Tr., Vol. 4 at 953:19–954:1.
[14] City's Brief (ECF No. 450) at 11.

question is whether subsequent proceedings would require a second jury to redetermine an essential issue already decided, not whether the verdict forms repeat every explanation contained in the instructions. *See Houseman v. United States Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999). The City's cited cases describe special verdicts as a means of addressing that concern, not a categorical requirement for every class trial. In *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 50 (E.D.N.Y. 2001), the court explained that "[f]or example, the court may request" a special verdict specifying the factual bases for the jury's decision. *In re Flint Water Cases*, 558 F. Supp. 3d 459, 522 (E.D. Mich. 2021) likewise describes how special verdict forms "can provide" the specificity necessary for later proceedings. Neither establishes the City's proposed rule that the absence of additional interrogatories automatically defeats class treatment after trial.

Nor does *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) require that result. There, the first jury's verdict failed to identify which of numerous distinct acts of abuse constituted unconstitutional reprisals or which acts supported the defendant's liability. Subsequent damages juries were then asked to determine for themselves which acts were reprisals, reexamining the very issues assigned to the first jury. *Id.* at 268–71. The problem was substantive uncertainty about which wrongful acts had been established. Here, the certified common questions concern Defendants' negligence related to combustible materials on their properties and their responsibility for a single fire, and, again, the jury was instructed that its liability findings applied class-wide.[15] Moreover, *Blyden* found that the defendant preserved an objection to the verdict sheet's failure to establish class-wide liability. 186 F.3d at 267–68. The City instead approved these forms. And *Blyden* declined to decide whether certification itself was improper. In no way does it support the City's assertion that decertification is the only available remedy. *Id.* at 271–72.

---

[15] Order on Pending Motions (ECF No. 324) at 29; Trial Tr. at 1027:20–24.

Finally, the City's quotation of Plaintiffs' counsel's post-verdict remarks does not establish a failure to try the common issues. Counsel's statement that he was "not 100 percent sure" how the next phase would proceed was immediately followed by discussion of a claims process administered by a claims administrator.[16] The City's counsel then stated that "we would have to work with plaintiffs' counsel and the Court on figuring out the right procedure and process[,]" identifying class eligibility and damages as matters to be addressed.[17] This Court likewise indicated that it would consult colleagues about procedures used in other class trials.[18] The discussion concerned implementation of the subsequent proceedings this Court had already contemplated. The City's reliance upon *Wallace v. NCL (Bahamas), Ltd.*, 271 F.R.D. 688, 701–02 (S.D. Fla. 2010), a decision addressing whether to certify a proposed class, supplies no rule converting that discussion into grounds to strip a completed trial of its stated class-wide effect.

Any further proceedings must respect the common liability determinations already made. Reservation of individual questions on damages does not permit Defendants to recast a trial submitted to the jury on class-wide liability as a proceeding involving only two individual claims.

### B. The Trial Record Provides Common Liability Evidence Related to Defendants' Conduct, the Fire, and the Evacuation.

The City next contends that Plaintiffs failed to present common evidence of Defendants' liability because Craig and Stokes did not establish that their individual experiences were representative of every class member.[19] That argument confuses proof of Defendants' common conduct with proof of each class member's resulting harm. Plaintiffs did not rely on Craig and Stokes's personal experiences to establish the hazardous conditions on Defendants' properties,

[16] Trial Tr., Vol. 5 at 1042:16–19.
[17] Trial Tr., Vol. 5 at 1042:24–1043:6.
[18] Trial Tr., Vol. 5 at 1043:13–1044:25.
[19] City's Brief (ECF No. 450) at 14–15.

Defendants' knowledge of those conditions, or the role of the accumulated combustible materials in the fire. They presented testimony and documentary evidence addressing those matters directly. That evidence concerned the same properties, the same conduct, and the same fire underlying every class member's claims.

Deputy Chief Douglas Gardner's testimony, for example, contradicts the City's sweeping assertion. Gardner confirmed that the properties presented fire hazards because of the volume of combustible materials, storage without fire suppression, materials against buildings, and inadequate access.[20] He explained that the excessive combustibles supplied the fuel for the fire's progression and that remediation required either bringing the building into compliance or removing the materials.[21] He further confirmed that the plastics fueled the fire's rapid spread across the properties and that contiguous combustibles remained across the property lines, propagating the fire and obstructing access.[22] None of those facts depended on whether a particular resident left home, where that resident stayed, or what expenses that resident incurred. They were common facts bearing directly on the liability questions this Court certified.

Plaintiffs also presented evidence that the risk extended beyond Defendants' properties. Gardner testified that preplanning included a smoke-plume study considering four wind directions and possible evacuation areas.[23] This testimony addressed the foreseeable community consequences of the very conditions at issue. The City's description of Plaintiffs' witnesses as merely "various firefighters or other City employees" does not diminish the common character of their testimony.[24] Those witnesses supplied evidence concerning the hazardous conditions,

[20] Trial Tr., Vol. 2 at 277:1–16.
[21] Trial Tr., Vol. 2 at 278:21–279:23.
[22] Trial Tr., Vol. 2 at 268:21–269:19; Trial Tr., Vol. 2 at 283:12–19.
[23] Trial Tr., Vol. 2 at 279:24–280:25.
[24] City's Brief (ECF No. 450) at 14

advance knowledge of the risks, and the fire itself, these being matters that would otherwise have to be presented repeatedly in individual actions.

The City's assertion that Plaintiffs elicited no testimony concerning the evacuation's class-wide reach is likewise contradicted by the trial record.[25] During Beth Fields's direct examination, Plaintiffs addressed the evacuation alerts and Fields confirmed that the initial alert described an extreme threat to life or property and called for an immediate response.[26] The alert announced evacuation orders for residents and persons within one-half mile of the incident, and Fields testified that the City shared the information through City website postings and social media.[27] She also confirmed that the evacuation area encompassed the community within the mapped half-mile radius.[28] This was evidence concerning an evacuation directed to the defined area, not merely Craig and Stokes's personal understanding of events.

The City's reliance on Police Chief Michael Britt's testimony is similarly selective. The City again emphasizes that police did not force residents from their homes or prevent them from returning.[29] Immediately before those answers, however, Britt testified that available officers went into the affected area to warn the public of the hazard, advise residents that shelter and transportation were available, and assist anyone who needed help leaving.[30] The absence of forced physical removal does not transform a community-wide emergency into two isolated individual experiences. Further, this Court already rejected the premise that class treatment depends on residents having been physically compelled to leave.[31]

---

[25] *See* City's Brief (ECF No. 450) at 14–15.
[26] Trial Tr., Vol. 2 at 350:6–24.
[27] Trial Tr., Vol. 2 at 349:12–350:5; Trial Tr., Vol. 2 at 351:3–20.
[28] Trial Tr., Vol. 2 at 353:1–9.
[29] City's Brief (ECF No. 450) at 15.
[30] Trial Tr., Vol. 3 at 720:4–18.
[31] Order on Pending Motions (ECF No. 324) at 26–28.

Nor does the City's description of drone footage establish that "many or even most" class members did not evacuate.[32] Images of illuminated homes, pedestrians, or moving vehicles do not, without more, establish whether residents departed, returned temporarily, or remained throughout the evacuation period. More fundamentally, even evidence that some residents remained would not alter the common proof concerning Defendants' conduct and that these residents were subject to an emergency evacuation order following a catastrophic fire in their neighborhood. This Court certified a class defined by residence within the evacuation zone, not by identical responses to the evacuation order.[33]

The City's representative-proof cases do not require a different result. In *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 898–99 (7th Cir. 2024) differences in technicians' work, their supervisors' practices, and the employer's piece-rate compensation system left extensive individualized liability inquiries that resolution of the certified issues would not materially advance. *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 484–86 (C.D. Cal. 2008) concerned whether evidence about particular employees could establish misclassification across a class whose actual work activities mattered to the exemption inquiry. Here, proof that combustible materials fueled this fire and Defendants' failure to remediate known fire hazards on their properties do not depend on extrapolating one resident's experience to another. The evidence addresses a shared event and Defendants' responsibility for it directly. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773–76 (7th Cir. 2013) likewise concerned an unsupported proposal to use selected employees' testimony to overcome substantial differences in work and compensation. Plaintiffs' trial did not use Craig and Stokes's specific expenses as a substitute for proving every

[32] City's Brief (ECF No. 450) at 15.
[33] Order on Pending Motions (ECF No. 324) at 23.

absent member's individual loss. In *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272–74 (3d Cir. 2011), the proposed common exposure evidence failed to establish how historical exposure estimates corresponded to contamination at individual properties, leaving liability inseparable from substantial individual questions. Those evidentiary deficiencies do not describe the testimony establishing the hazardous conditions, the fire's propagation, and the evacuation order relevant here.

The distinction is between common proof of Defendants' conduct and individualized proof of its consequences, as this Court has recognized.[34] Plaintiffs presented evidence addressing those common questions. The City cannot erase that evidence by demanding that Craig and Stokes's individual experiences also establish every other class member's entitlement to damages.

### C. <u>The City's Renewed Rule 23(a) Objections Misrepresent Both this Court's Prior Findings and the Trial Record.</u>

The City again argues that Plaintiffs failed to establish numerosity, commonality, typicality, and adequacy at trial.[35] Its argument portrays this Court's prior rulings as provisional acceptance of Plaintiffs' "assurances," unsupported by evidence and contingent on a particular witness appearing at trial.[36] While Plaintiffs dispute the City's representations about the evidence, that is not what this Court held. The June order examined each requirement, addressed the City's evidentiary objections, and concluded that "[t]he Court once again finds that the Rule 23(a) prerequisites are satisfied."[37] The trial record supplies no basis to reverse those findings.

#### 1. Numerosity turns on the certified class, not the number of residents physically compelled to evacuate.

---

[34] Order on Pending Motions (ECF No. 324) at 34–35.
[35] City's Brief (ECF No. 450) at 16–18.
[36] City's Brief (ECF No. 450) at 17.
[37] Order on Pending Motions (ECF No. 324) at 33.

The City's numerosity argument again substitutes a different class definition for the one this Court certified. The Class consists of persons who resided within the half-mile evacuation zone during the specified period.[38] Membership does not depend on whether police physically removed a resident, whether a resident received the evacuation notice through a particular medium, or whether that resident remained away continuously. This Court rejected the City's attempt to make numerosity depend on proof of the precise number of people who were physically evacuated.[39] The City's renewed demand for that same showing does not identify a defect in the certified class.

The City also mischaracterizes the basis for this Court's numerosity finding. It singles out this Court's reference to Plaintiffs' intention to call Joseph Tanasovich and treats that reference as the entire foundation for the ruling.[40] But this Court separately considered Jonathan Duke's testimony that approximately 2,000 people may have been impacted and explained that, even if the incident report were hearsay, the testimony on which the City relied did not undermine the prior finding.[41] This Court concluded that "[t]he circumstances in which the Court previously found numerosity satisfied have not changed."[42] It did not condition continued certification on Tanasovich personally testifying.

Further, there was additional evidence of the number of residents subject to the evacuation order at trial. During Gardner's direct examination, Plaintiffs addressed the Homeland Security incident report and its statement that the fire forced more than 2,000 people from their homes.[43]

---

[38] Order on Pending Motions (ECF No. 324) at 23.
[39] Order on Pending Motions (ECF No. 324) at 26–28.
[40] City's Brief (ECF No. 450) at 4, 17.
[41] Order on Pending Motions (ECF No. 324) at 27–28.
[42] Order on Pending Motions (ECF No. 324) at 28.
[43] Trial Tr., Vol. 2 at 283:20–284:21.

Gardner acknowledged the report's statements concerning both the evacuation and the date the order was lifted.[44] The trial also included the evacuation alerts directed to the half-mile area, testimony about their dissemination, and testimony that officers went into the affected area to warn residents and offer evacuation assistance.[45]

The City's related objection that Plaintiffs did not identify every actual class member at trial likewise disregards the contemplated sequence of proceedings.[46] This Court had already found the Class identifiable through objective criteria and contemplated subsequent proceedings addressing membership and individual recovery.[47] The absence of a completed claimant roster does not establish that the geographically defined class lacks sufficient members or that joinder has become practicable.[48]

**2. Differences in how class members learned of or responded to the evacuation do not defeat commonality or typicality.**

The City's commonality argument repeats the contention that differences in individual experiences eliminate the common questions concerning Defendants' conduct. This Court previously rejected that reasoning because class members' claims turn on Defendants' conduct related to fire hazards on their property and their responsibility for allowing the fire to occur.[49] Trial supplied evidence addressing those questions directly. Differences in how residents learned of the danger or arranged temporary housing do not change the conditions on Defendants' properties, their knowledge of those conditions, or the role of the combustible materials in the fire.

---

[44] Trial Tr., Vol. 2 at 283:20–284:21.
[45] Trial Tr. Vol. 2 at 349:12–353:9; Trial Tr. Vol. 3 at 720:4–12.
[46] City's Brief (ECF No. 450) at 17.
[47] Order on Pending Motions (ECF No. 324) at 23–24, 35.
[48] Further, following the notice administrator's record review, 3,594 potential name matches were identified that were associated with residential properties within the certified 0.5-mile radius. *See* Declaration of Jennifer M. Keough Regarding Dissemination of Notice (ECF No. 399) ¶ 4.
[49] Order on Pending Motions (ECF No. 324) at 29.

The City's characterization of Craig and Stokes's evacuation as a product of "happenstance and personal whim" is also misleading.[50] Learning of an evacuation order from a police officer, deciding to leave after speaking with another household member, and making a temporary return home does not establish that the displacement was voluntary or unrelated to Defendants' conduct. Stokes explained that they returned to check on their dogs and retrieve clothing and medication.[51] She further testified that, after the dogs were removed, they followed the evacuation orders and did not return home again until the order was lifted.[52] The City omits those explanations while presenting the same conduct as evidence that the named Plaintiffs' claims were atypical.

This Court has already explained that typicality concerns whether the claims arise from the same event or course of conduct and share the same essential characteristics. It does not require identical experiences or damages.[53] Craig and Stokes's claims still arise from the same fire and the same alleged misconduct underlying the Class's claims. Their individual circumstances were relevant to their damages, but they did not eliminate the common factual and legal basis for their claims.

**3. The City identifies nothing in the trial record undermining this Court's adequacy determination.**

The City's adequacy discussion again invokes the distinction between the Owner and Non-Owner Subclasses and the possibility that non-owners cannot pursue private nuisance claims.[54] This Court addressed that precise objection in June. It held that the representatives' pursuit of an additional ownership-dependent claim did not prevent them from adequately representing non-

---

[50] City's Brief (ECF No. 450) at 18.
[51] Trial Tr., Vol. 2 at 430:4–18.
[52] Trial Tr., Vol 2 at 434:7–12.
[53] Order on Pending Motions (ECF No. 324) at 30–31.
[54] City's Brief (ECF No. 450) at 17.

owners on the claims available to that subclass.[55] As this Court explained, "there is not a single claim which the Non-Owner Subclass pursues that the Owner Subclass is not also pursuing."[56] The City identifies no trial development creating a conflict between the subclasses or showing that the named Plaintiffs abandoned a claim available to non-owners.

Finally, *Mazzei v. Money Store*, 829 F.3d 260, 269–70 (2d Cir. 2016), on which the City relies throughout this discussion, does not make post-verdict decertification appropriate. It recognizes the authority to revisit certification and the proponent's continuing burden but also requires deference to factual findings the jury necessarily made. Further, it is a Second Circuit decision, not a Seventh Circuit authority.[57] Its recognition of this Court's authority to decertify does not establish a factual basis for exercising that authority here. The City must confront the actual certified class, this Court's actual findings, and the evidence actually presented. Its renewed Rule 23(a) arguments do not demonstrate that any prerequisite is no longer satisfied.

**D. The Trial Resolved Central Questions Common to the Class, and the Individualized Proceedings this Court Expressly Contemplated Do Not Defeat Predominance or Superiority.**

In disputing predominance and superiority, the City again argues that class treatment is improper unless the common trial resolves every question necessary to establish each class member's entitlement to recovery. This Court considered differences in displacement, expenses, causation, and damages when denying the City's first motion to decertify.[58] It concluded that "[e]very Class member's claims still depend on central questions the resolution of which will drive the outcome for all claims," and that "the fact that individualized proof may be required in the final

[55] Order on Pending Motions (ECF No. 324) at 31–32.
[56] Order on Pending Motions (ECF No. 324) at 32.
[57] City's Brief (ECF No. 450) at 6.
[58] Order on Pending Motions (ECF No. 324) at 33–35.

phase of this litigation does not disturb" its predominance finding.[59] The City now identifies the very questions reserved for subsequent proceedings as proof that the common trial accomplished nothing. That argument misstates both the governing law and what occurred at trial.

The City's reliance on *Jacks* is particularly misplaced. Although *Jacks* affirmed decertification on superiority grounds, it rejected the proposition that issue certification requires common questions to predominate over the entire cause of action. Instead, predominance concerns the particular issues certified for common resolution. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 896–98 (7th Cir. 2024). The court rejected the requirement that an issue trial resolve every aspect of liability, explaining that neither controlling precedent nor Rule 23(c)(4)'s text imposes that limitation. *Id.* at 897–98. The City's argument that individual questions of causation and entitlement to damages necessarily defeat continued certification would impose the very restriction *Jacks* rejected.

Nor can the City dismiss *Mejdrech* as a "minority approach."[60] *Mejdrech* is binding Seventh Circuit authority, and its reasoning directly answers the City's contention that the possibility of uninjured class members makes individualized proceedings incompatible with certification. There, the court approved common adjudication of whether the defendant unlawfully contaminated an area while reserving whether particular class members suffered legally compensable harm, and in what amount, for individual proceedings. *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911–12 (7th Cir. 2003). The City's speculation that some geographically defined class members might ultimately fail to establish a right to recover therefore identifies a feature that *Mejdrech* accommodated, not a reason to disregard its holding.

[59] Order on Pending Motions (ECF No. 324) at 35.
[60] City's Brief (ECF No. 450) at 19.

Here, the common questions concerned Defendants' knowledge of and failure to remediate fire hazards on their properties and their responsibility for the fire that prompted the evacuation. Those questions did not depend on how many nights a particular resident stayed elsewhere, whether that resident incurred hotel expenses, or whether that resident returned home temporarily. The evidence concerning the accumulation of combustible materials, the known fire hazards, and the conditions that allowed the fire to spread addressed Defendants' conduct at the same site and their responsibility for the same event.[61] Determining those matters did not require extrapolating from Craig's or Stokes's personal experiences. Their resolution applied across the Class because the underlying conduct and event were common to its members.

Again, the jury was instructed that its liability findings would apply to the Class as a whole, while its damages findings would apply only to Craig and Stokes.[62] It then returned verdicts finding Defendants liable for negligence and nuisance.[63] The City's assertion that the trial resolved only two individual disputes simply disregards this Court's instruction defining the scope of the jury's task. The remaining need to determine other residents' eligibility and compensable losses does not erase the common adjudication that preceded it.

The City's superiority argument likewise overlooks the practical judgment that this Court has already made. In denying the first motion to decertify, this Court considered the City's complaint that Plaintiffs had not supplied a sufficiently detailed litigation plan.[64] It concluded that separate actions would require repeated presentation of the same witnesses, records, property history, and evidence concerning the fire and evacuation.[65] Subsequent proceedings would still be

---

[61] *See, e.g.*, Trial Tr., Vol 2 at 277:1–280:19, Trial Tr., Vol 2 at 283:12–19.
[62] Trial Tr., Vol. 5 at 1027:15–24.
[63] Trial Tr., Vol. 5 at 1039:22–1041:2.
[64] Order on Pending Motions (ECF No. 324) at 36–37.
[65] Order on Pending Motions (ECF No. 324) at 37.

necessary to address individual losses while decertification would add repeated litigation of the common questions. The trial record confirms that analysis. Evidence concerning the site and Defendants' conduct was presented once. Requiring each resident to establish those matters anew would duplicate substantial litigation without improving the determination of that resident's particular losses.

That distinguishes this case from the superiority problem in *Jacks*. There, answering the certified questions would still leave hundreds of trials concerning materially different work activities, supervisors' instructions, timekeeping practices, and compensation calculations. 118 F.4th at 898–99. The common proceeding would do too little to advance those disputes. Here, residents' claims arise from the same fire and the same alleged misconduct. The common trial addressed that shared foundation and the remaining proceedings concern how that event affected particular claimants. The differences among those claimants do not make Defendants' conduct different from case to case.

Finally, regarding how to implement the next phase, this Court had contemplated separate proceedings to determine whether other class members were entitled to damages, and instructed the jury accordingly.[66] The City itself participated in discussing how those proceedings would be developed.[67] Those procedures must preserve the opportunity to contest individual eligibility and damages, but the need to formulate their details does not demonstrate that the common trial failed. The City offers no reason why resolving the remaining individual questions requires dismantling the Class and discarding the efficiencies this Court anticipated and the trial has already achieved.

### E. The Seventh Amendment Requires Preservation of the Jury's Findings, Not Decertification of the Class.

---

[66] Trial Tr., Vol. 5 at 1027:20–24.
[67] Trial Tr., Vol. 5 at 1042:24–1043:6.

The City's constitutional argument asserts that the jury "neither was prompted to resolve" the common liability issues "nor rendered any verdict on the same."[68] But this Court instructed the jury: "Your liability findings will apply to the class as a whole[,]"[69] and explained that the damages findings applied only to Craig and Stokes and that subsequent proceedings would determine whether other class members were entitled to damages.[70] Giving effect to that distinction does not improperly extrapolate an individual verdict to absent class members. It implements the scope of adjudication this Court assigned to the jury.

The governing constitutional principle is that successive juries may not redetermine the same essential factual issues. It does not require that every question arising from an occurrence be decided in a single proceeding. In *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1126–27 (7th Cir. 1999), the Seventh Circuit explained that successive juries may consider overlapping evidence so long as they do not decide factual issues common to both trials and essential to their outcomes. Accordingly, the relevant inquiry concerns the issues actually determined by the first jury and those submitted in subsequent proceedings. The City cannot establish a constitutional violation merely by observing that later proceedings will concern the same fire or require evidence bearing on individual causation and loss.

*Rhone-Poulenc* illustrates the need to define those boundaries carefully. There, the proposed proceedings would permit later juries to reconsider the defendants' negligence when determining comparative negligence and proximate causation under the circumstances of individual claims. *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). Here, the common liability determinations remain fixed and subsequent proceedings will address damages,

---

[68] City's Brief (ECF No. 450) at 22.
[69] Trial Tr., Vol. 5 at 1027:20–21.
[70] Trial Tr., Vol. 5 at 1027:21–24.

formalized perhaps through a Court-approved claim process overseen by a claim administrator.[71] Subsequent proceedings must preserve the common issues necessarily resolved by the verdict while addressing individual eligibility, causation, and damages through procedures yet to be established. Whether a claimant resided within the certified area, incurred a particular expense, or suffered a compensable loss attributable to the fire presents questions that can be addressed without asking another jury to decide anew whether Defendants engaged in the actionable conduct established at trial. The City must identify an actual conflict between those tasks, rather than assume that any remaining causation question necessarily reopens every issue previously decided.

*Blyden* involved a materially different problem. The first jury found liability for unspecified unconstitutional reprisals against prisoners without identifying which acts constituted reprisals or which prisoners those acts affected. Later juries were then asked to decide for themselves which acts qualified as reprisals, the same question submitted to the first jury. *Blyden v. Mancusi*, 186 F.3d 252, 267–69 (2d Cir. 1999). The uncertainty concerned hundreds or thousands of distinct acts, any subset of which could have supported the initial verdict. Here, the Class's claims concern Defendants' responsibility for a single fire arising from conditions at a single site. Subsequent claimants need not establish that a separate incident constituted an independently actionable wrong. They must establish their entitlement to recover for the consequences of the common event.

The City also extracts *Blyden*'s discussion of a special verdict from the circumstances that made specificity necessary in that instance. In *Blyden*, the court found that the special verdict form should have included the set of acts that qualified as "reprisals" and identified the subset of those acts for which each defendant was liable so that the later juries would not need to reexamine and

[71] Trial Tr., Vol. 5 at 1042:13-19.

redecide the same issues. *Blyden*, 186 F.3d at 271.[72] The constitutional question is whether later proceedings require redetermination of an issue already decided, not whether the verdict forms repeat the word "class." Here, this Court instructed the jury about the class-wide effect of its liability findings, distinguished those findings from the named Plaintiffs' damages, and explained the purpose of the subsequent proceedings.[73] The City approved the forms used to implement those instructions.[74] Its present argument considers the forms in isolation while omitting the instructions that defined the jury's task.

The next phase must respect both the reach and the limits of the verdict and subsequent proceedings may not reconsider common issues necessarily resolved by the verdict. This Court can identify those issues from the verdict and instructions and remove them from further adjudication, while preserving Defendants' opportunity to contest matters left unresolved. That requires implementation of the verdict; it does not justify treating the class-wide instruction as though it had never been given. On these facts, the City's Seventh Amendment argument provides no basis to discard the class proceedings already conducted.

## IV. CONCLUSION

The City's renewed motion identifies no material development warranting departure from this Court's prior certification rulings. Its misleading excerpts obscure the City's approval of the verdict forms, this Court's instruction that the jury's liability findings would apply to the Class, and the individualized proceedings contemplated from the outset. The trial resolved the common liability questions. The remaining proceedings should implement that verdict and adjudicate individual issues in a claims administration process to determine eligibility and compensable

---

[72] *See* City's Brief (ECF No. 450) at 23.
[73] Trial Tr., Vol. 5 at 1027:15–24.
[74] Trial Tr., Vol. 4 at 951:23–952:3.

damages. Plaintiffs respectfully request that this Court deny Defendants' renewed motion to decertify in its entirety.

Respectfully submitted,

**/s/ John A. Smalley**

John A. Smalley, Esq. (OH Sup. Crt. 0029540)
Attorney for Plaintiffs
131 N. Ludlow Street, Suite 1400
Dayton, OH 45402
Telephone: (937)223-8888
Facsimile: (937) 824-8630
Email: jsmalley@dgmslaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing pleading has been filed this 12th day of November, 2026 with the Clerk of Court using the CM/ECF system, which will send notification to the following counsel of record:

Andrew M. McNeil
Bradley R. Sugarman
Jackson L. Schroeder
Seth M. Thomas
Bose McKinney & Evans, LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Attorneys for City of Richmond

Arie Lipinski
LIPINSKI LAW
951 N. Delaware Street
Indianapolis, IN 46202-3377
Attorneys for Seth Smith, Cornerstone Trading Group, LLC, and My-Way Trading, Inc.

**/s/ John A. Smalley**
John A. Smalley, Esq. (OH. Sup. Crt. 0029540)
Attorney for Plaintiffs